**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **ARMS OF HOPE, a Texas Nonprofit Corporation,** ) ) )| |
| **Plaintiff,** ) )| |
| **v.** ) )| **Case No. _____** |
| **CITY OF MANSFIELD, TEXAS,  a municipal Corporation,** ) ) )| |
| **Defendant.** ) ) )| |

**<u>VERIFIED COMPLAINT</u>**

Comes now Plaintiff Arms of Hope ("AOH"), by and through counsel, and files this Verified Complaint as follows:

1.      This is a freedom of speech case. AOH brings this civil action under 42 U.S.C. § 1983 to challenge the constitutionality of the overly broad and unconstitutional licensing and regulatory requirements imposed by Defendant City of Mansfield, Texas ("Mansfield") on charities engaging in protected speech activities in the form of charitable appeals for donations of used clothing and household items in unattended donation receptacles.

2.      AOH prays for a declaratory judgment, temporary restraining order, and preliminary and permanent injunctions to enjoin Mansfield from acting under color of state law to deprive AOH of the right to free speech protected by the United States Constitution.

3.      On their face, Mansfield's Ordinances Nos. OR-2287-23 (marked as Exhibit 1, APP001-008) and OR-2288-23 (marked as Exhibit 2, APP009-014) ban charitable donation bins from an unjustifiably overbroad area of Mansfield *and* give Mansfield unbridled discretion to deny permits for donation bins even in the ostensibly available areas. This abridges AOH's protected

charitable speech and violates the First and Fourteenth Amendments to the United States Constitution.

4.        Mansfield has threatened immediate enforcement against AOH of the facially unconstitutional ordinances banning charitable speech. On July 1, 2022, Mansfield issued a Notice of Violation of its recently enacted ban on charitable donation bins to AOH, and on January 30, 2023, following legislative amendment of the unconstitutional ordinances, Mansfield issued its corresponding demand for removal, threatening to impose severe penalties on the charity for the poor unless it removes its long-standing donation boxes by February 10, 2023. AOH's three donation boxes have been placed without issue or complaint since 2019.

5.        AOH respectfully prays for immediate and permanent injunctive relief from Mansfield's enforcement of a facially unconstitutional law that would chill its free speech and impose staggering civil and criminal penalties for noncompliance.

## JURISDICTION

6.        AOH brings its First Amendment claim under 42 U.S.C. § 1983 to redress deprivations by Mansfield, acting under color of state law, of a right secured to AOH and others by the First and Fourteenth Amendments to the United States Constitution. Jurisdiction is therefore conferred upon this Court pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(3) and (4); and 42 U.S.C. § 1983.

## VENUE

7.        Venue properly lies with this Court pursuant to Title 28 U.S.C. § 1391(b) since a substantial part of the events giving rise to this claim occurred in the Northern District of Texas, Fort Worth Division.

## DECLARATORY RELIEF

8.     Authority for declaratory relief sought by AOH is conferred upon this Court by 28 U.S.C. §§ 2201 and 2202, and by Fed. R. Civ. P. 57.

9.     AOH is entitled to recovery of attorney's fees and costs in this matter pursuant to 42 U.S.C. § 1988.

## PARTIES

10.     AOH is a nonprofit charitable corporation duly organized and existing under the laws of Texas with its principal place of business in Medina, Texas. AOH provides a safe home and Christian environment for disadvantaged children and single-mother families in need by helping them avoid homelessness, poverty, abuse, and neglect and by leading them to lives of sustaining and productive citizenship. AOH operates the Boles Children's Home, located about 80 miles outside of Mansfield, Texas. The Boles Children's Home opened as an orphanage nearly 100 years ago in 1924, and it continues to serve children in need of a safe and loving home today.

11.     AOH desires to solicit charitable contributions via donation bins in Mansfield, Texas, and has done so without issue since 2019. *See* Declaration of Richard Troy Robertson (marked as Exhibit 3, APP015-020), ¶ 10, APP018.

12.     Mansfield is a city of the State of Texas chartered pursuant to Article 11, Section 5 of the Texas Constitution. Through its legislative body, Mansfield adopts ordinances as needed for the health and welfare of Mansfield and its inhabitants.

13.     AOH herein challenges the Donation Box Permitting and Enforcement Chapters of the Code of Mansfield (hereinafter the "Donation Box Law"). *See* Mansfield, Tex., Code of Ordinances ch. 116, ch. 155 §§ 155.012, .054, .099. Mansfield's Donation Box Law bans charitable solicitations made via donation bin in most, if not all, of Mansfield.

## FACTUAL ALLEGATIONS

14.     On January 23, 2023, by and through Ordinance Nos. OR-2287-23 and OR-2288-23, Mansfield amended the Donation Box Permitting and Enforcement Chapters of the City Code. *See* Ordinance Nos. OR-2287-23 and OR-2288-23, Exhibits 1 and 2, APP001-014.

15.     These Ordinances amended the City's original Code language enacted on May 9, 2022 and together the May 2022 and January 2023 Ordinances create the Donation Box Law of the current Mansfield Code, which impose content-based restrictions and a prior restraint of the charitable speech right guaranteed under the First and Fourteenth Amendments to the United States Constitution. Imposition of these restraints would cause AOH irreparable harm, as detailed below.

16.     Mansfield's Donation Box Law defines "donation box" as "[a]ny drop-off box, bin, container, receptacle, trailer or similar facility that accepts donated textiles, clothing, shoes, books, toys, household items and/or other salvageable personal property items to be used by the operator for distribution, resale or recycling." Mansfield Code § 155.012 (Definitions) (emphasis added).

17.     Donation boxes serve two functions for AOH. First, they deliver a message that builds awareness about the organization's cause and, second, they communicate an appeal for support of that cause. Both messages are vital and "fully protected" by the First Amendment. *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 796 (1988).

18.     The Donation Box Law prohibits the placement and maintenance of any donation box within Mansfield before satisfying stringent permit requirements that, together with other constraints, effectively ban donation boxes in all of Mansfield.

19.     The Donation Box Law requires two permits for any donation bin placement except those in an undesirable area, industrial zone I-2.

20.     The first permit is the donation box permit, which requires a $100 filing fee per donation bin.

21.     The second permit is a specific use permit ("SPU"), which would be either a building permit or a certificate of occupancy. The SPU permit requires a filing fee of $1,000 per donation bin.

22.     Requiring two permits is overly burdensome.

23.     Requiring licensing fees of more than $1,000 per bin is overly burdensome and an unconstitutionally high fee.

24.     The enclosed Donation Bin Restriction Map of Mansfield (marked as Exhibit 4, APP021-024) shows the areas in which donation bins may be placed in Mansfield. These areas are marked grey.

25.     These grey areas comprise an extremely small geographic area of Mansfield.

26.     The enclosed Donation Bin Restriction Map, Exhibit 4, APP021-024, also shows the areas in which donation bins are statutorily prohibited. These areas are marked red.

27.     The red areas encompass most of Mansfield.

28.     The red areas do not even account for all prohibitions in the Donation Box Law. For example, the red areas do not include locations banned because they are within 250 feet of a school, hospital, daycare, or recreational facility, nor do they include areas banned because they are a parking space or a "designated open space, community space, or passive or civic spaces," whatever those vague terms mean. *See* Declaration of Mike Knabb (marked as Exhibit 5, APP025-032) , ¶¶ 8-9, APP027-028. Therefore, in reality the areas in which charitable donation bins are actually allowed is much smaller than the grey areas shown on the map.

29.     These few grey areas on the map are far from Mansfield's most visited areas,

regular driving routes, foot traffic, shopping, or downtown. In fact, the majority of the grey area in which donation bins are potentially permissible is in the I-1 and I-2 industrial zones. *Compare* the Donation Bin Restriction Map to the Mansfield Zoning Map (hereinafter "Zoning Map"), *available at* City of Mansfield, Texas, Zoning Map, https://www.mansfieldtexas.gov/Document Center/View/721/Mansfield-Zoning-Map-PDF (marked as Exhibit 6, APP033-034). Relegating potential placement to industrial areas severely limits AOH's ability to solicit donations from the public who might wish to know about AOH and at the same time support it with contributions of used clothing and household items.

30.     In the few areas in which donation boxes are allowed, subject to review, double permitting, and excessive fees, the Donation Box Law also bans placement of donation boxes within any parking space, which is the primary location for donation bins and, for practical purposes, the only possible location for donation bins on commercial properties.

31.     The law only allows donation bins on commercial properties; placement in residential zones is forbidden. And it forbids placement within parking spaces. Because placement is also not allowed within a landscape setback, within a building setback, on a sidewalk, or in a roadway, there is nowhere left to place a donation bin on any commercial property in Mansfield.

32.     The law also prohibits placement within 500 feet of all major roads that run through Mansfield. The primary location for donation bins are in the parking lots of Mansfield's commercial properties, such as strip malls, grocery stores, and convenience stores, which are predominately located within the prohibited 500-ft corridor banned under the law.

33.     The law also prohibits placement of a donation bin within 250 feet of a residential area, which effectively bars placement in most of Mansfield as illustrated by the enclosed Donation Bin Restriction Map Exhibit 4, APP021-024.

34.     The law also prohibits placement of a donation bin within 250 feet of a school, whether private or public.

35.     The prohibition on placement within 250 feet of a school conflicts with Section 5(a), which permits donation bins on school properties in the 2F, MF-1, MF-2, O-P, C-1, C-2, C-3, I-1 and I-2 zoning districts.

36.     The law also prohibits placement of a donation bin within 250 feet of a hospital, daycare center, park, or recreational facility.

37.     In addition, the law vaguely prohibits placement in any "open space" or "civic space" or "passive space," whatever those undefined terms mean.

38.     Open space is defined elsewhere in the Code to mean any outdoor space "open and unobstructed to the sky." *See* Mansfield Code § 155.012 (Definitions).

39.     Moreover, the law also prohibits placement of two bins next to each other, even donation bins by the same charitable organization operator and even on large properties with more than 300 feet of road frontage. The law requires 500 feet between any two donation bins.

40.     The amended law also limits the colors that may appear on a donation bin, prohibiting "high-intensity" colors as well as black ink from appearing on a donation bin, including its signage.

41.     The law does not define what "high-intensity" colors are.

42.     The law vaguely requires the use of only "subtle, neutral, or earth-toned color scheme[s]" without defining what any of those subjective terms mean.

43.     The law also contains a consent requirement that precludes lawful occupants with legal control and authority over private property (such as lessees, property managers, and other lawful agents of property owners) from authorizing the placement of a charitable donation bin.

7

44.    The law mandates that only property owners may consent to placement of a donation bin.

45.    The law thus prohibits a Walmart store manager from authorizing a bin placement in its parking lot because the lot is owned by someone else, and Walmart lawfully leases the commercial space.

46.    Read together, these overly restrictive provisions operate to ban charitable donation boxes from all of Mansfield.

47.    All existing nonconforming donation boxes are subject to the Donation Box Law, even though before May 9, 2022 donation boxes were not regulated by Mansfield.

48.    Mansfield's Staff Report of April 18, 2022, identifies the government's interest in restricting charitable donation bins:

> The City recognizes that donation bins can contribute to **blight** and unpermitted **dumping**. This occurs both by the fact that users use them to place unwanted items that do not always fit in bins and operators are not always timely with maintenance and servicing. The use of these bins occurs mainly within large commercial developments that have frontage on major roadways, placing that blight in highly visible area. Because of this, staff recommends the changes below . . . .

Mansfield, Staff Report, Description/History 1 (Apr. 18, 2022) (marked as Exhibit 7, APP035-049) (emphasis added).

49.    Rather than enact and enforce strong maintenance restrictions on donation boxes in Mansfield, through its unconstitutional zoning and placement restrictions, Mansfield has effectively banned them from most viable placements within the downtown, community and commercial districts, mixed use areas, churches, schools, and shopping centers where passersby might be found and where they would be able to see AOH's charitable message and support the cause.

50.    The areas along regular driving routes or with frequent foot traffic, where passersby are out exploring Mansfield, running daily errands, or enjoying shopping and dining excursions are foreclosed to charitable organizations like AOH. Yet those same areas are adorned with commercial messages. Instead of providing equal access for the message of AOH and other charities to be heard, Mansfield has, in fact, created a barrier.

51.    On January 30, 2023, following the passage of the legislative ban on donation bins from most locations within the City, Mansfield issued a demand to AOH threatening to impose severe penalties on the charity for the poor unless it removes all its donation boxes by February 10, 2023. *See* Email from Counsel for City of Mansfield (marked as Exhibit 8, APP050-051).

52.    This demand followed an earlier enforcement notice from the City of Mansfield on July 1, 2022, showing the threat to AOH is imminent and real. *See* Notice of Violation from Regulatory Compliance Manager for City of Mansfield (marked as Exhibit 9, APP052-057). Prior to the City's enactment of the unconstitutional ban and threat of enforcement, AOH has never received a single complaint, citation, or notice of any compliance issue of any kind from Mansfield regarding any one of its charitable donation boxes.

53.    AOH worked with Mansfield for more than six months to try to resolve the constitutional infirmities through the repeal and amendment process to obviate the need for litigation.

54.    After months of negotiations, Mansfield went ahead and approved an amended version of its ordinance, without adopting most of AOH's requested changes.

55.    AOH engaged in and continues to engage in charitable solicitation by placing donation bins in the State of Texas, including in Mansfield. Robertson Decl., Exhibit 3, ¶¶ 7-13, 17, APP017-020. Charitable donation bins receive and collect unwanted, used clothing and

household items from donors for reuse while spreading the charitable organization's mission. They build name recognition, issue and cause awareness, and broadcast a charitable message.

56.    AOH is not the only charity with concerns about Mansfield's Donation Box Law and its effect on protected speech. *See* Declaration of Mark Stolze (marked as Exhibit 10, APP058-062) , ¶ 11, APP061; Declaration of Norma Crosby (marked as Exhibit 11, APP063-066) , ¶¶ 9-10, APP065. Donation boxes are protected charitable speech under the First Amendment.

57.    Charitable donation bin programs benefit the entire community by diverting items that otherwise would have entered the waste stream to charity.

58.    The donated items are sold at thrift with the proceeds going to the AOH and its charitable programs and activities in the State of Texas. The sale of donated items in bulk provides a steady, reliable revenue stream to the charity, upon which AOH heavily relies. Robertson Decl., Exhibit 3, ¶ 9, APP017-018.

59.    Mansfield has threatened that if AOH does not remove all three of its donation boxes from Mansfield by February 10, 2023, it will impound the bins, file criminal charges, and fine AOH up to $2,000 per donation box for each day that the donation box remains. *See* Email from Counsel for City of Mansfield, Exhibit 8, APP051.

60.    AOH's donation boxes have been in place, broadcasting AOH's name and charitable cause, at those same locations and without a single complaint since 2019.

61.    Now, in addition to criminalizing protected speech and threatening impoundment of its in-kind charitable donations, AOH faces up to $6,000 per day in fines or up to $180,000 per day over the next 30 days if not impounded (or up to $1.08 million over six months).

62.    On its face, Mansfield's Donation Box Law bans and unduly restricts AOH's charitable donation bins, chilling AOH's and other charities' protected speech and violating the

First and Fourteenth Amendments to the United States Constitution.

63.     Mansfield's ban and undue restrictions on charitable speech constitute a content-based prior restraint on protected speech and an unconstitutional abridgment of the First and Fourteenth Amendments.

64.     In distinguishing commercial speech from fully protected charitable speech, the Supreme Court explained that charitable solicitation is entitled to heightened protection because it "does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics of goods and services." *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980).

65.     Any restriction imposed on charitable donation bins, therefore, must "be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues." *Id.*

66.     The Supreme Court has long afforded the strictest First Amendment protection to charitable solicitations because "charitable appeals for funds . . . involve a variety of speech interests – communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes." *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 212 (5th Cir. 2011) (quoting *Schaumburg*, 444 U.S. at 632).

67.     Indeed, charitable donation bins communicate a charitable message, explicitly advocate for the donation of unwanted clothing and household goods to that charitable cause, and "implicitly advocate for that charity's views, ideas, goals, causes, and values." *Id.* at 213.

68.     Passersby who see "a donation bin may be motivated by it to research the charity" to determine whether to donate to it and, "in so doing, the passer-by will gain new information

about the social problem the charity seeks to remedy." *Planet Aid v. City of St. Johns*, 782 F.3d 318, 325 (6th Cir. 2015). A "donation bin may ultimately motivate citizens to donate clothing or shoes even if they had not previously considered doing so." *Id.* Charitable donation bins thus "mirror the passive speaker on the side of the road, holding a sign drawing attention to his cause." *Id.* at 326.

69.     It is also an inescapable fact that charitable organizations often need to utilize the assistance of professionals because they lack the resources to perform certain functions on their own. The Supreme Court has long held that professionals who are compensated to speak on behalf of charitable organizations are entitled to the same First Amendment protection as if the charitable organization was speaking for itself. *Riley*, 487 U.S. at 801.

70.     Overly broad, prophylactic bans and restrictions on charitable donation bins, such as these, have repeatedly been stricken by the Federal Circuits, including the Fifth Circuit. *Abbott*, 647 F.3d at 213-14; *Planet Aid*, 782 F.3d at 325, 330-31.

71.     The Donation Box Law imposes a location ban and significant burdens on AOH's ability to place charitable donation bins in Mansfield thereby foreclosing and criminalizing constitutionally protected speech in most, if not all, of Mansfield.

72.     The Donation Box Law and its permitting regime interferes with AOH's First Amendment rights in violation of the United States Constitution.

73.     The Donation Box Law harms AOH and others similarly situated by granting unbridled discretion to the City Manager to approve or deny an application for a permit to engage in fully protected speech and imposing a prior restraint on their charitable solicitation in violation of the First and Fourteenth Amendments to the United States Constitution. The relief sought in this complaint would fully redress those harms.

74.     Because of Mansfield's recently enacted location ban and severe placement requirements, AOH is under threat of immediate and debilitating enforcement of a facially unconstitutional law, including forced removal of its donation bins or severe penalties if they remain as placed.

75.     AOH seeks to exercise its right to free speech in Mansfield by operating its charitable donation bins on consented private property without undue government restrictions applying to that protected speech activity.

76.     An actual and substantial controversy exists between AOH and Mansfield as to the parties' respective rights and responsibilities.

77.     A judicial determination of the parties' rights and the constitutionality of the Donation Box Law will give AOH relief by establishing that Mansfield is not entitled to enforce unconstitutional conditions on a charitable organization's speech and allowing AOH to speak without abiding by these unconstitutional conditions.

78.     There is not a plain, speedy, and adequate remedy at law for AOH to address the violations of its constitutional rights under color of state law. Absent judicial intervention, AOH will suffer irreparable injury because of the prohibition on its right to speak.

79.     "'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 67 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

80.     In addition to that legally sufficient irreparable injury, AOH would also suffer the irreparable injuries of (1) losing the opportunity for its bins to publicize the ability to donate, which could result in the impossible-to-estimate loss of not reaching potentially lifelong donors at the time they could have been reached; (2) the risk of physical damage to the donation bins from

impoundment; and (3) after losing the bins, the risk of not being able to persuade private-property owners to allow the bins the return.

81.    A temporary restraining order or injunction restraining Mansfield from enforcing the unconstitutional zoning ban and burdensome placement restrictions challenged in this action will remedy AOH's injury.

82.    A temporary restraining order or injunction restraining Mansfield from unconstitutionally enforcing the challenged zoning restrictions and overly burdensome placement requirements will serve the public interest.

83.    Mansfield has no interest in violating AOH's First Amendment freedoms, and an injunction will further freedom of speech in Mansfield.

84.    Absent the requested relief, the Donation Box Law places AOH in an untenable position by forcing it to choose, on the one hand, between complying with an unconstitutionally burdensome law that imposes an impermissible prior restraint on fully protected speech and, on the other, subjecting itself to real and immediate enforcement by Mansfield, staggering penalties, and the possibility of adverse publicity and reduced charitable contributions because of AOH's status as an alleged violator of the law.

85.    Monetary damages cannot compensate AOH for the loss of its constitutionally protected rights under the First and Fourteenth Amendments to the United States Constitution.

86.    With no adequate remedy at law to redress AOH's grievances, AOH's ability to engage in protected speech will be unconstitutionally abridged unless and until Mansfield is enjoined from enforcing the Donation Box Law.

87.    Of course, there would also be monetary damages to AOH if Mansfield's threat is not restrained immediately. Either AOH would be at risk of the severe fines threatened by

Mansfield if the donation bins were not removed, or if AOH removed the bins, then it would suffer monetary damages from the value of donations not collected during the time the bins were unavailable, the costs from moving and storing the bins, and repairing any damage to the bins that occurred during the moving and storage.

88.    AOH prays that Mansfield's threatened enforcement of its facially unconstitutional Donation Box Law on February 10, 2023 be immediately restrained pending review of AOH's motion for preliminary injunction filed contemporaneously herewith.

89.    AOH further prays that these unduly burdensome, overly broad requirements be declared facially unconstitutional and preliminarily and permanently enjoined as violations of the First and Fourteenth Amendments to the United States Constitution.

## COUNT I

### U.S. Const. amend. I, 42 U.S.C. § 1983

### Violation of the First Amendment
### Abridgement

90.    AOH incorporates the allegations in the preceding paragraphs.

91.    The First Amendment to the United States Constitution guarantees the right of "the freedom of speech." U.S. Const. amend. I.

92.    Charitable solicitation is entitled to heightened protection under the First Amendment. *Riley*, 487 U.S. at 789. Federal courts have repeatedly held that charitable solicitation via donation bin is a constitutionally protected activity and that laws which burden the ability of charitable organizations to solicit contributions on behalf of worthwhile causes are presumptively invalid. *Abbott*, 647 F.3d at 212-14; *Planet Aid*, 782 F.3d at 325, 330-31.

93.    Like in-person communication, charitable donation bins communicate information, disseminate, and propagate views and ideas, and advocate causes. "The mere inclusion of the name

of a charity on a donation box *communicates* information about the beneficiary of the benevolence and explicitly *advocates* for the donation of clothing and household goods to that particular charity." *Abbott*, 647 F.3d at 213 (emphasis added). Donation bins "implicitly *advocate* for that charity's views, ideas, goals, causes, and values." *Id.* (emphasis added).

94.    The challenged Donation Box Law effectively bans charitable donation bins from most, if not all, of Mansfield, thereby foreclosing and criminalizing constitutionally protected speech in Mansfield.

95.    The location, permitting, and signage retractions burden substantially more speech than is necessary to advance the City's legitimate interests, infringing AOH's First Amendment right to protected charitable speech. *Blitch v. City of Slidell*, 260 F. Supp. 3d 656, 671 (E.D. La. 2017). Such blanket prohibitions have long been found to be unconstitutional. *Id.*; *Nat'l Fed'n of the Blind of Tex. Inc. v. City of Arlington*, No. 3:21-CV-2028-B, 2022 U.S. Dist. LEXIS 162768, at *42-43 (N.D. Tex. Sep. 9, 2022); *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 814 (2000); *Planet Aid*, 782 F.3d at 330; *Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276, 1292-93 (D. Colo. 2015).

96.    Indeed, following the reasoning of the Northern District of Texas's recent opinion in *Nat'l Fed'n of the Blind of Texas v. Arlington,* Mansfield's overly burdensome zoning, placement, and signage restrictions burden substantially more speech than is necessary to advance the City's legitimate interests. No. 3:21-CV-2028-B, 2022 U.S. Dist. LEXIS 162768, at *42-43. Accordingly, the challenged Donation Box Law cannot withstand even the inapplicable intermediate scrutiny. Because the Donation Box Law cannot stand intermediate scrutiny, it certainly cannot survive strict scrutiny, which is required here.

97.    Ordinances that target charitable donation bins for regulation and restriction are

content based because they target a specific category of speech by subject matter and, therefore, require strict scrutiny. *Planet Aid*, 782 F.3d at 328-30; *Playboy Entm't Grp.*, 529 U.S. at 815.

98.    Ordinances that target or restrict speakers are also content-based restrictions and require strict scrutiny.

99.    The legislative history of the Donation Box Law demonstrates Mansfield's intent to target charitable speech and, specifically, charitable donation bins. Because the Donation Box Law targets the subject matter and purpose of the speech, it is content based.

100.    Because the Donation Box Law is not narrowly tailored to achieve a compelling government interest, it fails strict scrutiny. *Playboy Entm't Grp.*, 529 U.S. at 815; *Riley*, 487 U.S. at 789-94; *Abbott*, 647 F.3d at 213-14; *Planet Aid*, 782 F.3d at 330-31.

101.    Existing maintenance, registration, and enforcement restrictions contained in the Ordinances already adequately address Mansfield's maintenance concerns in this case. Additional penal provisions also apply to prevent and punish malfeasance under the Code. Accordingly, the severe placement restrictions are not the least restrictive means, and they silence substantially more speech than is reasonably necessary to achieve its end.

102.    Indeed, the overly burdensome restrictions on donation boxes have no nexus to Mansfield's admitted interests in regulating donation boxes.

103.    Ample, less restrictive alternatives are available to Mansfield to further its interest in maintaining the donation bins to ensure that they are kept neat and tidy and the area in and around the bins remain free of debris. The existing maintenance and enforcement restrictions expressly prohibit the very ill that Mansfield seeks to cure by banning the charitable speech. Banning protected speech in most, if not all, of Mansfield restricts substantially more speech than is reasonably necessary to achieve Mansfield's stated ends. Therefore, the ban is not narrowly

tailored to further Mansfield's stated interest.

104.    The Donation Box Law is over-inclusive because it prohibits protected speech that poses no threat to public safety. *Browne*, 136 F. Supp. 3d at 1292. Rather than implement and enforce maintenance restrictions for charitable donation bins, Mansfield took a sledgehammer to the speech, banning all charitable donation bins including those that pose no threat to public health or safety.

105.    Moreover, Mansfield does not ban commercial signs in any zone and, therefore, treats lesser-protected commercial speech more favorably than fully protected charitable speech.

106.    Because the ban is not narrowly tailored, it fails strict scrutiny.

107.    The ban's lack of tailoring would fail under any level of First Amendment scrutiny.

108.    When reviewing laws that burden charitable solicitation, the Supreme Court has consistently invalidated "prophylactic, imprecise, and unduly burdensome rule[s]" governing charitable solicitation where "more benign and narrowly tailored options are available." *Riley*, 487 U.S. at 800; *NAACP v. Button*, 371 U.S. 415, 438 (1963) ("broad prophylactic rules in the area of free expression are suspect . . . Precision of regulation must be the touchstone").

109.    Accordingly, the location ban is facially unconstitutional in most, if not all, of its applications and will cause irreparable injury to AOH and others similarly situated. The location ban imposes an impermissible burden on AOH's right of free speech in violation of the First Amendment and 42 U.S.C. § 1983.

## COUNT II

### U.S. Const. amend. I, 42 U.S.C. § 1983

### Violation of the First Amendment
### Overbreadth

110.    AOH incorporates the allegations in the preceding paragraphs.

111.    The Donation Box Law silences AOH's communications with donors. It suppresses fully protected speech without employing sensitive tools. *Speiser v. Randall*, 357 U.S. 513, 525 (1958).

112.    The Donation Box Law reaches more broadly than is reasonably necessary to protect legitimate state interests, and therefore it violates the First Amendment.

113.    Because the Donation Box Law forecloses AOH's charitable speech in most, if not all of Mansfield, and it is not narrowly tailored to its asserted interests, it chills the free expression of protected speech.

114.    The First Amendment prohibits laws which sweep protected speech within their prohibitions and result in a chilling effect on persons who refrain from protected speech for fear of prosecution. *Cantwell v. Conn.*, 310 U.S. 296, 308 (1940).

115.    The Donation Box Law therefore is overbroad in a substantial number, if not all, of its applications and will cause irreparable injury to AOH and charities not before this Court.

### COUNT IV

### U.S. Const. amend. I, 42 U.S.C. § 1983

### Violation of the First Amendment
### Prior Restraint

116.    AOH incorporates the allegations in the preceding paragraphs.

117.    The Donation Box Law silences the protected speech of AOH prior to its utterance. This imposes a classic, unconstitutional prior restraint in violation of the First Amendment. *Near v. Minn.*, 283 U.S. 697, 716 (1931). A prior restraint bears a heavy burden against constitutional validity. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

118.    Municipalities may punish unlawful speech, but they may not silence fully protected speech before it is to occur. *Near*, 283 U.S. at 716. Cities also may not grant unbridled

discretion to the licensor. *Sec'y of State of Md. v. Munson Co.*, 467 U.S. 947, 964 n.12 (1984) ("By placing discretion in the hands of an official to grant or deny a license, such a statute creates a threat of censorship that by its very existence chills free speech.").

119.    The Donation Box Law therefore is unconstitutional on its face and as applied to AOH and will cause irreparable injury to AOH.

## PRAYER FOR RELIEF

WHEREFORE, AOH respectfully prays for the following relief and judgment from this Court:

(1)    Issue a temporary restraining order and, thereafter, preliminary and permanent injunctions to enjoin Mansfield's threatened enforcement of the facially unconstitutional Donation Box Law;

(2)    Declare that the Donation Box Law's restrictions impose impermissible burdens on AOH's right of free speech, in violation of the First Amendment;

(3)    Declare that the Donation Box Law's restrictions are overbroad on their face, sweeping the protected speech of charitable organizations, such as AOH's, within its proscription in violation of the First Amendment;

(4)    Declare that the Donation Box Law is an impermissible prior restraint of AOH's speech, in violation of the First Amendment of the United States Constitution;

(5)    Award AOH nominal damages in the amount of $1.00;

(6)    Award AOH compensatory damages for any monetary damages that it suffers;

(7)    Award AOH its costs and disbursements in this action, including reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988; and

(8)    Grant AOH such other and further relief as may be just and proper.

Dated: February 10, 2023                Respectfully submitted,


                                        /s/ *Bennett Rawicki*
                                        Bennett Rawicki, TX # 24083708
                                        HILGERS GRABEN PLLC
                                        7859 Walnut Hill Lane, Suite 335
                                        Dallas, Texas 75230
                                        Telephone: (214) 842-6828
                                        Facsimile: (402) 413-1880
                                        Email: brawicki@hilgersgraben.com

                                        -and-

                                        COPILEVITZ, LAM & RANEY, P.C.
                                        Karen Donnelly (*pro hac* forthcoming)
                                        William E. Raney (*pro hac* forthcoming)
                                        Kellie Mitchell Bubeck (*pro hac* forthcoming)
                                        310 W. 20th Street, Suite 300
                                        Kansas City, Missouri 64108
                                        Telephone: (816) 472-9000
                                        Facsimile: (816) 472-5000
                                        Email: kdonnelly@clrkc.com

                                        *Attorneys for Plaintiff Arms of Hope*

## VERIFICATION

1.      I, Richard Troy Robertson, am President and CEO of Plaintiff Arms of Hope, a Texas Nonprofit Corporation, in the above-captioned matter.

2.      I have read the foregoing Verified Complaint, and I verify that the matters and things stated therein are true to the best of my knowledge, except as to those statements made upon information and belief, and as to those, I believe them to be true.

3.      I verify under penalty of perjury that the foregoing is true and correct on February 9, 2023.

**Arms of Hope,**
**a Texas nonprofit corporation**

By: _____
Richard Troy Robertson
President and CEO

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 10, 2023, a true and correct copy of the foregoing was served on all counsel of record via the Court's ECF system. Additionally, a courtesy copy was served on counsel for Mansfield, Fritz Quast (fquast@toase.com).

<u>/s/  Bennett Rawicki</u>
Bennett Rawicki