**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ARMS OF HOPE, a Texas Nonprofit Corporation,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:23-cv-00131-O** |
| | ) | |
| **CITY OF MANSFIELD, TEXAS,  a municipal Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A TEMPORARY**
**<u>RESTRAINING ORDER FOLLOWED BY PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

I.     LEGAL STANDARD .................................................................................................... 3

II.    ANALYSIS .................................................................................................................... 4

    A.  There is a substantial likelihood that AOH will succeed on the merits. ............................ 5

        1. Charitable speech is protected speech under the First Amendment. .............................. 5

        2. The Donation Box Law violates the First Amendment. ................................................ 6

           a. The Donation Box Law is a content-based regulation of charitable solicitations
demanding strict scrutiny review. .............................................................................. 6

           b. The overly burdensome restrictions cannot withstand any standard of First
Amendment review because they are not narrowly tailored. ........................................ 9

              i. The zoning and setback restrictions ...................................................................... 10

              ii. Double permitting and unreasonable consent rule .................................................. 15

              iii. The signage restrictions ....................................................................................... 19

        3. Substantial Overbreadth ............................................................................................ 20

        4. The Ordinances constitute a prior restraint on speech. ................................................ 22

    B.  AOH will suffer irreparable harm absent the TRO and preliminary injunction. ............... 23

    C.  The potential injury to AOH outweighs any injury to Mansfield. .................................... 24

    D.  Preliminary injunctive relief will not disserve the public interest. ................................... 24

CONCLUSION ...................................................................................................................... 25

CERTIFICATE OF SERVICE ................................................................................................ 27

## TABLE OF AUTHORITIES

**Cases**

*Amawi v. Pflugerville Indep. Sch. Dist.*, No. 1:18-CV-1091-RP, 2019 U.S. Dist. LEXIS 70208 (W.D. Tex. Apr. 25, 2019) ................................................................................................ 7

*Bery v. City of New York*, 97 F.3d 689 (2nd Cir. 1996) .................................................... 23

*Borden Park, L.P. v. City of San Antonio*, No. SA-03-CA-1491-RF, 2006 U.S. Dist. LEXIS 62729 (W.D. Tex. Aug. 16, 2006) ........................................................................... 22

*Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) ....................................... 14

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464 (2022) ....................... 8, 9

*Davis v. East Baton Rouge Parish School Bd.*, 78 F.3d 920 (5th Cir. 1996) .............................. 22

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981) .......................... 24

*DeOtte v. Azar*, 393 F. Supp. 3d 490 (N.D. Tex. 2019) ................................................... 23

*Elrod v. Burns*, 427 U.S. 347 (1976) ..................................................................... 23

*Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123 (1992) ............................................. 20

*Freedman v. State of Maryland*, 380 U.S. 51 (1965) ..................................................... 22

*Gbalazeh v. City of Dallas*, No. 3:18-CV-0076-N, 2019 U.S. Dist. LEXIS 62779 (N.D. Tex. Apr. 11, 2019) .............................................................................................. 4

*Gordon v. City of Houston*, 79 F. Supp. 3d 676 (S.D. Tex. 2015) ................................... 4, 7, 23

*Hassani v. Napolitano*, No. 3:09-CV-1201-D, 2009 U.S. Dist. LEXIS 63064 (N.D. Tex. July 15, 2009) ................................................................................................... 4

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011) ......................................................... 4

*JSLG, Inc. v. City of Waco*, No. W-11-CA-131, 2011 U.S. Dist. LEXIS 164422 (W.D. Tex. Sept. 26, 2011) ............................................................................................. 20

*Lee v. Verizon Communs. Inc.*, No. 3:12-CV-4834-D, 2012 U.S. Dist. LEXIS 173559 (N.D. Tex. Dec. 7, 2012) ............................................................................................ 4

*Maceira v. Pagan*, 649 F.2d 8 (1st Cir. 1981) ........................................................... 23

*McCutcheon v. Federal Election Comm'n*, 572 U.S. 185 (2014) ................................................... 7

*Mills v. District of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009) ........................................... 23

*Nat'l Fed'n of the Blind of Tex. Inc. v. City of Arlington*, No. 3:21-CV-2028-B, 2022 U.S. Dist. LEXIS 162768 (N.D. Tex. Sep. 9, 2022) ............................................................ 8, 9, 11, 14, 15

*Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202 (5th Cir. 2011) .................. 5, 6, 7, 8

*Nat'l Fed'n of the Blind v. Norton*, 981 F. Supp. 1371 (D. Colo. 1997) ........................................ 8

*Nat'l Fed'n. of Indep. Bus. v. Perez*, No. 5:16-cv-00066-C, 2016 U.S. Dist. LEXIS 89694 (N.D. Tex. June 27, 2016) ........................................................................................................... 21

*Near v. Minnesota*, 283 U.S. 697 (1931) ........................................................................... 22

*Newsom v. Albermarle County Sch. Bd.*, 354 F.3d 249 (4th Cir. 2003) ........................................ 23

*Norton v. City of Springfield*, 806 F.3d 411 (7th Cir. 2015) ......................................................... 10

*Nuxoll v. Indian Prairie Sch. Dist. #204*, 523 F.3d 668 (7th Cir. 2008) ....................................... 23

*Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279 (5th Cir. 2012) ..................... 23

*Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221 (10th Cir. 2005) ................................... 23

*Planet Aid v. City of St. Johns*, 782 F.3d 318 (6th Cir. 2015) .................................... 5, 7, 9, 13, 14

*Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861 (8th Cir. 1977) ........................................................................................................................... 23

*R.A.V. v. St. Paul*, 505 U.S. 377 (1992) .............................................................................. 7

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) .................................................... 6, 7, 8, 9, 14, 15

*Riley v. Nat'l Fed. of the Blind*, 487 U.S. 781 (1988) ........................................................ 7, 8, 15

*Sammartano v. First Judicial Dist. Court*, 303 F.3d 959 (9th Cir. 2002) .................................... 23

*Schneider v. State*, 308 U.S. 147 (1939) ........................................................................... 8

*Scott v. Roberts*, 612 F.3d 1279 (11th Cir. 2010) ..................................................................... 23

*Sec'y of State of Md. v. Munson Co.*, 467 U.S. 947 (1984) ...................................... 7, 8, 12, 15, 20

*Sells v. Livingston*, 750 F.3d 478 (5th Cir. 2014) ......................................................................... 4

iii

*Stilp v. Contino*, 613 F.3d 405 (3d Cir. 2010).............................................................. 23

*Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535 (5th Cir. 2013)...................... 23, 25

*Texas State Troopers Ass'n v. Morales*, 10 F. Supp. 2d 628 (N.D. Tex. 1998) ......................... 22

*Tucker v. City of Fairfield*, 398 F.3d 457 (6th Cir. 2005)................................................. 23

*U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022) ................................... 23

*United States v. Playboy Entm't Grp.,* 529 U.S. 803 (2000) .............................................. 9

*United States v. Stevens*, 130 S. Ct. 1577 (2010).......................................................... 20

*United States v. Williams*, 553 U.S. 285 (2008) .......................................................... 20

*Vill. of Schaumburg v. Citizens for a Better Env't.*, 444 U.S. 620 (1980) ....................... 6, 7, 8, 15

*Virginia v. Hicks*, 539 U.S. 113 (2003)..................................................................... 21

*Watkins v. City of Arlington*, 123 F. Supp. 3d 856 (N.D. Tex. 2015)........................................ 6

*Wilkinson v. Utah*, 860 F. Supp.2d 1284 (D. Utah 2012) .................................................. 10

*Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015) .......................................................... 8

*Young v. New York City Transit Authority*, 903 F.2d 146 (2nd Cir. 1990).................................. 10

**Statutes**

Mansfield, Tex., Code of Ordinances ch. 116 ................................................................ 1, 2, 19

Mansfield, Tex., Code of Ordinances ch. 155 ............................... 1, 2, 3, 7, 11, 12, 13, 16, 18, 19

**Other Authorities**

16B C.J.S. *Constitutional Law* § 808 (2005)............................................................... 22

**Rules**

Fed. R. Civ. P. 65........................................................................................... 4

**Constitutional Provisions**

U.S. Const. amend I ................................................... 1, 5, 6, 12, 15, 20, 22, 23, 24

iv

## INTRODUCTION

Plaintiff Arms of Hope ("AOH") seeks a temporary restraining order followed by a preliminary injunction to enjoin Mansfield from enforcing Ordinance Nos. OR-2287-23 and OR-2288-23, adopted January 23, 2023, amending Mansfield, Tex., Code of Ordinances ch. 116 and revising Mansfield, Tex., Code of Ordinances ch. 155, §§ 155.054, 155.099 (together, the "Donation Box Law" or "Ordinances"), APP001-14.

As alleged in AOH's Complaint and elaborated on below, the Donation Box Law unlawfully infringes upon AOH's constitutional right to free speech under the First Amendment. The Ordinances effectively silence certain charitable speech by banning solicitations via donation box in almost all of Mansfield. These restrictions of protected speech are subject to strict First Amendment scrutiny and, as set forth below, cannot stand even intermediate scrutiny.

Because (1) AOH is likely to succeed on the merits of its claims under the First Amendment; (2) AOH will suffer irreparable injury if a temporary restraining order followed by preliminary injunction is not issued; (3) the threatened injury to AOH if relief is not issued outweighs any harm that will result if a temporary restraining order followed by preliminary injunction is granted; and (4) the public interest would not be disserved if a temporary restraining order followed by preliminary injunction is issued, AOH respectfully requests that this Court issue a temporary restraining order followed by preliminary injunction enjoining enforcement of the Ordinances until the Court has fully considered and decided the issues raised in the Complaint.

## BACKGROUND

AOH is a tax-exempt charitable organization that, like most charitable organizations, relies on donations to further its charitable purpose—here, to serve disadvantaged children, youth, and single-mother families by providing hope and support at their greatest time of need and in a

1

nurturing, Christian environment in the Dallas metropolitan area and throughout Texas. Donation boxes used by AOH and other charitable organizations broadcast a charitable message and encourage support for this charitable cause. Furthermore, donation boxes are an asset to cities, including Mansfield, because they provide to residents in need clothes and other household items that could otherwise be sent to the local landfill.

Mansfield's Ordinances subject donation boxes to a new permitting and regulatory scheme. "Donation Box" is defined as "[a]ny drop-off box, bin, container, receptacle, trailer or similar facility that accepts donated textiles, clothing, shoes, books, toys, household items and/or other salvageable personal property items to be used by the operator for distribution, resale or recycling." Mansfield, Tex., Code of Ordinances ch. 155, § 155.012. Before May of 2022, donation boxes were unregulated by Mansfield. After the passage of the original ordinances in May 2022, AOH worked with Mansfield to try to correct the constitutional infirmities in the law without the need for litigation. While Mansfield cured some defects, it refused to cure others and added new ones.

Now, under the new Donation Box Law, donation boxes are subject to numerous requirements restricting their appearance, including the signage, material, size, and color, and location, effectively prohibiting their placement in all of Mansfield. *See* Ordinance No. OR-2288-23, amending Mansfield, Tex., Code of Ordinances ch. 155, § 155.099(B)(40), APP009-14. The Ordinances do not regulate recycling bins or trailers, trash bins, dumpsters, or any other unattended bin.

A permit must be obtained from Mansfield, via two separate applications and two sizable fees, before a donation box can be placed in the permitted zones of Mansfield. *See* Ordinance No. OR-2287-23, amending Mansfield, Tex., Code of Ordinances ch. 116, § 116.02, APP003. If the permit application is approved, the permit must be displayed by decal on the donation box itself.

*Id.* at § 116.02(A)(4), APP003. All unpermitted donation boxes are subject to impoundment by the City, and any person found in violation of the Ordinances may be found guilty of a misdemeanor punishable by a fine of up to $2,000.00 per bin per day. *Id.*, § 5, APP007, Ordinance No. OR-2288-23, § 7, APP014.

Donation boxes are banned from all but six designated zones within Mansfield. Ordinance No. OR-2288-23, § 2, amending Mansfield, Tex., Code of Ordinances ch. 155, § 155.054(B), "Permitted Use Table," Table D, APP011. In the six zones it which they are "permitted," donation bins are prohibited within 500 feet of every major roadway within Mansfield, and within 250 of a residential area, school, hospital, park, recreational facility, or in any "open" or "passive" space. Donation bins are also prohibited to be placed within parking spaces on commercial lots, which is the only viable place for a donation bin. Additional land use regulations apply. The unduly burdensome restrictions on the placement of donation boxes essentially block them, and their charitable messages, from public view in Mansfield. Ordinance No. OR-2288-23, § 3, amending Mansfield, Tex., Code of Ordinances ch. 155, § 155.099(B)(40), APP011-13.

While the Ordinances may not outright *ban* all donation boxes, they effectively ban them by imposing restrictions preventing their visibility to the public and excluding them from the majority of, if not all, areas within Mansfield where charitable solicitations are most effective. Mansfield has given AOH until **February 10, 2023** to remove its donation bins or Mansfield will impound them, including the charitable contributions contained within.

## ARGUMENT

## I.   LEGAL STANDARD

Courts issue a preliminary injunction when a movant can clearly establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is

not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interests. *Gordon v. City of Houston*, 79 F. Supp. 3d 676, 693 (S.D. Tex. 2015) (citing *Sells v. Livingston*, 750 F.3d 478, 480 (5th Cir. 2014)); *see also Gbalazeh v. City of Dallas*, No. 3:18-CV-0076-N, 2019 U.S. Dist. LEXIS 62779, at *2 (N.D. Tex. Apr. 11, 2019) (citing *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011)).

The elements of a preliminary injunction and a temporary restraining order ("TRO") are the same. *Lee v. Verizon Communs. Inc.*, No. 3:12-CV-4834-D, 2012 U.S. Dist. LEXIS 173559, at *2 n.2 (N.D. Tex. Dec. 7, 2012). "A TRO is simply a highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, No. 3:09-CV-1201-D, 2009 U.S. Dist. LEXIS 63064, at *4 (N.D. Tex. July 15, 2009).

A court will issue a temporary restraining order using the same factors, as well as specific facts that clearly show immediate and irreparable injury, loss, or damage which will result before the adverse party can be heard in opposition and the movant certifies in writing their efforts to give notice to the adverse party and reasons why it should not be required. Fed. R. Civ. P. 65(b). The decision to grant or deny a motion for immediate relief is left to the sound discretion of the district court. *Janvey*, 647 F.3d 585 at 595.

## II.    ANALYSIS

Each of the four preliminary injunction factors favors granting AOH a TRO followed by preliminary injunctive relief. AOH has filed a Verified Complaint and accompanying certification regarding notice of the action to Mansfield in compliance with Fed. R. Civ. P. 65(b).

A.      **There is a substantial likelihood that AOH will succeed on the merits.**

AOH has a substantial likelihood of success on the merits of its claims because: (1) the First Amendment affords full protection to charitable speech; (2) the Ordinances are **content-based regulations subject to strict scrutiny review** by this Court; and (3) the Ordinances are **not narrowly tailored under any standard of First Amendment review**. Because the Donation Box Law cannot stand even intermediate scrutiny, it certainly cannot stand strict scrutiny, which applies here. The Ordinances and threatened enforcement action therefore constitute a violation of protected speech under the First Amendment.

1.      **Charitable speech is protected speech under the First Amendment.**

"Congress shall make no law … abridging the freedom of speech . . . ." U.S. CONST. amend. I. Speech regarding charitable giving and solicitation is entitled to full constitutional protection by the First Amendment. *Planet Aid v. City of St. Johns*, 782 F.3d 318, 326 (6th Cir. 2015). Charitable solicitation is not limited to in-person communication. *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 212 (5th Cir. 2011). The Fifth Circuit has held that donation boxes are charitable speech that must be analyzed under strict scrutiny. *Id.*

As the Sixth Circuit explained, charitable donation bins "speak." *Planet Aid*, 782 F.3d at 325. A "passer-by who sees a donation bin may be motivated by it to research the charity to decide if he wants to donate – in so doing, the passer-by will gain new information about the social problem the charity seeks to remedy." *Id.* Donation bins "may ultimately motivate citizens to donate clothing or shoes even if they had not previously considered doing so." *Id.* In many respects they "mirror the passive speaker on the side of the road, holding a sign drawing attention to his cause." *Id.* at 325-26.

Including even just the name of a charity on a donation box communicates information about the beneficiary of the benevolence and explicitly advocates for the donation of clothing and household goods for that charity or mission. *Abbott*, 647 F.3d at 213. Donation boxes implicitly advocate for a charitable organization's views, ideas, goals, causes, and values. *Id.* They are therefore not mere collection points for unwanted items, but are rather silent solicitors and advocates for charitable causes. *Id.*

It has been affirmed repeatedly by the Supreme Court that "charitable appeals for funds, on the street or door to door, involve a variety of speech interests -- communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes -- that are within the protection of the First Amendment." *Vill. of Schaumburg v. Citizens for a Better Env't.*, 444 U.S. 620, 632 (1980). Indeed, they are subject to heightened First Amendment scrutiny. *Id.* at 633. Thus, regulations "must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech ...." *Id.* at 632.

### 2.   The Donation Box Law violates the First Amendment.

#### a.   The Donation Box Law is a content-based regulation of charitable solicitations demanding strict scrutiny review.

Determining which standard of review applies to a restriction of speech depends upon whether the regulation is content-based or content neutral. *Watkins v. City of Arlington*, 123 F. Supp. 3d 856, 864 (N.D. Tex. 2015). A speech regulation is content-based if the law applies to particular speech because of the topic discussed or the idea or message expressed. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The content-based analysis requires the court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. *Id.*

In addition, regulations that are facially content neutral will be considered content-based regulations of speech if they cannot be justified without reference to the content of the regulated speech or that were adopted by the government because of disagreement with the message the speech conveys. *Id.* at 164.

"Content-based regulations . . . are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* at 155 (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992)); *see also Amawi v. Pflugerville Indep. Sch. Dist.*, No. 1:18-CV-1091-RP, 2019 U.S. Dist. LEXIS 70208, at *748 (W.D. Tex. Apr. 25, 2019). When the government restricts speech, it bears the burden of proving the constitutionality of its actions. *Gordon*, 79 F. Supp. 3d at 688-89 (citing *McCutcheon v. Federal Election Comm'n*, 572 U.S. 185, 210 (2014)).

Here, the Donation Box Law clearly regulates speech on the basis of its content. The law does not ban or regulate all unattended, outdoor receptacles. Instead, it bans only those unattended, outdoor receptacles with an expressive message on a particular topic; namely, charitable solicitation and giving. Specifically, the Donation Box Law only bans receptacles intended for use as a collection point for accepting *donated* textiles, clothing, shoes, books, toys, dishes, household items, or other salvageable items of personal property. Mansfield, Tex., Code of Ordinances ch. 155, § 155.012. In other words, the law targets receptacles that carry a message about charitable giving—an expression that the Supreme Court, Fifth Circuit, and Sixth Circuit have held deserving of strong constitutional protection. *Riley v. Nat'l Fed. of the Blind*, 487 U.S. 781, 789 (1988); *Sec'y of State of Md. v. Munson Co.*, 467 U.S. 947, 959 (1984); *Schaumburg*, 444 U.S. at 633; *Abbott*, 647 F.3d at 213; *Planet Aid*, 782 F.3d at 328.

Indeed, the Supreme Court applies the most "exacting scrutiny to laws restricting the solicitation of contributions to charity, upholding the speech limitations only if they are narrowly tailored to serve a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 442 (2015) (citing *Riley*, 487 U.S. at 798); *accord Abbott*, 647 F.3d at 213 ("Having determined that the public receptacle disclosures at issue are charitable solicitations, we evaluate the constitutionality of § 17.922(d) under the standard announced in *Riley*, *Munson*, and *Schaumburg*."). "Applying a lesser standard of scrutiny to such speech would threaten 'the exercise of rights so vital to the maintenance of democratic institutions.'" *Id.* at 443 (quoting *Schneider v. State*, 308 U.S. 147, 161 (1939)).

An alternative basis for illustrating content discrimination in this case is that it cannot be justified without reference to the content of the message. A City official or enforcing officer cannot determine whether a particular receptacle is subject to the law's requirements without examining the content of the receptacle's message—i.e., whether it solicits a charitable donation. Accordingly, even if this Court were to find the law facially content-neutral (and it is not), the Donation Box Law cannot be justified without reference to the content of the regulated speech thereby rendering it content-based. *Reed*, 576 U.S. at 164.

Admittedly, the Donation Box Law does not regulate the time, place, and manner of all solicitations generally, *see City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1473 (2022); rather, it targets and restrict only charitable solicitation via donation bin. That the Ordinance applies to any speaker, including for-profit speakers, *see Nat'l Fed'n of the Blind of Tex. Inc. v. City of Arlington*, No. 3:21-CV-2028-B, 2022 U.S. Dist. LEXIS 162768, at *16-17 (N.D. Tex. Sep. 9, 2022), does not save it. While many speaker-based laws are content-based, *Nat'l Fed'n of the Blind v. Norton*, 981 F. Supp. 1371, 1373 (D. Colo. 1997), a law need not be

speaker-based in order to be content-based. *Reagan*, 142 S. Ct. at 1470; *Reed*, 576 U.S. at 170. That the regulation cannot be justified without reference to the content of the message—the appeal for charitable donations—provides a clear alternative basis for concluding that the Donation Box Law is thus not "content neutral."

Here, whether the restrictions under the Donation Box Law apply to a particular receptacle depends entirely on its communicative content. Mansfield is restricting an entire topic of protected speech as conveyed in a particular way. And although the Donation Box Law may include non-speech related restrictions, such as size limitations, it targets protected speech based on content—namely, its appeal for charitable donations—and they cannot be justified without reference to the same; therefore, the restrictions are content-based. *Reed*, 576 U.S. at 164.

> **b.    The overly burdensome restrictions cannot withstand any standard of First Amendment review because they are not narrowly tailored.**

Because the Ordinances are content-based restrictions on speech, they must satisfy strict scrutiny. *United States v. Playboy Entm't Grp.,* 529 U.S. 803, 813 (2000). Therefore, Mansfield bears the burden to establish that the Ordinances are narrowly tailored to promote a compelling government interest. *Planet Aid*, 782 F.3d at 330. If a less restrictive alternative would serve the government's purpose, Mansfield must use that alternative. *Id*. A law is narrowly tailored when it does not burden substantially more speech than is necessary to further the state's legitimate interests. *Arlington*, No. 3:21-CV-2028-B, 2022 U.S. Dist. LEXIS 162768, at *25, 42-43.

Here, the challenged Donation Box Law fails even the lesser intermediate scrutiny because it is insufficiently tailored to the City's asserted interests. *Id.* at 171. Because the Donation Box Law cannot stand intermediate scrutiny, it certainly cannot survive strict scrutiny. The City has identified its interest as promoting the public health, safety, and welfare of its citizens and stated

the purpose of the law is to impose maintenance and other restrictions to prevent blight and unpermitted dumping. *See* Mansfield, Staff Report, Description/History 1 (Apr. 18, 2022), APP036.

The Donation Box Law effectively bans donation boxes from all but six zoning use districts in Mansfield and then imposes numerous layers of setback and location restrictions within those six zones to make placement effectively impossible. In addition, the Donation Box Law imposes double permitting and unreasonable signage and consent requirements, which unduly burden--if not preclude--protected speech. Indeed, some of the location restrictions and the signage restrictions are so vague and overly broad that they grant unbridled discretion to the licensor to arbitrarily deny a permit.

### i.        The zoning and setback restrictions

Where zoning and setback requirements ban donation boxes from certain areas, the restrictions constitute a "location ban." *See, e.g., Norton v. City of Springfield*, 806 F.3d 411 (7th Cir. 2015) (holding unconstitutional a panhandling ordinance); *Young v. New York City Transit Authority*, 903 F.2d 146, 148 (2nd Cir. 1990); *Wilkinson v. Utah*, 860 F. Supp.2d 1284 (D. Utah 2012) (statute forbidding solicitation near a roadway of vehicle occupants was not narrowly tailored and not a valid time, place, or manner restriction). Location bans operate as de facto bans when they prohibit speech in the locations most worth soliciting.

The zoning and setback requirements imposed under the Donation Box Law effectively ban charitable speech from all areas in Mansfield where donation boxes may be seen by the public. For example, the law limits donation bins to nonresidential zones and then, within those six zones, adds layers of setback and placement restrictions that burden substantially more speech than is necessary to further the government's legitimate interests in ensuring proper maintenance of the

bins. *See* Ordinance No. OR-2288-23, § 2, amending Mansfield, Tex., Code of Ordinances ch. 155, § 155.054(B), "Permitted Use Table," Table D, APP011.

Tellingly, the Donation Bin Restriction Map attached to the Complaint, *see* APP021-24, illustrates the tremendous undue burden of the Donation Box Law on charitable speech in Mansfield. This Map shows the areas in which donation bins may be placed in Mansfield. These areas are marked grey. The Map also shows the areas in which donation bins are statutorily prohibited. These areas are marked red. It is clear, the red areas encompass most of Mansfield.[1]

The few grey areas that peripherally dot the Map are far from Mansfield's most visited areas, regular driving routes, foot traffic, shopping, or downtown. In fact, the majority of the small grey area in which donation bins are potentially permissible is in the I-1 and I-2 industrial zones. *Compare* the Donation Bin Restriction Map to the Mansfield Zoning Map (hereinafter "zoning map"), *available at* City of Mansfield, Texas, Zoning Map, https://www.mansfieldtexas.gov/Document_Center/View/721/Mansfield-Zoning-Map-PDF (*see* APP034). Relegating potential placement to a few, primarily industrial spaces unconstitutionally limits AOH's ability to solicit donations from the public who might wish to know about AOH and at the same time support it with contributions of used clothing and household items. *See Arlington*, 2022 U.S. Dist. LEXIS 162768, at *34.

There are many layers of zoning, setback, and location restrictions to block placement of donation boxes in Mansfield. The Donation Box Law prohibits placement of bins within 500 feet of every major roadway in Mansfield. *See* Ordinance No. OR-2288-23 § 3(b)(2), amending

---

[1] The vast red areas do not even account for all prohibitions in the Donation Box Law. They do not include banned locations that were difficult at this point to map, such as within 250 feet of a school, hospital, daycare, or recreational facility, or in a parking space, or in a "designated open space, community space, or passive or civic space[]," whatever those vague terms mean. *See* Declaration of Mike Knabb, ¶¶ 8-9, APP027-28.

Mansfield, Tex., Code of Ordinances ch. 155, § 155.099(B)(40)(b)(10) ("No Donation Box shall be located . . . within 500 linear feet of the right-of-way of U.S. Highway 287, U.S. Business Highway 287, State Highway 360, Farm-to-Market Road 157, Farm-to-Market Road 1187, Farm-to-Market Road 917, Main Street, Debbie Lane, Broad Street, Country Club Drive, Heritage Parkway, Matlock Road, or Lone Star Road"), APP012. That same section further prohibits placement within 250 feet of any residential area, public or private school, hospital, park, recreational facility, or daycare. *Id.* Each of these restrictions is debilitating, chilling AOH's First Amendment rights.

      The Donation Box Law also prohibits placement of a charitable donation bin in any "open" space or "passive" area. Ordinance No. OR-2288-23 § 3(b)(6), APP012. The terms "open" space and "passive" area are undefined. "Open space" is defined elsewhere in the Code to mean any outdoor space "open and unobstructed to the sky." *See* Mansfield Code § 155.012 (Definitions). Applying that definition, any outdoor, open-space placement would be prohibited. That provision alone might ban all donation bins from Mansfield, separate and apart from all the other zoning and location restrictions. Absent definitions and clear guidance on the face of the Donation Box Law, these prohibitions bestow unbridled discretion on the licensor to determine ad hoc what spaces are "passive" or "open" and, therefore, foreclosed to charities. That discretion wields a sword of censorship. *Munson*, 467 U.S. at 964 n.12 ("By placing discretion in the hands of an official to grant or deny a license, such a statute creates a threat of censorship that by its very existence chills free speech.").

      The Donation Box Law also bans placement of a donation bin within any parking space, which is the only viable placement for a donation bin on commercial properties. Ordinance No. OR-2288-23 § 3(b)(4), APP012. Parking spaces are the primary placement for a donation bin on

12

commercial properties. *See* Mansfield, Tex., Code of Ordinances ch. 155, § 155.099(B)(40)(b)(4). Because a donation bin is also prohibited on a sidewalk, in a roadway, drive aisle, landscape buffer, within a building setback, and in any open or passive space, the prohibition on donation bins in parking spaces leaves no alternative placement on commercial lots. Ordinance No. OR-2288-23 at § 3(b)(4)-(7), (10), APP012-13. Thus, the Donation Box Law effectively bans placement on commercial properties, and it outrights bars placement on non-commercial properties.

In addition, Section 3(b)(1) of the law prohibits "more than one (1) Donation Box . . . on any one lot." This too burdens more speech than necessary to achieve the City's legitimate interests and is therefore unconstitutional. In *Planet Aid*, the Sixth Circuit explained that "a citizen faced with a choice among several bins from different charities may be inspired to learn more about each charity's mission in deciding which charity is consistent with his values, thus influencing his donation decision." 782 F.3d at 325. The citizens of Mansfield have as much a right to see those charitable messages and make that choice as the charity has in broadcasting its message and seeking support via donation bin.

These overly burdensome zoning and placement restrictions effectively block the placement of donation bins in most of Mansfield, removing the bins from the view of a passersby traveling on the adjacent street. The bins are outright prohibited in the areas in which it is most worth soliciting because they are in proximity to homes and commercial areas where passersby would see the message and be motivated to donate and learn more about the charitable cause. As a result, the charitable message intertwined with the donation box cannot reach the public.

The function of the bins is two-fold: (1) they deliver a message that builds awareness about the organization's cause, and (2) they communicate an appeal for support of that cause. In addition, they redirect useful, much needed items from personal wastebaskets to people who actually need

them. The donation bins communicate a charitable message and advocate charitable causes, including the plight of those less fortunate and/or in need. Such advocacy and charitable giving can hardly be found to harm the public health, safety and welfare. Rather, such charitable giving does the opposite—it benefits the public.

Mansfield likewise cannot claim that placing strict limits on donation bins is necessary to improve the public health, welfare and safety of Mansfield or to beautify Mansfield when other types of signs, collection receptacles, and trash bins create the same problem. *Reed*, 576 U.S. at 172 (citing *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 425 (1993)). Nor can it show that charitable donation bins pose a greater threat to public safety than commercial, recycling, or trash bins. *Id*. The answer to the problem of poor maintenance, which admittedly has never been an issue for AOH in the four years it has placed donation bins in Mansfield, is strong maintenance restrictions and penalties for enforcement thereof. Taking a sledgehammer to a problem that requires a scalpel shreds the First Amendment rights at stake—for AOH and all similarly situated charities.

Numerous less restrictive alternatives remain available to Mansfield to achieve its stated purposes. For example, Mansfield could require weekly or bi-weekly pickups or inspections or stricter maintenance requirements. Mansfield's implication, without evidence, is that charities would be negligent in failing to conduct timely pickup or maintain the appearance of the bins. (as opposed to operators of other bins, receptacles, and signs). But courts in the Fifth and Sixth Circuits have already rightly rejected such hypothetical justifications. *See Planet Aid*, 782 F.3d at 323, 330; *Arlington*, 2022 U.S. Dist. LEXIS 162768, at *34.

Indeed, the prohibitions challenged here that foreclose placement in most of the City would fail even intermediate scrutiny under this court's recent ruling in *Nat'l Fed'n of the Blind of Texas*

14

*v. Arlington*. 2022 U.S. Dist. LEXIS 162768, at *34. That court ruled that a donation bin law prohibiting donation bins in a number of zoning districts—unless justified by evidence that the Ordinance's other regulations and/or less restrictive zoning limitations have proven ineffective to control bin-associated ills in those areas—is not narrowly tailored. *Id*. The map presented in *Arlington*, showing the few areas that might allow donation bins as dotting the periphery of the city, looked much like the Donation Bin Restriction Map presented here. *Arlington*, 2022 U.S. Dist. LEXIS 162768, at *33. Relying on that map in *Arlington,* the Court found "as a matter of law that [the challenged zoning restrictions] burden[ed] substantially more speech than is necessary to achieve the City's legitimate goals." *Id.*

Because the Donation Box Law easily fails intermediate scrutiny under *Arlington*, it certainly fails strict scrutiny, which applies here. The challenged Donation Box Law cannot survive any level of First Amendment review because it is not narrowly tailored to serve a legitimate government interest, and there are ample less restrictive alternatives available to Mansfield. *Id.*

Finally, the challenged zoning, setback and location prohibitions are significantly more restrictive than those applied to traditional commercial signs or other types of bins in Mansfield. Mansfield cannot lawfully extend greater protection to commercial speech than protected charitable speech, and the law is in direct conflict with *Reed* and Supreme Court precedent. *See Riley*, 487 U.S. at 789; *Munson*, 467 U.S. at 959; *Schaumburg*, 444 U.S. at 632.

### ii.    Double permitting and unreasonable consent rule

The Donation Box Law also requires double permitting and an unreasonable consent requirement, which unduly burden AOH's First Amendment right to charitable speech in Mansfield. The City requires AOH and other charities to file both a specific use permit *and* a

donation box permit prior to exercising their right to protected speech via charitable donation bin in five of six zones in Mansfield. *See* Ordinance OR-2288-23, Permitted Use Table, § 3(a), 3(b)(12), APP011-12, 13. In addition to the donation bin permit, the dual permitting system involves an overly burdensome specific use permitting requirement and site plan requirement. Mansfield Code § 155.115(A)(1)-(2). To obtain a specific use permit, the charity apparently must file the typical application for a specific use permit, which is onerous and must be heard by the City Council. The site plan alone requires:

(1)   a complete signed application as provided by the planning department or on the city's website at: www.mansfield-tx.gov.

(2)   the appropriate fee in accordance with the current fee schedule adopted by city council.

(3)   on a separate 8½" x 11" exhibit, provide a metes and bounds description of the property included in the zoning change request, including the total acreage, signed and sealed by a registered surveyor.

(4)   on a separate 24" x 36" or 22" x 34" sheet, drawn at the same scale as the plan, show the approximate topography of the plan area, all water courses that will remain in a natural state, 100-year floodway and 100-year floodplain per fema and other hydraulic and hydrologic studies as necessary. Provide two copies.

(5)   on a separate 24" x 36" or 22" x 34" sheet, drawn at the same scale as the plan, show proposed and existing water and sanitary sewer locations. Also include the locations and sizes of private water and sanitary sewer lines. Provide two copies.

(6)   a separate exhibit and documents indicating the traffic volumes, turning movements, evaluation of ingress and egress existing and proposed, when required by the city engineer.

(7)   an electronic copy of the plan in accordance with current established policy.

(8)   copies of the plan shall be submitted to the city in the manner specified by the most current submittal policies. The plan must be drawn to an acceptable size and scale and must indicate all significant features of the proposed development to include:

(a)   a vicinity map locating the property in relationship to existing major thoroughfares.

(b)   title block, preferably in the lower right-hand corner, including the following: "site plan for sup, name of development,

16

survey and abstract number or recorded plat information, city, county, state, date of preparation, acreage and number of lots".

(c)   acceptable scale: 1" = 20', 1" = 40', 1" = 100' or as approved.

(d)   type size is legible at full scale and when reduced.

(e)   north arrow, graphic and written scale in close proximity.

(f)   name, address, phone and fax of owner/developer and the firm preparing the plan.

(g)   a map showing the boundary dimensions.

(h)   adjacent or surrounding land uses, zoning, streets, drainage facilities and other existing or proposed off-site improvements, sufficient to demonstrate the relationship and compatibility of the site to the surrounding properties, uses and facilities.

(i)   the location and size of all streets, alleys, parking lots and parking spaces, loading areas or other areas to be used for vehicular traffic and the proposed access and connection to existing or proposed streets adjacent to the plan area. Include a chart indicating the number of required parking spaces by use, the method of calculation and the number of proposed parking spaces.

(j)   the types of surfacing, such as paving (e.g. Concrete, brick, turf, etc.) To be used at the various locations.

(k)   the location and size of all fire lanes with all curb radii adjacent to the fire lane labeled. The nearest fire hydrant dimensioned to the property corner and all proposed fire hydrants.

(l)   the location, height, setbacks and minimum floor areas for all buildings, and if non-residential, the floor ratio. Include the following building details for non single-family developments:

1.   Entrance and exits to the building.

2.   Architectural renderings or elevations of proposed structures with all exterior materials for roofs, awnings, walls etc. Labeled.

3.   Calculations of the masonry content on each facade and in total for each building. (example: area of front facade = h x l, percent masonry = 80%)

4.   Distance between buildings and distance from building to property lines.

(m)   the number, location, and dimensions of the lots; and the setbacks, number of dwelling units, and number of units per acre (density). A graphic showing a typical lot layout with size and setbacks.

(n)   the location of all on-site facilities for liquid waste or method of temporary storage pending disposal, including existing or proposed septic fields.

17

(o)   the location, size and type of each outside facility for waste or trash disposal. If no facility is shown, provide a note indicating method of disposal and removal.

(p)   a tree survey locating all protected trees by type, size and species and mitigation plan, if required by the city's natural resources management ordinance. (refer to the tree preservation application as found on the city's website.)

(q)   a landscape plan showing all landscape setbacks and buffers; parking lot landscaping; and any additional landscaping proposed. A chart indicating the size, length and width of the landscape areas, with the required number of plants and the proposed number of plants should be included on the plan. The landscape plan may be presented on a separate exhibit on the same sheet size and at the same scale as the site plan.

(r)   the approximate location and size of greenbelt, open, common, or recreation areas, the proposed use of such areas, and whether they are to be used for public or private use. If private, indicate the proposed ownership.

(s)   the approximate location and size of required parkland dedication areas, as required by the city's parkland dedication ordinance for residential development.

(t)   the location, type, and size of all fences, berms, or screening features.

(u)   a plan, including elevations, showing location, size, height, orientation and design of all signs regulated by the city's sign ordinance.

(v)   the location, size and type of all pedestrian areas, bike paths and sidewalks.

(w)   the location, size, type and purpose of any outside storage or outside display and method of screening. Indicate the percentage of outside storage as compared to the building square footage.

(x)   phases of development should be shown and labeled. Provide a development schedule indicating the start and finish date of each phase and improvements, broken down by use and acreage.

(y)   *when deemed necessary, the planning and zoning commission or city council may ask for more information during the review of a specific use permit.* Likewise, they may waive some of the information if the application is a simple request to deviate from the existing zoning category on the property.

Mansfield Code § 155.080(D).

This is overly broad and unduly restrictive in that it imposes incredible burdens on protected speech, much more than necessary to further the City's stated ends. And §

155.080(D)(8)(Y) grants unbridled discretion to the licensor to, "when deemed necessary," ask "for any more information during the review of a specific use permit." The need for additional information could be limitless. Further, all specific use permits must proceed through a public hearing process before City Council prior to approval. This costly and oppressive regulatory burden on a protected speech activity easily fails intermediate scrutiny and certainly fails strict scrutiny.

AOH seeks to exercise its right to free speech in Mansfield by operating its charitable donation bins on consented private property without undue government restrictions applying to that protected speech activity. The law contains a requirement that property *owners* must consent, rather than the lawful occupants with legal control and authority over private property (such as lessees, property managers, and other lawful agents of property owners). The law mandates that only property owners may consent to placement of a donation bin. *See* Ordinance OR- 2287-23, § 116.02(A)(3), APP003. The law thus prohibits a Walmart store manager from authorizing a bin placement in its parking lot because the lot is owned by someone else, even if Walmart lawfully leases the lot. Robertson Decl., ¶ 15, APP019-20. This undue burden makes even more difficult the few placements that might have been possible in the small grey areas on the Donation Bin Restriction Map, APP021-24.

### iii.    The signage restrictions

The Donation Box Law also limits the colors that may appear on a donation bin, prohibiting "high-intensity" colors as well as black ink from appearing on a donation bin, including its signage. *See* Ordinance No. OR-2288-23, § 3(b)(13), APP013. The law does not define what "high-intensity" colors are. This highly subjective term is left to the discretion of the licensor. What if the licensor determines that the primary colors are "high-intensity" colors for the purpose of

19

denying a donation bin of a speaker or cause they do not like? The law vaguely requires the use of only "subtle, neutral, or earth-toned color scheme[s]" without defining what any of those subjective terms mean. *Id.*

As explained above, leaving subjective, undefined terms to the interpretation of the enforcer grants excessive discretion and risks freewheeling censorship. *Munson*, 467 U.S. at 964 n.12; *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992). "The reasoning is simple: If the permit scheme 'involves appraisal of facts, the exercise of judgment, and the formation of an opinion' by the licensing authority 'the danger of censorship and of abridgment of our precious First Amendment freedoms is too great' to be permitted. *Forsyth*, 505 U.S. at 131 (internal quotations and punctuation omitted). The First Amendment does not tolerate unbridled discretion in a prior restraint.

### 3.   Substantial Overbreadth

Regulations are considered overbroad if they prohibit a substantial amount of protected speech. *JSLG, Inc. v. City of Waco*, No. W-11-CA-131, 2011 U.S. Dist. LEXIS 164422, at *23-24 (W.D. Tex. Sept. 26, 2011) (citing *United States v. Williams*, 553 U.S. 285, 292 (2008)). Such regulations result in a chilling effect upon constitutionally protected activity. *Id.* at *23. When determining overbreadth, a court must determine whether, even if a law has a plainly legitimate sweep, it has a substantial number of applications that are unconstitutional. *Id.* at *24-25 (citing *United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010)). This entails determining whether impermissible applications outweigh permissible ones. *Id.*

Here, the Ordinances are overbroad because they prohibit a substantial amount of fully-protected charitable speech. In fact, the Ordinances effectively ban all charitable speech expressed in a particular manner, i.e., via donation box. Mansfield's purported purpose for enforcing the

Ordinances, including protecting the public health, safety, and welfare of Mansfield's residents, as well as protecting the aesthetic well-being and tidy and orderly appearance of the community, seemingly may appear legitimate. However, the Ordinances specifically target charitable speech and prevent an entire means of delivering charitable messages. Mansfield's purported purposes cannot outweigh the importance of protecting constitutional rights, especially free speech.

The Supreme Court provided the expansive remedy of suspending all enforcement of an overbroad law out of concern that the threat of enforcement of an overbroad law may deter or chill constitutionally protected speech. *Nat'l Fed'n of Indep. Bus. v. Perez*, No. 5:16-cv-00066-C, 2016 U.S. Dist. LEXIS 89694, at *97 (N.D. Tex. June 27, 2016) (citing *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003)). Many people, rather than undertake the considerable burden of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech. *Id.* at *97-98 (citing same).

Here, the remedy of suspending all enforcement of the overbroad Ordinances is necessary, especially considering the circumstances surrounding the organizations who are punished by the Ordinances. The Ordinances specifically target charitable organizations, nonprofit organizations, and other entities soliciting for charitable purposes. These organizations rely heavily, if not exclusively, on public support and donations to pursue their charitable missions, and most do not have the resources or expertise required to engage in litigation. As a result, those punished by the Ordinances will chose to abstain from protected charitable speech by removing their donation boxes from Mansfield and ceasing the pursuit of charitable support in this manner. And ultimately, it is the residents of Mansfield that are disadvantaged and deprived of the opportunity to see AOH's message, learn more about its cause, and more easily donate used goods, upon which AOH heavily relies.

21

4.      **The Ordinances constitute a prior restraint on speech.**

The government may not prospectively silence speech except in extremely limited circumstances. *Texas State Troopers Ass'n v. Morales*, 10 F. Supp. 2d 628, 634 (N.D. Tex. 1998) (citing *Near v. Minnesota*, 283 U.S. 697, 716 (1931)). Prior restraints of protected speech violate the First Amendment and, therefore, any system of prior restraint comes to the court with a heavy presumption against its constitutional validity. *Id.* (citing *Freedman v. State of Maryland*, 380 U.S. 51, 57 (1965)); *see also Davis v. East Baton Rouge Parish School Bd.*, 78 F.3d 920, 928 (5th Cir. 1996). A prior restraint may take the form of a requirement of a license or permit. "A scheme that places unbridled discretion in the hands of government official or agency may also constitute prior restraint." *Borden Park, L.P. v. City of San Antonio*, No. SA-03-CA-1491-RF, 2006 U.S. Dist. LEXIS 62729, *31 (W.D. Tex. Aug. 16, 2006) (citing 16B C.J.S. *Constitutional Law* § 808 (2005)).

Here, the Ordinances constitute a prior restraint on fully-protected charitable speech because they preemptively prohibit the delivery of charitable messages by effectively banning donation boxes from Mansfield. Furthermore, the Ordinances grant Mansfield unbridled discretion to grant or deny permit applications, revoke permits at any time, determine when and where to enforce the permit regulations, and establish fees at its discretion. In addition, pursuant to the Ordinances, Mansfield has the authority to impound any donation box it deems in violation of the permit requirements and charge any violator with a misdemeanor punishable by a fine not to exceed $2,000.00 per bin per day. The Ordinances do not provide for any judicial review prior to impoundment that the City, in its discretion, deems noncompliant. The prior restraint on free speech imposed under the Ordinances is patently unconstitutional.

**B.      AOH will suffer irreparable harm absent the TRO and preliminary injunction.**

The United States Supreme Court and the Courts within the Fifth Circuit have long held that a violation of First Amendment rights—even temporarily—amounts to irreparable injury for purposes of entitlement to preliminary injunctive relief, including temporary restraining orders. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 295 (5th Cir. 2012); *Gordon*, 79 F. Supp. 3d at 694 (quoting *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013)).

In the Fifth Circuit, there is a long-established principle that a violation of First Amendment rights per se constitutes irreparable harm". *DeOtte v. Azar*, 393 F. Supp. 3d 490, 511 (N.D. Tex. 2019). Where "injuries are inextricably intertwined with Plaintiffs' loss of constitutional rights, this Court must conclude that Plaintiffs have suffered irreparable harm." *U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822, 839 (N.D. Tex. 2022).[2]

A TRO and preliminary injunctive relief is necessary here, where the Ordinances prevent AOH from exercising charitable free speech. First Amendment violations inflict irreparable harm in part because they cannot be remedied by an award of economic damages. *Deerfield Med. Ctr.*

---

[2] Every other circuit court of appeals that has addressed the issue has held the same. *See, e.g., Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) (holding that a violation of the First Amendment constitutes irreparable injury for purposes of a preliminary injunction); *Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010) (same); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (same); *Nuxoll v. Indian Prairie Sch. Dist. #204*, 523 F.3d 668, 669-70 (7th Cir. 2008) (same); *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002) (same); *Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005) (same); *Tucker v. City of Fairfield*, 398 F.3d 457, 464 (6th Cir. 2005) (same); *Newsom v. Albermarle County Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003) (same); *Bery v. City of New York*, 97 F.3d 689, 693 (2nd Cir. 1996) (same); *Maceira v. Pagan*, 649 F.2d 8, 18 (1st Cir. 1981); *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 867 (8th Cir. 1977) (same).

*v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). Here, economic damages cannot remedy AOH's inability to exercise its charitable speech, so the Ordinances inflict irreparable harm.

AOH, and similar organizations, rely on community support including donations placed in donation boxes to further their charitable purposes and to help those in need. *See* Decl. of Richard Troy Robertson, ¶¶ 7-9, 13, APP017-19; Decl. of Mark Stolze, ¶¶ 7-10, APP060-61; Decl. of Norma Crosby, ¶¶ 3, 4, 6, 8-10, APP064-65. AOH and similarly situated charities are placed at a severe disadvantage without the ability to collect clothes and household items in parts of Mansfield where donation boxes are most effective. Furthermore, the residents of Mansfield that depend on AOH's donations, as well as donations from other charitable organizations, are directly and irreparably harmed by the Ordinances' effective ban on donation boxes.

### C.   The potential injury to AOH outweighs any injury to Mansfield.

AOH has shown that it will suffer irreparable harm as a result of Mansfield's enforcement of the Ordinances. Mansfield will not be able to demonstrate that any potential injury to itself as a result of permitting the placement of donation boxes and their inseparable charitable speech in Mansfield outweighs the harm inflicted on AOH by violating its free speech rights. Therefore, the balance weighs in favor of granting AOH's request for a TRO followed by a preliminary injunction. Indeed, Mansfield is free to regulate the maintenance of charitable donation bins through means less restrictive than severe zoning, placement and permitting restrictions that effectively outlaw their message.

### D.   Preliminary injunctive relief will not disserve the public interest.

The public interest will not be disserved by issuing the requested TRO and injunction. The Fifth Circuit has held that injunctions protecting First Amendment Freedoms are always in the

public interest. *Texans for Free Enter.*, 732 F.3d at 539. In fact, the requested TRO and preliminary injunction will serve the public interest by permitting organizations to solicit for charitable donations, via donation boxes, for the benefit of Mansfield residents. The TRO and preliminary injunction will ensure that residents in need are provided with clothing and other household items that would otherwise go to waste. And most importantly, the TRO and preliminary injunction will protect constitutionally-protected rights.

## CONCLUSION

For these reasons, the Court should grant the temporary restraining order followed by a preliminary injunction and other relief requested in AOH's Motion by entering the attached proposed order that Mansfield refrain from enforcing its Donation Box Law, including fining AOH or impounding its donation boxes.

Dated: February 10, 2023        Respectfully submitted,

/s/ *Bennett Rawicki*
Bennett Rawicki, TX #
HILGERS GRABEN PLLC
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (214) 842-6828
Facsimile: (402) 413-1880
Email: brawicki@hilgersgraben.com

-and-

COPILEVITZ, LAM & RANEY, P.C.
Karen Donnelly (*pro hac* forthcoming)
William E. Raney (*pro hac* forthcoming)
Kellie Mitchell Bubeck (*pro hac* forthcoming)
310 W. 20th Street, Suite 300
Kansas City, Missouri 64108
Telephone: (816) 472-9000
Facsimile: (816) 472-5000
Email: kdonnelly@clrkc.com

*Attorneys for Plaintiff Arms of Hope*

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2023, a true and correct copy of the foregoing was served on all counsel of record via the Court's ECF system. Additionally, a courtesy copy was served on counsel for Mansfield, Fritz Quast (fquast@toase.com).

_/s/  Bennett Rawicki_____
Bennett Rawicki