**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| ARMS OF HOPE, a Texas Nonprofit Corporation,　　　　　) | |
| 　　　　　　　　　　　　　　) | |
| 　　　　Plaintiff,　　　　　) | |
| 　　　　　　　　　　　　　　) | |
| 　　v.　　　　　　　　　　　) | **Case No. 4:23-cv-00131-O** |
| 　　　　　　　　　　　　　　) | |
| CITY OF MANSFIELD, TEXAS,  a municipal ) | |
| Corporation,　　　　　　　　) | |
| 　　　　　　　　　　　　　　) | |
| 　　　　Defendant.　　　　　) | |
| 　　　　　　　　　　　　　　) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**<u>OF MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

Table of Contents ........................................................................................................ i

Table of Authorities ................................................................................................... iii

Introduction ................................................................................................................ 1

Statement of Facts...................................................................................................... 2

   A.  Arms of Hope's charitable donation box programs.......................................... 2

   B.  Mansfield's Donation Box Law......................................................................... 4

   C.  Mansfield's threatened enforcement against Arms of Hope ............................. 6

   D.  Legislative intent ............................................................................................. 7

      1.  Mansfield agrees it targeted the "banned areas" because they are "highly visible areas." ........................................................................................ 7

      2.  Mansfield cannot show a single placement location that would comply with the Donation Box Law. ...................................................................... 8

      3.  Mansfield's documents show it is trying to "keep [] donation bins out of the city." ......................................................................................... 9

      4.  Mansfield's documents demonstrate that its ban on donation boxes is personal............................................................................................... 9

   E.  The maps ...................................................................................................... 11

Standard of Review.................................................................................................. 13

Argument.................................................................................................................. 13

I.   The Donation Box Law is neither narrowly tailored to a legitimate government interest nor free from unbridled discretion; therefore, it cannot pass even intermediate scrutiny .......................................................................................... 15

   A.  The Donation Box Law is insufficiently tailored ............................................. 15

   B.  The prior restraint grants unbridled discretion to the licensor. ......................... 21

II.  This Court should apply strict scrutiny to Mansfield's Donation Box Law because it is a content-based prior restraint that regulates and bans fully

protected charitable solicitations. Because the Donation Box Law cannot pass intermediate scrutiny, it certainly cannot withstand strict scrutiny ........................ 22

A.   Laws regulating charitable solicitations receive heightened First Amendment scrutiny. .................................................................................................... 22

B.   The Donation Box Law is a prior restratint on protected speech and, therefore, requires strict scrutiny. ......................................................................... 23

C.   *Abbott* is binding precedent holding that laws restricting charitable donation bins receive the same strict scrutiny applied in *Riley*, *Munson*, and *Schaumburg* ........................................................................................... 26

D.   *Planet Aid* made clear that bans on donation bins are inherently content based and subject to strict scrutiny. *Reed* and *Reagan* agree......................................... 29

E.   The Donation Box Law fails strict scrutiny. ....................................................... 31

III. Mansfield's Donation Box Law is overbroad. ............................................................ 34

IV. Plaintiff is entitled to a permanent injunction. ........................................................... 36

A.   Plaintiff has suffered irreparable injury ............................................................. 36

B.   Legal remedies are inadequate to compensate AOH for its loss of constitutional rights ...................................................................................... 37

C.   The balance of hardships weighs in favor of Plaintiff. ...................................... 37

D.   The public interest lies squarely within the issuance of a permanent injunction........................................................................................................ 38

Conclusion.................................................................................................................... 38

Certificate of Service ................................................................................................... 39

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. United States*, 509 U.S. 544 (1993) ............................................................25

*Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021)......................................34, 35

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987) ..........................................36

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................13

*Baker v. City of Fort Worth,* 506 F. Supp. 3d 413 (N.D. Tex. 2020) ..............................23, 26, 32

*Bank of Hope v. Chon*, 938 F.3d 389 (3d Cir. 2019)........................................................24

*Bantam Books v. Sullivan*, 372 U.S. 58 (1963)..............................................................23

*Blitch v. City of Slidell*, 260 F. Supp. 3d 656 (E.D. La. Jun. 19, 2017)..........................33

*Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276 (D. Colo. 2015) ........................33

*Bruni v. City of Pittsburgh*, 141 S. Ct. 578 (2021) ......................................................30

*Carico Invs., Inc. v. Tex. Alcoholic Bev. Comm'n*, 439 F. Supp. 2d 733, 750 (S.D. Tex. 2006)
    ................................................................................................................37

*Catholic Leadership Coalition of Tex. v. Reisman*, 764 F.3d 409 (5th Cir. 2014) ........................33

*CBS v. Davis*, 510 U.S. 1315 (1994)................................................................................25

*CBS, Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975) ..............................................................24

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..................................................................13

*Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557
    (1980)........................................................................................................................26

*Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273 (5th Cir. 2003)......................................................21

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018)....................................................24

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464 (2022) ....................29, 30

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936 (11th Cir.
    2011) ....................................................................................................................17, 20

*Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920 (5th Cir. 1996) ............................................24

*DeOtte v. Azar*, 393 F. Supp. 3d 490 (N.D. Tex. 2019) ......................................................37

*Ebay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)................................................................36

*Elrod v. Burns*, 427 U.S. 347 (1976).........................................................................................37

*Forsyth County v. Nationalist Movement,* 505 U.S. 123 (1992)......................................................23

*Franciscan All. Inc. v. Azar*, 414 F. Supp. 3d 928 (N.D. Tex. 2019)..............................................13

*Freedman* v. *Maryland*, 380 U.S. 51 (1965)..................................................................................21

*Harbourside Place, Ltd. Liab. Co. v. Town of Jupiter*, 958 F.3d 1308 (11th Cir. 2020)................24

*Hays Cty. Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992)........................................................20

*Henerey ex rel. Henerey v. City of St. Charles*, 200 F.3d 1128 (8th Cir. 1999) ...........................24

*Jornaleros De Las Palmas v. City of League City*, 945 F. Supp. 2d 779 (S.D. Tex. 2013) .............
    ...................................................................................................................................30, 36, 37

*Levine v. United States Dist. Court for Cent. Dist.*, 764 F.2d 590 (9th Cir. 1985) ......................25

*McCullen v. Coakley*, 573 U.S. 464 (2014) .....................................................................17, 20, 34

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981)....................................................25, 32

*Millennium Rests. Group, Inc. v. City of Dallas*, 191 F. Supp. 2d 802, 810 (N.D. Tex.
    2002)......................................................................................................................................36, 37

*N.A.A.C.P. v. City of Richmond,* 743 F.2d 1346 (9th Cir. 1984) ...............................................23, 24

*National Federation of the Blind of Tex., Inc. v. Abbott,* 647 F.3d 202 (5th Cir. 2011)......................
    .......................................................................................................................22, 23, 26, 27, 28

*National Federation of the Blind of Tex. Inc. v. City of Arlington*, No. 3:21-CV-2028-B,
    2022 WL 4125094 (N.D. Tex. Sep. 9, 2022) ......................................................15, 16, 18, 21

*Near v. Minnesota*, 283 U.S. 697 (1931) .......................................................................25, 26, 34

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976).............................................................23, 25

*Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279 (5th Cir. 2012) ..........36, 37, 38

*Planet Aid v. City of St. Johns*, 782 F.3d 318 (6th Cir. 2015) .........................27, 29, 30, 31, 32, 33

*Recycle for Change v. City of Oakland*, 856 F.3d 666 (9th Cir. 2017) ...........................16, 30, 31

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) .......................................................................29, 31

*Riley v. National Federation of the Blind of North Carolina*, 487 U.S. 781 (1988)........................
...................................................................................................................21, 22, 26, 28, 31

*Secretary of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947 (1984). ....................
...............................................................................................23, 25, 26, 28, 35, 37

*Sindi v. El-Moslimany*, 896 F.3d 1 (1st Cir. 2018) ..................................................................24

*State of Washington v. TVI, Inc.*, 524 P.3d 622 (Wash. 2023).......................................................28

*Staub v. City of Baxley*, 355 U.S. 313 (1958)..............................................................................21

*Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 657 F. Supp.2d 795 (S.D. Tex. 2009) .............37

*Turner Broad. Sys. v. FCC*, 512 U.S. 622 (1994) .......................................................................17

*United States v. Playboy Entm't Grp.*, 529 U.S. 803 (2000)..............................................25, 32, 33

*Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620 (1980) ...................................
...............................................................................................................22, 26, 28, 32

*Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 858 (N.D. Tex.
2008) ..........................................................................................................................36

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989).............................................................15, 20

*Watchtower Bible & Tract Soc'y of New York v. Vill. of Stratton*, 536 U.S. 150 (2002)...............24

*Watkins v. City of Arlington*, No. 4:14-cv-381-O, 2014 U.S. Dist. LEXIS 95082 (N.D.
Tex. July 14, 2014) ..........................................................................14, 15, 17, 18, 19

*Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015)...................................................................28, 32

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ..................................................37

**Constitutional Provisions**

U.S. CONST. amend. I ............................................................................................... *passim*

U.S. CONST. amend. XIV ..................................................................................................37

**Statutes**

Mansfield, Tex., Code of Ordinances ch. 116..................................................................... *passim*

Mansfield, Tex., Code of Ordinances ch. 155..................................................................... *passim*

**Federal Rules of Civil Procedure**

Rule 1 ........................................................................................................................13

Rule 56(a).................................................................................................................13

**Other**

City of Mansfield, Texas, Office of the City Manager,
        https://www.mansfieldtexas.gov/181/Office-of-the-City-Manager (Dec. 14, 2023) ............10

City of Mansfield, Texas, https://www.mansfieldtexas.gov/DocumentCenter/
        View/596/Planning---Development-Fee-Schedule-PDF?bidId= (Dec. 20, 2023) .................5

*Donation*, BLACK'S LAW DICT. 526 (8th ed. 2004)........................................................26, 27

Environmental Protection Agency, Facts and Figures about Materials, Waste and
        Recycling, *Textiles: Material-Specific Data*, https://www.epa.gov/facts-and-figures-
        about-materials-waste-and-recycling/textiles-material-specific-data (Dec. 3, 2022) ............3

*Solicitation*, BLACK'S LAW DICT. 1520 (9th ed. 2009)...........................................................26

## INTRODUCTION

This is a freedom of speech case challenging the City of Mansfield's Ordinances OR-2287-23 and OR-2288-23, together the "Donation Box Law," which impose an unconstitutional prior restraint on Arms of Hope's protected speech. The Donation Box Law effectively silences a form of charitable speech by banning solicitations for certain contributions via donation box in most of Mansfield. The donation bins broadcast a message and provide an opportunity to residents to support this charity. These restrictions of protected speech are subject to strict First Amendment scrutiny and, as this Court found, cannot stand even intermediate scrutiny.

This Court properly granted a preliminary injunction, finding the Donation Box Law so insufficiently tailored it fails intermediate scrutiny. In ruling on the present motion, however, this Court should reconsider the level of scrutiny that applies and apply strict scrutiny, not intermediate scrutiny. This is because: (1) the law restricts charitable solicitations; (2) it is content-based; and (3) it is a prior restraint. Each separately requires strict scrutiny, which the Donation Box Law indisputably fails. Clarification of the correct legal test to be applied to laws targeting donation bins will help governments regulate in a proper, constitutional manner.

Discovery in this case has shown how important strict scrutiny is to protect charities' free speech rights. Mansfield's current City Manager threatened to appoint a new judge if a judge did not allow the City to restrict donation boxes: "We need a judge to authorize us to move these damn things. If he won't authorize it, I want to know immediately. The appointment of a municipal court judge will be on an agenda shortly thereafter." APP094 (CITY 0335). The City Manager also threatened Arms of Hope in particular: "I think we need to hammer them[.]" APP093 (CITY 0334).

This Court should declare the law facially unconstitutional and permanently enjoin Mansfield's enforcement of the Law because: (1) it is unconstitutional; (2) Arms of Hope will

suffer irreparable injury if the injunction is not issued; (3) the balance of hardships favors protecting Arms of Hope's rights to free speech and association; and (4) the public interest would be served by the injunction.

## STATEMENT OF FACTS

On January 23, 2023, Mansfield adopted Ordinance Nos. OR-2287-23 and OR-2288-23 (together, the "Donation Box Law"). APP001-14 (adding a new Chapter 116 of the Mansfield Code of Ordinances to create a permitting process for donation boxes and amending Chapter 155 of the Mansfield Code to regulate the location, placement, size, signage, appearance, and maintenance of donation boxes). The Donation Box Law subjects donation boxes (or bins) to a new permitting and regulatory scheme. APP002; APP010-11. Before May of 2022, donation boxes were unregulated by Mansfield. *Id.*

"Donation Box" is defined as "[a]ny drop-off box, bin, container, receptacle, trailer or similar facility that accepts donated textiles, clothing, shoes, books, toys, household items and/or other salvageable personal property items to be used by the operator for distribution, resale or recycling." Mansfield, Tex., Code of Ordinances ch. 155, § 155.012.

### A. Arms of Hope's charitable donation box program

Arms of Hope ("AOH") is a tax-exempt charitable organization that relies exclusively on public support and utilizes donation boxes to build awareness for its cause and to solicit support for its charitable program. APP016-17 ¶¶ 3-8; APP073-75 (AOH Answer to ROG No. 15). AOH provides shelter, clothing, necessities, education, clinical services, love, and spiritual guidance to at-risk children and families in their care to help them avoid homelessness, poverty, abuse, and neglect, and in a nurturing, Christian environment in the Dallas metropolitan area and throughout Texas. *Id.* AOH's residential care facilities have over 150 years combined experience in

comprehensive residential care programs for children. *Id.* AOH and other charitable organizations use donation boxes to spread their charitable message and encourage support for the cause. APP017 ¶¶ 7-8; APP072-73 (AOH Answer to ROG No. 14). Furthermore, donation boxes are an asset to cities, including Mansfield, because they provide to residents in need clothes and other household items that could otherwise be sent to the local landfill. *Id.*; APP017-18 ¶ 9.[1] Donation bin programs divert discarded clothing from the waste stream to charity. *Id.*

AOH desires to place donation boxes in high-traffic and high-visibility areas with shopping, retail, dining, churches, and schools. APP019-20 ¶¶ 15, 17. But Mansfield's recently enacted Donation Box Law prohibits donation bins in almost all of these areas. APP0011-14; APP019-20 ¶¶ 14-19; APP022-24; APP068-70 (AOH Answer to ROG No. 11); Def.'s App., ECF No. 20-1, at 23.[2] AOH is not alone. The National Federation of the Blind of Texas and National Children's Cancer Society submitted declarations in support of their shared desire to place donation bins in Mansfield. APP059-66. Those charities affirmed they too have contracts to place donation boxes in Texas and would place them in Mansfield but "they cannot do so because of the City's restrictions." APP065 ¶ 8; APP061 ¶ 12. They explained the Donation Box Law "effectively bans donation bins in Mansfield", "foreclose[s] [their] message", and "chill[s] [their] protected speech". *Id.*; APP061-62 ¶¶ 11, 13; APP065-66 ¶¶ 9-10, 12.

---

[1] "The Environmental Protection Agency (EPA) reports that landfills received 11.3 million tons of textiles as municipal solid waste in 2018, which was 7.7% of all municipal solid waste landfilled nationwide. *Id.*; *see* EPA, Facts and Figures about Materials, Waste and Recycling, *Textiles: Material-Specific Data*, https://www.epa.gov/facts-and-figures-about-materials-waste-and-recycling/textiles-material-specific-data (Dec. 3, 2022) ("The main source of textiles in municipal solid waste (MSW) is discarded clothing."). AOH respectfully requests this Court take judicial notice of these publicly available EPA statistics, which Mansfield cannot dispute.

[2] All page numbers cited are to the ECF page number in the header of the document.

### B. Mansfield's Donation Box Law

Under the new regulations, donation boxes are subject to dual permitting and numerous requirements restricting their appearance, including the signage, material, size, color, and location, effectively prohibiting their placement in almost all of Mansfield. *See* APP010-14. The Donation Box Law does not regulate any other unattended receptacles, such as recycling containers, garbage containers, or other collection boxes. Mansfield does not require any permitting at all for recycling containers or trash receptacles, which present the same risk of overflow. *See* APP078; APP080 (Mansfield's Responses to ROG Nos. 9–10 and RFP Nos. 11–12).

Mansfield's zoning restrictions alone prohibit donation boxes completely in 11 of the City's 20 types of zoning districts. The zoning restrictions allow donation boxes only in the six zones OP, C-1, C-2, C-3, I-1, and I-2, plus church, nonprofit, and school properties in three residential zones. The purported permission for these three residential zones is a mirage because the Donation Box Law also prohibits donation boxes within 250 feet of any residence. APP011–13 §§ 2–3. In five of the six "permitted" zones in Mansfield, no donation box may be placed unless two separate permits—a donation box permit and a specific use permit (SUP)—are obtained from Mansfield, via two separate applications and two sizable fees. APP003 § 116.02(A). Each permitting requirement contains onerous burdens. For example, there is no requirement that an application for a donation box permit be granted or denied, and no time limit within which any decision must be made. *Id.*

In addition to many other requirements not listed here, the site plan required for the specific use permit demands the following:

> calculations of masonry content on each façade and in total for each building on the lot where the donation bin will be placed, the location of all entrances and exits to building(s) on the property, the location of all on-site bathroom facilities and existing septic fields, a tree survey by size, type, and species of plant, the location,

type, and size of all fencing and landscaping berms on the property, a plan showing the existence, size elevation, location, orientation, and design of all signs on the property, the size, type, and location of the owner or occupant's outdoor storage, and the percentage of their outdoor storage as compared to their building square footage.

Pl. Mem., ECF No. 4 at 21-23; APP068-70 (AOH Answer to ROG No. 11); Mansfield Code § 155.080(D) (also requiring metes and bounds legal description of property signed and sealed by a registered surveyor, etc.). The full scope of the site plan requirements is set forth in Mansfield Code § 155.080(D). The City's fee schedule currently requires a filing fee of $2,500 per site plan per donation bin. City of Mansfield, Texas, https://www.mansfieldtexas.gov/DocumentCenter/View/596/Planning---Development-Fee-Schedule-PDF?bidId= (Dec. 20, 2023). At its discretion, the zoning commission "may ask for more information during the review of a specific use permit," and the specific use permit will not issue without a full hearing and approval by the City Council prior to even applying for the donation box permit. Mansfield Code § 155.115(A).

The only zone in which Mansfield does not require dual permitting is the heavy industrial zone (I-2). APP011 § 2. The I-2 zone is legally restricted to heavy manufacturing uses, including uses characterized as "noxious" in nature, and the City acknowledges that the I-2 zone may not be compatible with commercial uses or even other manufacturing uses. Mansfield Code § 155.053; APP069 (AOH Answer to ROG No. 11). Because industrial areas are not commercial or residential in character or use, "there is not the same amount of vehicular or pedestrian traffic or as many possibilities to share Arms of Hope's charitable message on commercial properties and churches as there would be in other non-industrial areas." APP071 (AOH Answer to ROG No. 12). As AOH explained in its interrogatory response, "Folks are not driving to industrial areas to do their grocery or clothes shopping, to go to Mass, to enjoy the parks, to go to school, or for a downtown stroll.

There are significantly fewer eyes to see our message in areas limited to industrial use of the land." *Id.*

The City will not issue a donation box permit if consent to place the donation box is provided by the property manager or lawful occupant of the premises, as opposed to the property owner. APP003 § 116.02(A)(3); APP019 ¶ 15 ("The Ordinances mandate that only property owners may consent to placement of a donation bin, which prohibits lawful occupants like a Walmart store manager or a church pastor from authorizing a bin placement on their respective parking lots if they do not own the lot."). All unpermitted donation boxes are subject to impoundment by the City, and any person found in violation of the Law may be found guilty of a misdemeanor punishable by a fine of up to $2,000.00 per bin per day. APP007 § 5; APP014 § 7.

In the six zones in which donation boxes may be "permitted," they are prohibited within 500 feet of every major roadway in Mansfield, within 250 feet of a residential area, school, hospital, daycare, park, or recreational facility, and in any "open" or "passive" space. APP012, §§ 3(b)(2), (6). Donation bins are also prohibited to be placed within parking spaces, *id.* at (4), which are "the only viable placement for a charitable donation bin." APP019 ¶ 15. In addition, donation bins are prohibited within 250 feet of another donation bin. APP012, §§ 3(b). These prohibited areas are all areas in which AOH wants to place charitable donation boxes because they are high-visibility areas more likely to attract Mansfield supporters for its cause, including at its partner churches. APP017 ¶ 7, APP019 ¶ 15.

### C.  Mansfield's threatened enforcement against Arms of Hope

On July 1, 2022, Mansfield issued a Notice of Violation of its recently enacted ban on charitable donation bins to AOH. APP051-57. For the next six months, AOH worked with Mansfield to try to address the constitutional infirmities in the law to avoid litigation. *See id.* While

Mansfield cured some defects through the amendment process, it refused to cure others and added new ones. *See id.*; *compare* APP011-12 to APP039-40.

On January 30, 2023, following legislative amendment of the Donation Box Law, Mansfield issued its second demand for removal of AOH's donation boxes. APP051. AOH's three donation boxes have been placed without issue since 2019. APP018 ¶ 10. Prior to the City's enactment of the Donation Box Law and threat of enforcement, AOH has never received a single complaint, citation, or notice of any compliance issue of any kind from Mansfield regarding any one of its donation boxes. *Id.* at ¶ 11. Mansfield threatened to impose severe penalties on the charity for the poor unless it removed its long-standing donation boxes within ten days, by February 10, 2023. *Id.* at ¶ 12; APP051.

Mansfield demanded that if AOH does not remove all three of its donation boxes from Mansfield by February 10, 2023, it will impound the bins, including the charitable contributions contained within, file criminal charges, and fine AOH up to $2,000 per donation box for each day that the donation box remains. *See* APP051; APP056. In addition to criminalizing protected speech and threatening impoundment of its in-kind charitable donations, AOH faces up to $6,000 per day in fines or up to $180,000 over the 30 days (or up to $1.08 million over six months).

### D. Legislative intent

#### 1. Mansfield agrees it targeted the "banned areas" because they are "highly visible areas."

Mansfield agrees the primary location for donation bins are in the parking lots of Mansfield's commercial properties, such as strip malls, grocery stores, and convenience stores, which are predominantly located within the prohibited 500-foot and 250-foot corridors banned under the law. APP012; APP036 (City staff explaining "[t]he use of these bins occurs mainly within large commercial developments that have frontage on major roadways, placing that blight

in highly visible area"). Mansfield concedes it prohibits donation bins in these locations because they are "highly visible area[s]". APP036.

AOH also seeks to place donation boxes in the parking lots of schools and churches, most (if not all) of which are off limits under those same setback provisions. APP012 § 3(b)(2). While Mansfield purports to permit donation bins on school properties zoned "2F, MF-1, O-P, C-1, C-2, C-3, I-1, and I-2," *id.* at 3(a), that exception is negated by the conflicting bans on donation boxes within 250 feet of any school and 500 feet of every major roadway.

Because placement is not allowed in a parking space, on unpaved areas, within a landscape setback, within a building setback, on a sidewalk, or in a roadway, there is no viable location left to place a donation bin on any permitted property in Mansfield. APP011-13. While the Donation Box Law may not outright *ban* all donation boxes, it effectively bans them by imposing restrictions preventing their visibility to the public and excluding them from the majority of, if not all, areas within Mansfield where charitable solicitations are most effective. *Id.*; Order, ECF No. 23, at 8. Thus, the residents of Mansfield are denied the opportunity to support AOH by this means. APP070 (AOH Answer to ROG No. 11) ("Many people want to support nonprofit organizations but are unable to donate cash").

### 2. Mansfield cannot show a single placement location that would comply with the Donation Box Law.

Despite AOH asking the City in this litigation where it could place a bin, Mansfield could not provide the address of a single location that would be approved for placement under its Donation Box Law. *See* APP081 (City Response to ROG No. 11) (referring Arms of Hope instead to "the map [the City] has previously produced in this litigation"). Mansfield admits that no donation boxes have been permitted since it enacted its Donation Box Law. APP077-80 (City Responses to RFP Nos. 1-4, 8 and ROG Nos. 1-4, 6).

### 3.  Mansfield's documents show it is trying to "keep[] donation bins out of the city."

In discovery, Mansfield produced documents acknowledging that until 2019, the City was "successful" in its goal of "keeping donation bins out of the city." APP084 ¶ 5 (CITY 0320).  City staff divines that Mansfield's Donation Box Law will be effective in "keeping donation bins out of the city" because "none of the donation bins" placed prior to the enactment of the Donation Box Law can comply with the new Law, and "would all have to go away after the 10 day period." APP086-87 (City 0327) ("The ones that actually met the existing ordinance, of which there are none, they would have one year to come into compliance."); *see also id.* APP087 ("Currently, none of the donation boxes in existence will qualify for a SUP"). Mansfield further acknowledges that if an applicant tries to rezone any location to accommodate placement of a donation box, such application will be denied. APP089 (CITY 0329) ("He said they will be denied if they try to rezone, but they can still make the application for it.").

Mansfield imposed a SUP despite the fact that City Attorney Alan Taylor had previously "agreed" with AOH that donation bins could not "be deemed a use that required the SUP [a Specific Use Permit]" for "Constitutional legal reasons" and that such requirement "was *not* strong enough to withstand the legal challenge." APP084 (CITY 0320) (emphasis added). Mansfield has proceeded anyway with the dual permitting requirement of a Specific Use Permit in addition to the donation box permit in five of the six "permitted" zones.

### 4.  Mansfield's documents demonstrate that its ban on donation boxes is personal.

In an email from Nicolette Ricciuti, Director of Regulatory Compliance, to Mansfield Council Member Casey Lewis of November 1, 2022, Ricciuti explained that the City had "received a Letter of Intent to file suit against the City from Arms of Hope." APP093 (CITY 0333). Ricciuti

copied City Manager Joe Smolinski on the email. *Id.* Based on a mistaken belief that AOH's donation bin was one of "10 donation bins in the Shops at Broad parking lot" and that the City owned that parking lot, Smolinski responded: "I think we need to hammer them on this one. They didn't get permission from the actual owners…the city. They threaten to file suit every time we talk to them. I say we show them the respect that they show us." APP094 (CITY 0334). Ricciuti replied, after "verifying the property records," that the City does not own the parking lot and "that we only own the StarCenter." *Id.* Smolinksi responded that same day, instructing Ricciuti to "[c]heck and see if the public easement that we have over ALL of the parking would allow us to remove them asap." *Id.* AOH has never placed a donation box in the Shops at Broad parking lot. *See* APP098-119 (AOH's placement agreements).

The following comments from Smolinksi to City Council Member Lewis and Ricciuti demonstrate the City's dislike of donation boxes generally: "[w]e need a judge and our city attorney to authorize us to move these damn things. This is absurd", and "We need a judge to authorize us to move these damn things. If he won't authorize it, I want to know immediately. The appointment of a municipal court judge will be on an agenda shortly thereafter." APP095 (CITY 0335). Ricciuti heads the Department of Regulatory Compliance that is tasked with enforcing compliance with the Donation Box Law. APP082 (City's Response to ROG No. 17). Smolinski oversees that department. *See* City of Mansfield, Texas, Office of the City Manager, https://www.mansfieldtexas.gov/181/Office-of-the-City-Manager (Dec. 14, 2023). On notification from Ricciuti that the City sent a violation notice to donation box operators on November 30, 2022, Smolinski responded: "Boom!" APP096 (CITY 0336).

### E.  The maps

AOH attached to its Complaint a Donation Bin Restriction Map of Mansfield. APP030. The map shows the areas in which donation bins may be placed in Mansfield in grey. *Id.* These areas comprise a minute geographic area of Manfield.



AOH's map also shows the areas in which donation bins are statutorily prohibited. *Id.* These areas are marked red. *Id.* The red areas encompass most of Mansfield. APP030-32.

Mansfield produced a competing map with its brief in opposition to the preliminary injunction. Def.'s App. at 23. Mansfield argued that AOH's map was incorrect, Def.'s Resp., ECF No. 20,  at 23, and that its map accurately reflects areas where donation boxes are permitted in green. *Id.* at 10.

11



AOH replied demonstrating that Mansfield's map is inaccurate because, among other reasons, it includes in green as "permitted" several areas zoned "PD" for Planned Development, which are expressly prohibited areas under Section 2 of the Donation Box Law. APP011 § 2. Mansfield cannot deny this inaccuracy in its map. As AOH explained in reply, the below images show areas zoned PD, which should not be colored green. Pl. Reply, ECF No. 21, at 6-8.



For this and other reasons, the green areas on Mansfield's map should be much smaller.

However, AOH explained that even taking Mansfield's mistaken map as true, it shows donation boxes are banned in most of Mansfield. *Id.* AOH argued Mansfield's own map shows its law "burdens substantially more speech than is necessary to achieve the City's legitimate goals of maintenance and upkeep." *Id.* at 7.

**STANDARD OF REVIEW**

"Summary judgment is proper when the pleadings and evidence show 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Franciscan All. Inc. v. Azar*, 414 F. Supp. 3d 928, 934 (N.D. Tex. 2019) (quoting Fed. R. Civ. P. 56(a)). "'[T]he substantive law will identify which facts are material.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* "The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material-fact issues." *Id.*

Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). It is particularly appropriate in cases like this where the dispute involves a question of law. Because "there can be but one reasonable conclusion" as a matter of law, *Anderson*, 477 U.S. at 250, the Court should grant summary judgment for Plaintiff, which would dispose of this case.

**ARGUMENT**

Granting Arms of Hope's motion for summary judgment is straightforward because, as this Court has found, the City of Mansfield's limitations on donation boxes are insufficiently tailored to a legitimate government interest and impose an impermissible prior restraint. Looking only to what Mansfield does not dispute is sufficient to show there is no dispute of material fact that prevents AOH from being entitled to judgment as a matter of constitutional law.

13

Mansfield does not dispute that it prohibits donation boxes with *any* of the following characteristics:

- within 500 feet of every major roadway within Mansfield;
- within 250 feet of any residential area, public or private school, hospital, park, recreational facility, or daycare;
- in any "open" or "passive" space;
- within parking spaces;
- more than one donation box on any one lot;
- with "[h]igh-intensity colors" or "black" on a donation box;

Pl. Mem., ECF No. 4, at 8, 16-18, 24-25 (citing and quoting OR-2288-23 § 3(b)). These limitations prohibit donation boxes in the viable locations in the City. Indeed, they prohibit donation boxes in most, if not all, of Mansfield.

Second, Mansfield does not dispute that regulations of speech "must be narrowly tailored so they 'do not burden substantially more speech than is necessary to further the government's legitimate interests.'" Def.'s Resp. at 16-17 (citations omitted).

Yet Mansfield has not even attempted to justify that any of the particular limitations listed above are narrowly tailored. Mansfield cannot explain how any of the limitations are necessary to further the interests it claims: "aesthetic well-being" and addressing "blight, illegal dumping, scavenging, graffiti, [and] traffic safety." *Id.* at 9, 23. There is no evidence to support such a broad sweep of the restrictions in this case. Instead, Mansfield has collected Supreme Court precedent supporting its interest in aesthetics, and then merely concludes "the UDB Ordinances are narrowly tailored, even if they are not the least restrictive alternative[.]" *Id.* at 20. The First Amendment requires a much more granular analysis under the tailoring prong, as this Court has applied in this case, Order at 3-14, and in *Watkins v. City of Arlington*, No. 4:14-cv-381-O, 2014 U.S. Dist. LEXIS

95082, at *18-40 (N.D. Tex. July 14, 2014). Absent evidence justifying the prohibitions as not substantially broader than necessary, AOH succeeds on its First Amendment claims. Order at 10.

Because Mansfield's law violates the First Amendment, all prerequisites for declaratory and permanent injunctive relief are present. As this Court explained, the "loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury" and "injunctions protecting First Amendment freedoms are always in the public interest." *Id.* at 13.

## I. The Donation Box Law is neither narrowly tailored to a legitimate government interest nor free from unbridled discretion; therefore, it cannot pass even intermediate scrutiny.

Mansfield's restriction on First Amendment freedoms is far greater than necessary to achieve the City's goals. Mansfield's donation box law preemptively bans charitable speech from most of the City, grants unbridled discretion to the enforcer through vague and undefined terms, and is overbroad, overinclusive, and not narrowly tailored to a government interest. Because of this, it cannot pass even intermediate scrutiny. Therefore, it certainly cannot pass strict scrutiny.

### A. The Donation Box Law is insufficiently tailored.

Mansfield contends that "intermediate scrutiny applies" to this speech-restrictive law. Def.'s Resp. at 15. Mansfield recognizes, as this Court properly held, that to be narrowly tailored under intermediate scrutiny a regulation must "not burden substantially more speech than is *necessary* to further the government's legitimate interests." *Id.* at 16-17; Order at 8 (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 799 (1989), and *Nat'l Fed'n of the Blind of Tex. Inc. v. City of Arlington*, No. 3:21-CV-2028-B, 2022 WL 4125094 *11 (N.D. Tex. Sep. 9, 2022)). As this Court concluded, the Donation Box Law cannot pass this intermediate tailoring test.

Mansfield's primary argument—that donation boxes have had materials left outside them—confirms that the law is not narrowly tailored and thus fails intermediate scrutiny. AOH is

15

not challenging, and indeed supports, the law's requirements that donation boxes remain clean and well-maintained. If Mansfield enforced its already existing maintenance requirements, that would address all of its claimed interests. But Mansfield has *never* attempted to enforce its maintenance requirements. *See* APP081 (in responding to ROG No. 14 about how Mansfield would check on approved donation boxes, Mansfield objected that is speculative and then stated a "process would be conducted"). Instead, Mansfield chose to ban donation boxes because that was easier. "While the City is correct that the chosen regulation need not be the most narrowly tailored way of achieving its goals, a complete ban on donation bins in eleven of the City of Mansfield's twenty zoning districts – 'unless justified by evidence that the [Law's] other regulations and/or less restrictive zoning limitations have proven ineffective to control bin-associated ills in those areas— is not narrowly tailored.'" Order at 10 (quoting *Nat'l Fed'n of the Blind*, 2022 WL 4125094, at *13) (citing *Recycle for Change v. City of Oakland*, 856 F.3d 666, 675 (9th Cir. 2017)).

There continues to be no evidence that a complete ban on donation boxes in most zones is necessary to achieve the government's interests. *Id.* There is likewise no evidence in the record that a ban on donation boxes within 500 feet of every major roadway and within 250 feet of most things is necessary to achieve any interest. Indeed, Mansfield has provided zero evidence of any safety accident or injury related to donation bins across all banned zones, much less in any one zone or within a single location now off limits under the setback restrictions. There is also no evidence that an incredibly onerous additional layer of permitting is necessary to ensure upkeep. Nor is there evidence that the consent of property owners (rather than their lawful occupants) is necessary to ensure cleanliness, or that high-intensity or black ink on the boxes poses any problem.

The City also lacks evidence to demonstrate a need for its ban on donation boxes in parking spaces and any designated "open space, community space or passive or civic spaces". The ban on

16

parking spaces coupled with other restrictions preventing placement on unpaved areas, sidewalks, drive aisles, loading docks, service areas, within 25 feet of any intersection of two drive aisles, or within building setbacks, leaves no viable placement for a donation box in Mansfield. APP069-70 (AOH Answer to ROG No. 11). Further, if Mansfield interprets "open space" or "passive space" to be any outdoor, open-air location in the city, then it has effectively banned donation bins in all of Mansfield by that provision alone, and there is nothing stopping the City from adopting that interpretation at any time. *Id.*; *see* Mansfield Code § 155.012 (Definitions) ("Open space" is defined elsewhere in the Code to mean any outdoor space "open and unobstructed to the sky.").

This utter lack of evidence is fatal because the burden is on the government to show the regulation "is *necessary* to further the government's legitimate interests." Order at 10-11; *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 665 (1994); *Watkins*, 2014 U.S. Dist. LEXIS 95082, at *30. The identified harms must be certain to occur, and not "conjectural." *Turner*, 512 U.S. at 664-65 (finding government failed to meet "burden of showing that the remedy it has adopted does not burden substantially more speech than is necessary") (internal quotation marks omitted); *McCullen v. Coakley*, 573 U.S. 464, 493 (2014) ("For a problem shown to arise only once a week in one city . . . creating 35-foot buffer zones at every clinic across the Commonwealth is hardly a narrowly tailored solution."); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (11th Cir. 2011) (ordinance is overbroad where it would prohibit "signbearers on sidewalk from seeking patronage or offering handbills even though their conduct does not pose a traffic hazard"). Mansfield cannot meet its burden here.

By its own map, Mansfield concedes that the challenged law bans donation boxes from *most* of Mansfield. Def.'s App. at 23. Even taking Mansfield's map as presented (putting aside its inaccuracies), it shows the law sweeps so broadly, it permits donation boxes in a minute fraction

of the City. *See* Order at 10. Mansfield does so without having tested its own maintenance requirements, which would prevent the very evil—lack of upkeep—Mansfield seeks to combat through silencing the speech. Def.'s Resp. at 9, 23. Mansfield does not contest that its law bans boxes within 250 feet of any residence, hospital, daycare center, public school, private school, college, park, and recreational facility. APP012 § 3(b)(2). Mansfield does not contest that its law bans donation boxes within 500 feet of all major roads running through Mansfield. *Id.* The City also does not contest that it bans donation boxes from parking spaces, APP012 § 3(b)(4), which are "the only viable placement for a charitable donation bin." Decl. of Troy Robertson, APP019 ¶ 15.

These are areas in which AOH wants to place charitable donation boxes because they are higher visibility areas more likely to attract Mansfield supporters for its cause, including at its partner churches. *Id.* at APP017 ¶ 7, APP019 ¶ 15; *see also Nat'l Fed'n of the Blind*, 2022 WL 4125094, at *22. AOH seeks out high-traffic and high-visibility areas to increase the frequency of donations, increase the reach of its charitable message, and attract more supporters to its worthy cause. *See* Roberson Decl., Pl.'s APP017-18 ¶¶ 7-9.

Indeed, Mansfield admits it banned donation boxes in these locations ***because*** they are "highly visible area[s]." Mansfield Staff Report (Apr. 18, 2022), APP036. That "imposes serious burdens on Plaintiffs' speech and compromises their ability to interact," as this Court recognized in *Watkins* with respect to a law that barred plaintiffs from their preferred locations. 2014 U.S. Dist. LEXIS 95082, at *37. Prohibiting AOH "from interacting with citizens" through donation boxes in these higher visibility areas unduly burdens AOH's speech. *Id.* Carving out a few small areas in low-traffic, low-visibility areas "misses the point." *Id.*

18

Mansfield wants donation boxes gone. In documents produced by the City, Mansfield staff explained in a memorandum describing their enforcement history that until 2019 they had been "successful" in "keeping donation bins out of the city." APP084 (CITY 0320).  In emails from City Manager Joe Smolinksi to City Council Member Casey Lewis and Director of Regulatory Compliance Nicolette Ricciuti on November 1, 2022, Smolinski summarized the City's renewed legislative intent to eradicate donation bins:  "We need a judge and our city attorney to authorize us to move these damn things. This is absurd", and "We need a judge to authorize us to move these damn things. If he won't authorize it, I want to know immediately. The appointment of a municipal court judge will be on an agenda shortly thereafter." APP095 (CITY 0335). When notified the City had sent notices of violation to donation box operators with a demand for removal by November 30, 2022, Smolinski responded:  "Boom!" APP095-96 (CITY 0335-36). City staff admits it knew that no existing donation box could comply with the Donation Box Law, and no rezoning applications will be granted to allow nonconforming uses. APP086-89 (CITY 0326-29). With regard to AOH's charitable donation boxes, Smolinski proposed the City retaliate against AOH for defending its charitable speech rights. *See* APP094 (CITY 0334) ("I think we need to hammer them on this one . . . They threaten to file suit every time we talk to them. I say we show them the respect that they show us.").

Mansfield took a sledgehammer to protected charitable solicitation and effectively outlawed donation boxes in most of Mansfield, as demonstrated by the City's own map. This is improper. An ordinance must "'focus[] on the source of the evils the city seeks to eliminate . . . and eliminate[] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils.'" *Watkins*, 2014 U.S. Dist. LEXIS 95082,

at *30-31 (quoting *Comite de Jornaleros de Redondo Beach*, 657 F.3d at 947; *Ward*, 491 U.S. at 799 n.7).

Mansfield's interests in not having donation boxes look messy can be adequately achieved with the part of the ordinance regulating maintenance and upkeep: § 116.03(A)(1)-(5), (B) (setting forth strong maintenance requirements). APP003-04. To resolve identification and accountability concerns, § 116.02 requires registration and permitting for donation boxes and a decal to be affixed to each bin, plus minimum weekly pick-ups to prevent overflow. *Id.* at 003. Moreover, § 116.03 (revocation of permit) and § 5 impose strong civil and criminal penalties, impoundment, and revocation of a license to enforce noncompliance. APP004-05, APP007 (Mansfield inadvertently labeled two different sections "116.03"). Mansfield's cross-referenced nuisance provisions, APP004 (§ 116.03(A)(3)), and existing prohibition on illegal dumping are additional less-restrictive alternatives. Mansfield Code § 50.02. The presence of these effective less-restrictive alternatives means that the Donation Box Law burdens substantially more speech than is necessary. *See, e.g.*, *McCullen*, 573 U.S. at 490–91 (striking buffer zone intended to stop harassment of visitors to abortion clinics because there were unchallenged portions of the law the state could enforce instead, and other types of legislation the state could enact); *Hays County Guardian v. Supple*, 969 F.2d 111, 119 (5th Cir. 1992) (striking down restriction on distributing newspapers because other regulations could address littering and the other ills the government sought to address).

In sum, having provided no evidence to justify its bans, the City's stated interests in aesthetics and maintenance simply cannot support its zoning and setback prohibitions on donation boxes. The same is true for the signage limitations, dual permitting, and consent requirements. There is no tailoring at all.

**B. The prior restraint grants unbridled discretion to the licensor.**

This Court properly found that Mansfield's Donation Box Law is an impermissible prior restraint because it fails to provide that if all requirements to obtain the permit are met, the City must issue the license within a reasonable time. Order at 12; *see also Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 802 (1988) (quoting *Freedman* v. *Maryland*, 380 U.S. 51, 59 (1965)).

The Donation Box Law is also a prior restraint because it conditions the right to speak on undefined terms, such as "open space" and "passive space." Indeed, it bans placement in those undefined places. These terms are so indefinite and lacking specificity, they could be used by the City as a sword to ban protected charitable solicitations in any open air, outdoor space using existing definitions of those terms in Section 155.012.

"It has long been held that ordinances regulating speech contingent on the will of an official—such as the requirement of a license or permit that may be withheld or granted in the discretion of an official—are unconstitutional burdens on speech classified as prior restraints." Order at 12 (quoting *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 280 (5th Cir. 2003) (citing *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958)). Laws "subjecting the exercise of First Amendment freedoms to the prior restraint of a license" must have "narrow, objective, and definite standards to guide the licensing authority" and prevent its exercise of excessive discretion. *Nat'l Fed'n of the Blind*, 2022 WL 4125094, at *14 (quoting *Chiu*, 339 F.3d at 281).

Absent the requirement to issue the license if all requirements of the Ordinances are satisfied and clear definitions to guide the licensor, the Donation Box Law allows government officials unbridled discretion to limit or censor speakers at will. Order at 13. This is constitutionally impermissible in an administrative prior restraint on speech, and especially dangerous here where the City's enforcement is both retaliatory and personal.

21

**II. This Court should apply strict scrutiny to Mansfield's Donation Box Law because it is a content-based prior restraint that regulates and bans fully protected charitable solicitations. Because the Donation Box Law cannot pass intermediate scrutiny, it certainly cannot withstand strict scrutiny.**

To safeguard the heightened protections afforded charitable solicitation under the First Amendment, this Court should apply the stricter scrutiny required for laws restricting charitable solicitations. The standard crystallized by the Fifth Circuit for laws restricting donation bins in *National Federation of the Blind of Texas, Inc. v. Abbott* applies to Mansfield's Donation Box Law, which restricts charitable donation bins. 647 F.3d 202, 214 (5th Cir. 2011). In *Abbott*, the Fifth Circuit ruled that donation bins are fully protected charitable solicitations under the First Amendment. *Id.* at 213-14.

**A. Laws regulating charitable solicitations receive heightened First Amendment scrutiny.**

In *Village of Schaumburg v. Citizens for a Better Environment*, the Supreme Court affirmed that charitable solicitation is fully protected speech under the First Amendment. 444 U.S. 620, 632 (1980). The Supreme Court has long accorded heightened First Amendment protection to charitable solicitations because they "involve a variety of speech interests – communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes . . ." *Id.*

The Supreme Court has also made clear that for-profit professionals who are paid to speak on behalf of their charitable organization clients are entitled to the same First Amendment protection. *Riley*, 487 U.S. at 801 ("a speaker is no less a speaker because he or she is paid to speak."). Charitable solicitations are thus fully protected speech even if charities hire third parties to deliver their message on their behalf. Any law that imposes a "chill on the protected activity"

22

of fundraising is subject to heightened scrutiny. *Sec'y of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 969 (1984).

Under decades of Supreme Court and circuit court precedents, including this Circuit's decision in *Abbott*, strict scrutiny is required in this case because Mansfield's Donation Box Law is (1) a prior restraint on speech that (2) regulates protected charitable solicitations, and (3) it is inherently content based.

### B. The Donation Box Law is a prior restraint on protected speech and, therefore, requires strict scrutiny.

Mansfield seems to agree that prior restraints on speech are subject to strict scrutiny. Def.'s Resp. at 20 (arguing instead that its Donation Box Law is not a prior restraint). This Court has already found that Mansfield's Donation Box Law is an impermissible prior restraint. Order at 12-13. Thus, strict scrutiny applies.

In *Baker v. City of Fort Worth*, this Court explained that prior restraints on speech draw strict scrutiny. 506 F. Supp. 3d 413, 421, 23 (N.D. Tex. 2020) ("even without the political-content distinction," Fort Worth's "city-council-permission scheme is a prior restraint on speech, subject to strict scrutiny"). This is because "[p]rior restraints on speech . . . are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). There is "a heavy presumption against [their] constitutional validity." *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963).

The Supreme Court has consistently found that administrative licensing schemes requiring speakers to provide advanced notice to the government and to obtain a permit prior to speaking are prior restraints on the freedom of expression. *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992) ("requiring a permit and a fee before authorizing public speaking, parades, or assemblies . . . is a prior restraint on speech"); *N.A.A.C.P. v. City of Richmond,* 743 F.2d 1346,

1355-57 (9th Cir. 1984) (finding 20-day notice requirement to obtain a permit for a demonstration is a prior restraint on speech); *Watchtower Bible & Tract Society of New York v. Village of Stratton*, 536 U.S. 150, 165-66 (2002) (licensing scheme was offensive "not only to the values protected by the First Amendment, but to the very notion of a free society – that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so."). Such schemes "restrict spontaneous free expression and assembly rights safeguarded in the First Amendment," *Sullivan v. City of Augusta*, 511 F.3d 16, 38 (1st Cir. 2007), and so they are subject to strict scrutiny.[3] Indeed, that "one must inform the government of his desire to speak and must fill out appropriate forms and comply with applicable regulations discourages citizens from speaking freely." *City of Richmond,* 743 F.2d at 1355.

The Donation Box Law is a prior restraint in more ways than one. It is not just an impermissible administrative prior restraint that grants unbridled discretion to the licensor under the permitting requirements. Likewise, it is not simply a time, place, and manner law that regulates where on a property a bin may be placed. Def.'s Resp. at 19. On the contrary, it bans charitable

---

[3] Following Supreme Court precedent, the circuit courts apply strict scrutiny to prior restraints on speech. *See, e.g., Sindi v. El-Moslimany*, 896 F.3d 1, 30 (1st Cir. 2018) ("[S]trict scrutiny [is] required to legitimize a prior restraint."); *Citizens United v. Schneiderman*, 882 F.3d 374, 386 (2d Cir. 2018) ("prior restraints constitute the most serious and the least tolerable infringement on our freedoms of speech and press") (internal citations omitted); *Bank of Hope v. Chon*, 938 F.3d 389, 394 (3d Cir. 2019) ("[P]rior restraints on speech are presumptively unconstitutional and subject to strict scrutiny."); *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 928 (5th Cir. 1996) (prior restraints "must be narrowly drawn and cannot be upheld if reasonable alternatives are available having a lesser impact on First Amendment freedoms."); *CBS, Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975) (prior restraints "must be narrowly drawn and cannot be upheld if reasonable alternatives are available having a lesser impact on First Amendment freedoms."); *Henerey ex rel. Henerey v. City of St. Charles*, 200 F.3d 1128, 1134 (8th Cir. 1999) ("[P]rior restraints are subject to the highest degree of scrutiny and are the form of regulation most difficult to sustain under the First Amendment."); *Levine v. United States Dist. Court for Cent. Dist.*, 764 F.2d 590, 595 (9th Cir. 1985) ("Prior restraints are subject to strict scrutiny because of the peculiar dangers presented by such restraints."); *Harbourside Place, Ltd. Liab. Co. v. Town of Jupiter*, 958 F.3d 1308, 1322 (11th Cir. 2020) ("Prior restraints are presumptively unconstitutional and face strict scrutiny.").

donation receptacles from most locations in Mansfield based on aesthetics. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981). Mansfield has suppressed protected charitable solicitations via donation bins in most of Mansfield to prevent maintenance issues that are already adequately addressed through less restrictive maintenance requirements.

Ordinances like the Donation Box Law that prohibit protected speech before the fact—here, in almost all of Mansfield—are "classic prior restraints." *Stuart*, 427 U.S. at 559; *see also Alexander v. United States*, 509 U.S. 544, 550 (1993); *Munson*, 467 U.S. at 968-69 (before-the-fact prohibitions on charitable solicitation activity in administrative licensing schemes "chill" protected speech); *Near v. Minnesota*, 283 U.S. 697, 711-12 (1931) (the statute is not aimed at punishment, it is aimed at suppression). The Donation Box Law is both an administrative prior restraint and a classic prior restraint because it contains before-the-fact prohibitions on speech.

Before-the-fact prohibitions on speech are presumed unconstitutional unless "the evil that would result from the [speech] is both *great* and *certain* and *cannot be militated by less intrusive measures*." *CBS v. Davis*, 510 U.S. 1315, 1317 (1994) (emphasis added); *Stuart*, 427 U.S. at 556-59. This is strict scrutiny. *Compare United States v. Playboy Entm't Grp.,* 529 U.S. 803, 813 (2000) (under strict scrutiny, laws must be "narrowly tailored" to a "compelling Government interest" such that no less restrictive alternative is available). Prior restraints that ban protected speech in advance have "been considered acceptable only in 'exceptional cases.'" *CBS*, 510 U.S. at 1317 (quoting *Near*, 283 U.S. at 716).

Thus, at the preliminary injunction stage, this Court apparently did not account for two points that warrant further consideration:  (1) its holding in *Baker* that prior restraints on speech draw strict scrutiny, and (2) that Mansfield's Donation Box Law contains numerous before-the-fact prohibitions, which brings the Law within the purview of *CBS* and the classic prior restraint

25

line of cases following *Near*, which demand strict scrutiny. This Court should clarify that Mansfield's prior restraint on speech, with all its before-the-fact prohibitions, draws strict scrutiny.

### C. *Abbott* is binding precedent holding that laws restricting charitable donation bins receive the same strict scrutiny applied in *Riley*, *Munson*, and *Schaumburg*.

In *Abbott*, this Fifth Circuit held that Texas's challenged donation box law "regulates charitable solicitations and is to be evaluated under *Riley, Munson*, and *Schaumburg*. Same standard, same result." 647 F.3d at 214 (without reaching content question, the court invalidated disclosure requirement for donation bins under First Amendment). The same charitable donation bins are at issue in this case.

The *Abbott* court correctly began its analysis by asking what kind of speech was at issue:

> We must first determine whether the public receptacle disclosures at issue are merely commercial speech, subjecting § 17.922(d) to the intermediate level of constitutional scrutiny set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980), or whether the disclosures are "charitable solicitations," and thus subjecting the regulations to the ***stricter scrutiny*** announced in the Supreme Court's trilogy of cases relating to charitable solicitations—*Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 108 S. Ct. 2667, 101 L. Ed. 2d 669 (1988); *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984); and *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S. Ct. 826, 63 L. Ed. 2d 73 (1980). Texas argues that the district court erred by applying the stricter scrutiny of *Schaumburg* and its progeny, suggesting that "the receptacles at issue in this case represent nothing more than an upturned palm." We disagree.

*Id.* at 212 (emphasis added). In determining the appropriate level of scrutiny, the Fifth Circuit looked first at the speech at issue in the case and the text of the law regulating that speech.

Here, as in *Abbott*, the Ordinances regulate solicitations for "donations" of "clothing or household goods." *Id.* at 213. "Black's law dictionary defines solicitation as '[t]he act or an instance of requesting or seeking to obtain something.'" *Id.* at 212 (quoting BLACK'S LAW DICT. 1520 (9th ed. 2009)). It defines "donation" generally as "[a] gift, esp. to a charity."

26

BLACK'S LAW DICT. 526 (8th ed. 2004). As in *Abbott*, the speaker-cross-appellant in this case is a charitable organization. APP016 ¶¶ 1, 3. AOH's public receptacles broadcast a charitable message, solicit charitable contributions of clothing or household goods, and accept donations in support of its charitable cause. APP017-18 ¶¶ 7-9; *Abbott*, 647 F.3d at 207. Mansfield does not dispute that AOH's donation bins are charitable solicitations.

Mansfield instead argues that because the Ordinances also apply to for-profit entities placing donation bins for commercial purposes, the law regulates "commercial speech" and not charitable speech. *See* Def.'s Resp. at 14 (arguing the Ordinances "apply to all donation boxes equally"). Mansfield misunderstands the Supreme Court's First Amendment jurisprudence and the higher scrutiny afforded charitable speech. For the same reasons this identical argument failed for the governments in *Abbott* and in *Planet Aid v. City of St. Johns*, it fails for Mansfield here. *Abbott*, 647 F.3d at 213-14; *Planet Aid v. City of St. Johns,* 782 F.3d 318, 331 (6th Cir. 2015).

Indeed, donation boxes are inherently charitable solicitations. As the Fifth Circuit explained:

> [T]he mere inclusion of the name of a charity on a donation box *communicates* information about the beneficiary of the benevolence and *explicitly advocates* for the donation of clothing and household goods to that particular charity. At a minimum, the donation boxes implicitly advocate for that charity's views, ideas, goals, causes, and values. It is clear that Texans have choices when choosing to dispose of unwanted clothing or household goods.

*Abbott*, 647 F.3d at 213 (emphasis added). The court concluded that donation bins "are not mere collection points for unwanted items but are rather silent solicitors and advocates for particular charitable causes." *Id.*

Accordingly, the Fifth Circuit properly rejected Texas's argument that intermediate scrutiny applies. *Id.* The Fifth Circuit's decision in *Abbott* is binding, and it requires strict scrutiny here. The Sixth Circuit agrees. In *Planet Aid*, the Sixth Circuit followed *Abbott*, affirming:  "the

fact that [charitable] speech may take the form of a donation bin does not reduce the level of its protection." 782 F.3d at 326, 330 (applying strict scrutiny, noting "*Schaumburg* plainly applied strict scrutiny . . . [s]o did *Munson* and *Riley*.").

Most recently, the Supreme Court of Washington followed *Abbott* and affirmed this black-letter law in *State of Washington v. TVI, Inc.*, 524 P.3d 622, 629-31, 634 (Wash. 2023). The state's high court unanimously held that a generally applicable consumer protection law regulating speech must receive "exacting" or "strict" scrutiny when applied to charitable solicitations. *Id.* at 629. Put another way, the court confirmed that the state's consumer protection statute, which also applied to commercial solicitations, cannot restrict charitable solicitations without passing "exacting" or "strict" scrutiny as required in *Abbott, Riley*, *Munson*, and *Schaumburg*. *Id.* at 631, 633, 635. Courts thus must first determine what kind of speech is at issue and the constitutional minimum standard of First Amendment review. *Id.*

In the Supreme Court's most recent pronouncement on the standard of review for laws restricting charitable solicitations, it affirmed it applies "exacting scrutiny to laws restricting the solicitation of contributions to charity, upholding the speech limitations only if they are narrowly tailored to serve a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 442 (2015) (citing *Riley*, 487 U.S. at 798).

This Court should follow *Abbott* and more than 40 years of Supreme Court precedent and apply strict scrutiny because the challenged law "regulates charitable solicitations and is to be evaluated under *Riley*, *Munson*, and *Schaumburg*. Same standard, same result." *Abbott*, 647 F.3d at 214.

### D. *Planet Aid* made clear that bans on donation bins are inherently content based and subject to strict scrutiny. *Reed* and *Reagan* agree.

Like the donation box regulation at issue in *Planet Aid*, Mansfield's Donation Box Law contains before-the-fact prohibitions on donation boxes in most, if not all, of Mansfield.

The definition of "donation box" in Mansfield's Donation Box Law is strikingly similar to the definition of "donation box" in the St. Johns ordinance. Each law applies only to public receptacles that solicit and collect donations of clothing and household items. *Compare Planet Aid*, 782 F.3d at 322 *to* Mansfield Code, ch. 155, § 155.012.[4] The laws are inherently content based, targeting and regulating *only* bins communicating a message about the solicitation of certain kinds of donations. *Planet Aid*, 782 F.3d at 326.

Manfield's Donation Box Law does not apply to all outdoor receptacles. It does not regulate other public receptacles like dumpsters, trash cans, or recycling bins that create similar aesthetic and safety concerns. Order at 4, 8; *see also Planet* Aid, 782 F.3d at 328. Indeed, Manfield treats non-expressive containers collecting waste more favorably than expressive containers soliciting charitable contributions, allowing dumpsters in all zones despite that they pose the same risks of maintenance and overflow. This distinction was critical to the Sixth Circuit's content analysis in *Planet Aid*. 782 F.3d at 328. The Donation Box Law does not regulate all public receptacles evenly. It targets and restricts only those public receptacles with a particular message soliciting certain donations, which are inherently used by charities. *Id.*

Mansfield's Donation Box Law also does not regulate all solicitations generally to bring it within the ambit of *City of Austin v. Reagan Nat'l Advert. of Austin,* 142 S. Ct. 1464, 1472-73

---

[4] *Compare Planet Aid*, 782 F.3d at 322 ("[d]onation box" is "[a]n outdoor, unattended receptacle designed with a door, slot, or other opening that is intended to accept donated goods or items") to Order at 7 ("donation box" means "any drop-off box, bin, container, receptacle, trailer or similar facility that accepts donated textiles, clothing, shoes, books, toys, household items").

29

(2022). Mansfield's Ordinances do not regulate all solicitations. They do not regulate boxes that solicit paper ballots in elections, petition signatures for political initiatives, food or cash contributions for a local church mission, medical items, the sale of goods or services, check deposits for banks, newspapers, waste, or aluminum recycling.

Instead, as the Sixth Circuit reasoned, the law singles out a specific kind of solicitation for regulation and prohibition—solicitations for donations of clothing and household items. *Planet Aid*, 782 F.3d at 329-30; *see also Jornaleros De Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 797 (S.D. Tex. 2013) (finding law proscribing "[o]nly solicitation[s] for 'a ride, contribution, employment, or business from an occupant of a vehicle'" was content based because it targets and restricts only certain subjects of solicitation). Restrictions on solicitation are *content based* if they distinguish based on the kinds of donations solicited.[5] *Reagan,* 142 S. Ct. at 1472-73. That is just what this Donation Box Law does. *Planet Aid,* 782 F.3d at 330 ("[t]hat is why [it] is content-based"). Unlike the billboard law upheld in *Reagan*, this Donation Box Law is not content-agnostic regulating all solicitations based only on place.

A government regulation of speech cannot escape classification as content based simply by swapping an obvious subject matter distinction—i.e., charitable solicitation—for a "function or purpose" proxy—i.e., the solicitation and acceptance of donated clothing and household items— that achieves the same result. *Reagan*, 142 S. Ct. at 1474. That type of proxy swapping is exactly what the Ninth Circuit did (wrongly) in *Recycle for Change v. City of Oakland*, 856 F.3d 666 (9th Cir. 2017). Despite recognizing "the message expressed" by donation bins is "content" and, therefore, the regulation thereof is content regulation, the Ninth Circuit erroneously determined

---

[5] This is subject matter regulation and "strict scrutiny is the proper standard of review." *Bruni v. City of Pittsburgh*, 141 S. Ct. 578, 578 (2021) (Thomas, J., concurring) (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 169 (2015)).

"the activity of collecting" the donations is not "communicative content" at all and thus the law is not content based. *Recycle for Change*, 856 F.3d at 671-72. The Ninth Circuit's decision in *Recycle for Change* is wrong.

The Sixth Circuit got it right in *Planet Aid*. Just as Mansfield has done here, the City of St. Johns argued that its law was content-neutral because it applied with equal force to donations solicited by for-profits. *Planet Aid*, 782 F.3d at 328. The Sixth Circuit properly rejected that argument. *Id.* at 331. As did the Supreme Court in *Riley*, 487 U.S. at 801. The absence of a speaker-based distinction does not undo or remove an underlying content distinction. *See Reed v. Town of Gilbert*, 576 U.S. 155, 170 (2015). Manfield's Donation Box Law applies *because* a request for a donation of clothing and household goods is made. If the box solicits and collects ballots for a local election or solicits garbage, the law does not apply. Thus, it is content based.

The Sixth Circuit correctly concluded St. Johns' similar donation box law was content-based and applied strict scrutiny. It rejected the same "viewpoint neutral," "speaker-neutral," and "blight" arguments made by Manfield in this case. *Planet Aid*, 782 F.3d at 328-29 ("a speech regulation can be viewpoint-neutral but content-based"); 329 (that the law "makes no distinction based on the nature of the organization, person, or entity that sought to place a donation box within the City" does not make the law content-neutral); 328 (city's overflow and blight "concerns apply with equal force to non-expressive outdoor receptacles such as dumpsters, receptacles at recycling centers, and public and private trash cans"). Rejecting these same arguments in *Reed*, the Supreme Court agrees, strict scrutiny applies. 576 U.S. at 156, 169-71.

### E.  The Donation Box Law fails strict scrutiny.

Under strict scrutiny, the City bears the burden to establish that its law is "narrowly tailored to promote a compelling Government interest" such that no less restrictive alternative is available.

*Playboy,* 529 U.S. at 813 (internal citation omitted); *Williams-Yulee,* 575 U.S. at 444. Mansfield's zoning ban, setback restrictions, dual permitting restrictions, consent requirements, signage restrictions, and unbridled discretion fail both prongs of strict scrutiny.

Mansfield claims its principal interest is in aesthetics. Def.'s Resp. at 24 ("preserving and advancing the aesthetics of a city constitute a 'substantial governmental goal.'"). While the Supreme Court has repeatedly found that a government's interest in aesthetics may be "substantial," it is not "compelling." *Metromedia,* 453 U.S. at 507-08; *Baker,* 506 F. Supp. at 423 (declining to find aesthetics a compelling government interest).

In addition, a law will satisfy strict scrutiny only if it is so precise that it employs "the least restrictive means to further the articulated interest." *Playboy,* 529 U.S. at 813 (quotations omitted). If less restrictive alternatives exist, the City must use one. *See id.* Mansfield failed to do so here. "Precision of regulation must be the touchstone." *Schaumburg,* 444 U.S. at 637.

As in *Planet Aid,* Mansfield has numerous less-restrictive maintenance requirements with teeth already available to it in the Ordinances. APP003-04. For example, Mansfield assumes, without evidence, that the strong maintenance provisions already in place under this administrative licensing scheme would be completely ineffective in preventing and addressing maintenance issues as they arise in 20 zones. Indeed, Mansfield has never tested its maintenance restrictions. Instead, it banned the bins in most zones and made their placement difficult if not impossible in the remaining six because that was easier.

Mansfield's overly burdensome restrictions "impl[y], without any evidence, that charities would be negligent in failing to conduct timely pickups of donated goods, in maintaining the appearance of the bins," and otherwise following the maintenance requirements. *Planet Aid,* 782 F.3d at 331. In addition, Mansfield suppresses speech on the assumption "that lesser, content-

neutral restrictions such as requiring weekly or bi-weekly pickups or inspections of all outdoor receptacles, would be ineffective." *Id.* It overlooks that the "City could allocate additional police resources to enforce the [existing] rules . . . or install cameras or other technological devices at locations frequented by [donation bins] to aid in the identification of" maintenance or permitting violations. *Blitch v. City of Slidell*, 260 F. Supp. 3d 656, 670-71 (E.D. La. 2017); *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 429 (5th Cir. 2014) (court should consider technological alternatives to burdening speech in strict scrutiny analysis).

In short, Mansfield cannot demonstrate that its existing maintenance requirements, alternative penal provisions (which already prohibit exactly that which the City seeks to prevent here), or other less intrusive alternatives, such as weekly pick-ups and bin inspections for all outdoor containers, cannot adequately address the City's maintenance concerns. Instead, Defendant took "a sledgehammer to a problem that can and should be solved with a scalpel." *Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276, 1294 (D. Colo. 2015) (striking subsections of the city's panhandling ordinance). Rather than punish maintenance violations as they occur, Mansfield "preemptively and prophylactically prevents all charities from operating outdoor, unattended donation bins within" most of Mansfield "in the interest of aesthetics and preventing blight," a course of action specifically rejected by *Planet Aid*, 782 F.3d at 331.

"To prohibit this much speech is a significant restriction of communication between speakers and willing adult listeners, communication which enjoys First Amendment protection." *Id.* (quoting *Playboy*, 529 U.S. at 812). Over 90 years ago, the Supreme Court explained that banning protected speech to prevent future unlawful speech is not a narrowly tailored approach to solving a problem. *See Blitch*, 260 F. Supp. 3d at 670 ("Without more, fifty-six incidents over two years where the police could not identify a panhandler does not provide a strong justification for

burdening speech."); *McCullen*, 573 U.S. at 493 ("For a problem shown to arise only once a week in one city . . . creating 35-foot buffer zones at every clinic across the Commonwealth is hardly a narrowly tailored solution."); *Near*, 283 U.S. at 712 (holding statutory ban on speech swept too broadly because it "not only operates to suppress the offending newspaper or periodical but to put the publisher under an effective censorship").

This Court should clarify strict scrutiny is required in this case, which the challenged provisions certainly cannot survive.

### III. Mansfield's Donation Box Law is overbroad.

This court correctly concluded Mansfield's zoning restrictions, setback restrictions, dual permitting, consent requirement, and signage restrictions are not narrowly tailored under the lower standard of intermediate scrutiny. Order 8-11. However, this Court did not reach Plaintiff's overbreadth claim. *Id.* at 13. At this point the Court should, to avoid leaving vulnerable all charities not before the Court.

Mansfield's arguments against an overbreadth ruling demonstrate its misunderstanding of the doctrine. Def.'s Resp. at 21-23. The Supreme Court recently affirmed the two types of overbreadth challenges in *Americans for Prosperity Foundation v. Bonta*: (1) "no set of circumstances exists under which the law would be valid" or "the law lacks a plainly legitimate sweep," and (2) "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." 141 S. Ct. 2373, 2387 (2021) (citations omitted).

The breadth of Mansfield's Donation Box Law satisfies either type of facial overbreadth challenge, silencing the speech of the Appellees and all charities not before this Court.

*First*, in every application of the Ordinance, it prohibits protected, clean speech in 14 zones. APP011-12 §§ 2, 3. In addition, it pushes all charities' donation bins back more than 500 feet from

every major roadway and 250 feet from every residence, school, hospital, daycare, park, or recreational facility, which are Mansfield's most highly visible areas, before the City even imposed its maintenance requirements. *See id.* at § 3(b); APP036. The Charities have established that there is no set of circumstances under which the zoning ban or the setback restrictions on fully protected, well-maintained charitable donation bins would ever be justified. The same is true for the dual permitting, signage, and property-owner-only consent requirements.

*Second*, the zoning restriction indisputably prohibits protected donation boxes in a substantial number of zones, which silences more than a substantial number of charities, i.e., all, seeking to solicit charitable contributions via donation box in Mansfield. *See* Declarations of Mark Stolze and Norma Crosby, APP059-66. If foreclosing all charities' donation boxes from 14 of 20 zones is not substantial, then what is? *See Bonta,* 141 S. Ct. at 2388. Likewise, in every application of the setback requirements, the City removes all viable areas in Mansfield for donation boxes, which is substantially more locations than necessary, and for no good reason. The Charities have established that in every single application, much less a substantial number of applications, the City sweeps well-maintained, fully protected donation bins within its proscription and risks the suppression of ideas, and of speakers like AOH who dare to defend their constitutional rights. *Munson*, 467 U.S. at 969.

The Supreme Court explained well its overbreadth analysis in the context of an administrative licensing scheme regulating charitable solicitation in *Bonta*:

> We have no trouble concluding here that the Attorney General's disclosure requirement is overbroad. The lack of tailoring to the State's investigative goals is categorical—present in every case—as is the weakness of the State's interest in administrative convenience. Every demand that might chill association therefore fails exacting scrutiny.

141 S. Ct. at 2387.

This Court should find for the Plaintiff charity on the overbreadth claim, to protect the speech rights of AOH and all charitable organizations, like National Federation of the Blind of Texas and National Children's Cancer Society, who are not before this Court and whose protected speech is equally censored.

## IV.  Plaintiff is entitled to a permanent injunction.

AOH seeks a permanent injunction to enjoin Defendant from enforcing its unconstitutional Donation Box Law against the charity and all other charities similarly situated. The elements of a permanent injunction are essentially the same as those for a preliminary injunction "with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success." *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 858, 877 (N.D. Tex. 2008) (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

For a permanent injunction to issue, a Plaintiff must show (1) it has suffered an irreparable injury; (2) legal (monetary) remedies are inadequate; (3) the balance of hardships weighs in favor of an injunction; and (4) the public interest would not be disserved by a permanent injunction." *Jornaleros De Las Palmas*, 945 F. Supp. 2d at 801 (citing *Ebay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

### A.  Plaintiff has suffered irreparable injury.

A violation of First Amendment rights per se constitutes irreparable harm. Order at 13; *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 295 (5th Cir. 2012); s*ee also Millennium Rests. Group, Inc. v. City of Dallas*, 191 F. Supp. 2d 802, 810 (N.D. Tex. 2002).

The Fifth Circuit has made clear that the deprivation of First Amendment rights is a sufficient showing of harm in the permanent injunction context: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

*Opulent Life Church*, 697 F.3d at 295 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also DeOtte v. Azar*, 393 F. Supp. 3d 490, 511 (N.D. Tex. 2019) ("In *Opulent Life Church*, the Fifth Circuit noted the long-established principle that a violation of First Amendment rights per se constitutes irreparable harm").

### B.  Legal remedies are inadequate to compensate AOH for its loss of constitutional rights.

Monetary damages cannot compensate AOH for the loss of its constitutionally protected rights under the First and Fourteenth Amendments to the United States Constitution. The deprivation of constitutional rights is immeasurable. *Jornaleros De Las Palmas*, 945 F. Supp. 2d at 801 (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952)). With no adequate remedy at law to redress the charity's grievances, the AOH's protected speech is and will continue be chilled until the facially unconstitutional burdens are enjoined.

In addition, because the Ordinance is unconstitutional on its face, i.e., as applied to all charities, "effective legal relief can be secured only by a multiplicity of actions such that [each] plaintiff would be required to pursue [a lawsuit] each time he was injured." *Id.* (citing *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 657 F. Supp.2d 795, 824 (S.D. Tex. 2009)). Accordingly, individual legal actions are inadequate. *Munson*, 467 U.S. at 968-69.

### C.  The balance of hardships weighs in favor of Plaintiff.

An irreparable injury to a plaintiff will typically outweigh any harm to a government entity, particularly Mansfield's interest in aesthetics. *See* Order at 14; *Carico Invs., Inc. v. Tex. Alcoholic Bev. Comm'n*, 439 F. Supp. 2d 733, 750 (S.D. Tex. 2006); *see also Millennium Rests. Grp.*, 191 F. Supp. 2d at 810 ("[Plaintiff] has further shown that the threatened harm to it -- . . . infringement upon its First Amendment rights -- outweighs the harm to the City."); *DeOtte*, 393 F. Supp. 3d at 512 ("the Court finds the balance of hardships favors an injunction because the Government, even

set

in the face of an injunction, will have access to other, less-restrictive means to furthering its interests"). There is little doubt that the harm involving the loss of First Amendment freedoms to AOH, which constitutes per se irreparable injury, outweighs any potential harm to Mansfield in not being able to enforce the unconstitutional Ordinance. As discussed above, Mansfield has ample less restrictive means to further its interests.

### D.  The public interest lies squarely within the issuance of a permanent injunction.

"Injunctions protecting First Amendment freedoms are always in the public interest." Order at 14 (quoting *Opulent Life Church*, 697 F.3d at 298).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant summary judgment in favor of Plaintiff AOH.

Respectfully submitted,

/s/ *Karen Donnelly*
Karen Donnelly (*pro hac vice*)
William E. Raney (*pro hac vice*)
Kellie Mitchell Bubeck (*pro hac vice*)
COPILEVITZ, LAM & RANEY, P.C.
310 W. 20th Street, Suite 300
Kansas City, Missouri 64108
Telephone: (816) 472-9000
Facsimile: (816) 472-5000
Email: kdonnelly@clrkc.com

Bennett Rawicki, TX # 24083708
HILGERS GRABEN PLLC
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (214) 842-6828
Facsimile: (402) 413-1880
Email: brawicki@hilgersgraben.com

*Counsel for Plaintiff Arms of Hope*

38

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of December, 2023, an electronic copy of the foregoing was filed with the Clerk of the Court for the United State Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system to all counsel of record.

/s/ *Karen Donnelly*
Karen Donnelly