**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| ARMS OF HOPE, a Texas Nonprofit Corporation,    ) ) ) | |
|      **Plaintiff,**    ) ) | |
|     **v.**    ) ) | **Case No. 4:23-cv-00131-O** |
| CITY OF MANSFIELD, TEXAS, a municipal Corporation,    ) ) ) | |
|      **Defendant.**    ) ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**<u>OF MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

Table of Contents ................................................................................................ ii

Table of Authorities ........................................................................................... iii

Introduction ......................................................................................................... 1

Statement of Facts ............................................................................................... 2

    A.  The City of Mansfield's Current Donation Box Law ......................................... 4

    B.  The City's Asserted Aesthetic Interests in its Donation Box Law ..................... 6

    C.  Arms of Hope's Charitable Donation Box Program ........................................... 7

    D.  The Historical Tradition of Donation Boxes ..................................................... 9

    E.  The City's Unjustified Enforcement Against AOH ............................................ 10

    F.  The City's Internal Communications Reveal Targeted Animus at AOH. ............ 10

    G.  The City's Unequal Treatment of Receptacles—Favoring Trash Over
        Religion.. ...................................................................................................... 11

Standard of Review ........................................................................................... 13

Argument ........................................................................................................... 14

I.    The Donation Box Law Violates Constitutional and Statutory Protections for
      Religious Exercise. ...................................................................................... 14

    A.  The Location Restrictions Substantially Burden AOH's Religious Exercise
        Under RLUIPA. ........................................................................................... 15

    B.  The Location Restrictions Unreasonably Limit AOH's Religious Structures
        Under RLUIPA. ........................................................................................... 22

    C.  The Location Restrictions Violate the Equal Terms Provision of RLUIPA ......... 24

    D.  The Law's Unequal Treatment of Donation Boxes Violates AOH's Right to
        Free Exercise of Religion. ............................................................................ 28

II.    The Donation Box Law Violates AOH's Right to Speak ...................................... 31

    A.  Strict Scrutiny Applies to Restrictions on Donative Speech ............................. 33

    B.  The Donation Box Law Does Not Pass Intermediate Scrutiny. .......................... 36

III.   The Donation Box Law Violates AOH's Right to Associate. ................................ 42

IV.   The Color Restriction Constitutes an Impermissible Prior Restraint ................... 45

V.    Overbreadth.................................................................................................... 46

VI.   Plaintiff Is Entitled to a Permanent Injunction ................................................. 48

    A.  Plaintiff Has Suffered Irreparable Injury. ............................................... 48

    B.  Legal Remedies Are Inadequate to Compensate AOH for Its Loss of Speech
        And Religion Rights. ............................................................................ 49

    C.  The Balance of Hardships Weighs in Favor of Plaintiff. ..................................... 50

    D.  The Public Interest Lies Squarely Within the Issuance of a Permanent
        Injunction.. ......................................................................................... 51

Conclusion................................................................................................................ 51

Certificate of Service ................................................................................................ 52

## TABLE OF AUTHORITIES

**Cases**

*Al Falah Ctr. v. Twp. of Bridgewater*, No. 11-CV-2397, 2013 U.S. Dist. LEXIS 190076 (D.N.J. Sep. 30, 2013)...................................................................................................24

*American Target Adver., Inc. v. Giani*, 199 F.3d 1241 (10th Cir. 2000) .........................44

*Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021) .................................................................................................33, 40, 41, 42, 43, 44, 45, 46

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987) .......................................46

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................13

*Baker v. City of Fort Worth*, 506 F. Supp. 3d 413 (N.D. Tex. 2020)...............................19

*Bethel World Outreach Ministries v. Montgomery Cty. Council*, 706 F.3d 548 (4th Cir. 2013) ................................................................................................................... 17

*Blitch v. City of Slidell,* 260 F. Supp. 3d 656 (E.D. La. 2017) .......................................21

*Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024)...............................................49

*Cantwell v. Connecticut,* 310 U.S. 296 (1940)........................................................32, 33

*Carico Invs., Inc. v. Tex. Alcoholic Bev. Comm'n*, 439 F. Supp. 2d 733 (S.D. Tex. 2006) ...........48

*Castle Hills First Baptist Church v. City of Castle Hills*, No. 01-CV-1149, 2004 U.S. Dist. LEXIS 4669 (W.D. Tex. Mar. 17, 2004)...................................................................17, 18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)............................................................ 13

*Chi. Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292 (1986)...............................42

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)............................28

*Cincinnati v. Discovery Network, Inc.*, 507 U. S. 410 (1993) .......................................34

*Citizens United v. FEC*, 558 U.S. 310 (2010)...............................................................42

*City of Austin v. Reagan Nat'l Adver. of Austin, LLC,* 596 U.S. 61 (2022)....................33

*City of Ladue v. Gilleo,* 512 U.S. 43 (1994)...........................................................32, 37

*Comite de Jornaleros de Redondo Beach,* 657 F.3d 947 (9th Cir. 2011)........................40

*DeOtte v. Azar,* 393 F. Supp. 3d 490 (N.D. Tex. 2019) .........................................17, 47

iv

*Ebay, Inc. v. MercExchange, LLC,* 547 U.S. 388 (2006) ................................................. 46

*Elijah Group, Inc. v. City of Leon Valley, Tex.*, 643 F.3d 419 (5th Cir. 2011) ............. 24, 25, 26, 27

*Elrod v. Burns*, 427 U.S. 347 (1976) .......................................................................... 47

*Employment Div. v. Smith*, 494 U. S. 872 (1990) .................................................... 28, 31

*Franciscan All. Inc. v. Azar*, 414 F. Supp. 3d 928 (N.D. Tex. 2019) ............................. 13

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) ................................... 43

*Fulton v. City of Phila., Pa.*, 593 U.S. 522 (2021) ................................................ 18, 19

*Hays County Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992) ................................... 39

*Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640 (1981) ............... 17, 33

*Hotze v. Hollins*, 2020 U.S. Dist. LEXIS 204775 (S.D. Tex. Nov. 2, 2020) ................... 22

*Jornaleros De Las Palmas v. City of League City*, 945 F. Supp. 2d 779 (S.D. Tex. 2013) ..............
...................................................................................................................... 40, 46, 47

*Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507 (2022) ........................................... 28, 30

*Layman Lessons Church v. Metro. Gov't,* 2019 U.S. Dist. LEXIS 66301 (M.D. Tenn. Apr. 18, 2019) ............................................................................................................... 17

*Lombardo v. Dallas*, 73 S.W.2d 475 (Tex. 1934) ...................................................... 37

*Louisiana ex rel. Gremillion v. NAACP*, 366 U.S. 293 (1961) .................................... 42

*Lozano v. Collier*, 98 F.4th 614 (5th Cir. 2024) ........................................................ 21

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*, 584 U.S. 617 (2018) ......... 28, 29

*McCullen v. Coakley*, 573 U.S. 464 (2014) .......................................................... 34, 38

*Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984) ......... 32, 37, 38

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981) ..................................... 19

*Millennium Rests. Group, Inc. v. City of Dallas*, 191 F. Supp. 2d 802 (N.D. Tex. 2002) ........ 46, 47

*Mote v. Walthall*, 902 F.3d 500 (5th Cir. 2018) ..................................................... 40, 41

*NAACP, W. Region v. Richmond*, 743 F.2d 1346, 1355 (9th Cir. 1984) ........................ 31

*Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202 (5th Cir. 2011) .......... 31, 33

*Nat'l Fed'n of the Blind of Texas, Inc. v. City of Arlington*, 109 F.4th 728
(5th Cir. 2024)................................................................31, 32, 35, 36, 37

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012).........................................22

*Near v. Minn.,* 283 U.S. 697 (1931).........................................................45

*Netflix, Inc. v. Babin*, 88 F.4th 1080 (5th Cir. 2023) ......................................47

*New Beginnings Ministries v. George*, No. 2:15-cv-2781, 2018 U.S. Dist. LEXIS 245391
(S.D. Ohio Sep. 28, 2018)..........................................................22

*Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279 (5th Cir. 2012)...........................
.......................................................... 14, 24, 27, 46, 47, 48

*Pass-A-Grille Beach Cmty. Church, Inc. v. City of St. Pete Beach*, 515 F. Supp. 3d 1226
(M.D. Fla. 2021) .......................................................17

*Planet Aid v. City of St. Johns*, 782 F.3d 318 (6th Cir. 2015) .........................20, 21, 31, 32, 33, 34

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) .......................................33, 34

*Riley v. Nat'l Fed'n of the Blind of N.C*, 487 U.S. 781 (1988) .........................................32, 33, 35

*Roberts v. United States Jaycees*, 468 U.S. 609 (1984).........................................40, 41

*Secretary of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947 (1984)
.......................................................32, 33, 44, 46, 47

*Spann v. City of Dall.*, 235 S.W. 513 (Tex. 1921).........................................37

*Staub v. City of Baxley,* 355 U.S. 313 (1958)................................................43

*St. Timothy's Episcopal Church v. City of Brookings*, 2024 U.S. Dist. LEXIS 54893
(D. Or. Mar. 27, 2024)................................................17

*Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 657 F. Supp.2d 795 (S.D. Tex. 2009) ..............47

*Tandon v. Newsom*, 593 U.S. 61 (2021) .......................................1, 28, 29, 30

*Thomas v. Collins*, 323 U.S. 516 (1945) ................................................31

*United Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217 (1967) ................................20

*United States v. Playboy Entm't Grp.*, 529 U.S. 803 (2000)................................................32

*Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620 (1980) ......................31, 32, 33

*Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 858 (N.D. Tex. 2008) ........................................................................................................................46

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)......................................................36

*Watkins v. City of Arlington*, No. 4:14-cv-381-O, 2014 U.S. Dist. LEXIS 95082 (N.D. Tex. July 14, 2014) .........................................................................................39, 40

*Weber v. Bd. of Dirs. of the Laurel Oaks Ass'n*, 2017 Pa. Commw. Unpub. LEXIS 857 (Pa. Commw. Ct. Nov. 13, 2017).............................................................................22

*Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015)...........................................................32

*X Corp. v. Media Matters for Am.*, 120 F.4th 190 (5th Cir. 2024)..................................43

*YMCA of Greater Rochester v. Town of Milo*, 563 F. Supp. 3d 71 (W.D.N.Y. 2021) ...................17

*Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579 (1952) .....................................47

**Constitutional Provisions**

U.S. CONST. amend. I  ..................................................................................... *passim*

U.S. CONST. amend. XIV ................................................................................. *passim*

**Statutes**

Mansfield, Tex., Code of Ordinances ch. 116....................................................... *passim*

Mansfield, Tex., Code of Ordinances ch. 155, § 155.012, §§ 50.02..................... *passim*

42 U.S.C. § 2000cc ............................................................14, 15, 18, 20, 21, 22, 24, 26

Tex. Penal Code § 28.08 (2023).........................................................................................21

Tex. Health & Safety Code § 365.012 (2023) ...................................................................21

**Federal Rules of Civil Procedure**

Rule 56(a)..........................................................................................................................13

**Other**

Environmental Protection Agency, *Facts and Figures about Materials, Waste and Recycling, Textiles: Material-Specific Data*, (Dec. 3, 2022) ....................................8

Kenneth Regan, You Can't Build That Here: The Constitutionality of Aesthetic Zoning and
    Architectural Review, 58 Fordham L. Rev. 1013 (1990).......................................................37

*Structure*, BLACK'S LAW DICT. 1520 (12th ed. 2024) ............................................................22

## INTRODUCTION

This is a First Amendment case about the City of Mansfield's bans and burdens on donation boxes and its targeted animus toward Arms of Hope—a religious ministry. Donation boxes are a unique, historic, and important form of fully protected religious exercise, speech, and association under the First and Fourteenth Amendments to the United States Constitution. They spread the Gospel of Jesus Christ, invite and motivate worship through the practice of the Christian virtue of charity, and enable AOH to associate with members of the community who wish to support a chosen cause. They communicate a donative message and, thus, are inherently charitable solicitations. Yet Mansfield bans these boxes in most of the City, and for no good reason. In contrast, Mansfield allows trash and recycling receptacles in all zones and without the onerous setbacks and on-lot location restrictions imposed on donation boxes.

Arms of Hope ("AOH"), a Christian charity for the poor, demonstrates eight independent paths of succeeding on the merits of its claims. A key reason the Donation Box Law fails on its face and in its application is that the city's stated interests are undermined by its overall exceptions to the Law against donation boxes. When the City allows the trash cans where it prohibits donation boxes, the City loses. That exception drives many of the legal paths here, and the reason the exception is so powerful is because it reveals that the City's purposes for the Law are not achieved by its enactment. All the City achieves is banning a religious mission. The trash is still visible, yet trash bins are not banned. The City's testimony confirms these sweeping prohibitions are all about aesthetics and that a clean receptacle poses no aesthetic issue. In *Tandon v. Newsom*, 593 U.S. 61, 63 (2021), which involved a restriction on communal gathering during COVID to prevent deaths, the Supreme Court held that allowing exceptions to that restriction completely undermines and destroys the rule as to faith-based activities. Aesthetics start on weaker footing and, as the evidence shows, the trash is still there. The overly broad Donation Box Law fails under all eight claims.

1

**STATEMENT OF FACTS**

AOH is a Christian tax-exempt nonprofit organization that cares for children, youth, and single mother families in their greatest time of need. APP011 ¶ 5. AOH has been speaking and evangelizing its Christian message to the people of Mansfield and associating with supporters through its donation boxes since 2019. APP015 ¶ 15.

In 2022, the City of Mansfield enacted its first regulations specifically about donation boxes. The City added a new Chapter 116 to the Mansfield Code of Ordinances to create a permitting process for donation boxes and amended Chapter 155 of the Mansfield Code to regulate the location, placement, size, signage, appearance, and maintenance of donation boxes (together, the "Donation Box Law"). APP070-81 (OR-2256-22; OR-2258-22). In July of 2022, the City began threatening AOH with fines, criminal charges, and impoundment of its five donation boxes in Mansfield because they were in newly prohibited areas. APP021-25 (July 5, 2022 Notice of Violation). AOH attempted to negotiate, which resulted in the City amending the Donation Box Law in January 2023. However, the amendments failed to cure the majority of the constitutional violations, and the City continued to demand removal of AOH's donation boxes under threat of steep fines, criminal charges, and impoundment of its boxes. APP021-25 (OR-2287-23; OR-2288-23). The City gave AOH ten days to remove its boxes or it would impound them, so AOH filed this lawsuit. ECF 1.

This lawsuit has succeeded in prompting the City to thrice amend its Donation Box Law to remove or reduce restrictions that AOH opposed, *see* APP058-69 (OR-2287-23 & OR-2288-23 (Jan. 2023)); APP001-09 (OR-2342-24 & OR-2346-24) (Jan. and Feb. 2024)); APP055-57 (OR-2396-24 (Dec. 2024)). This suit has also succeeded in prompting the City to allow AOH to keep its existing donation boxes while the lawsuit is pending, *see, e.g.*, ECF 15 at 2 ("Defendant has agreed not to take any enforcement action against Plaintiff pending a ruling[.]").

However, now in its fourth iteration, there remain serious problems with the Donation Box Law. It severely and unreasonably restricts where donation boxes can be placed, banning them through its zoning restrictions from churches and schools throughout the City, APP006-07, and effectively hiding them from public view in the few areas in which they are allowed. APP007 § 3(40)(a). The City treats trash receptacles more favorably than donation receptacles, APP138 (Wheaton-Rodriguez Tr. 39:22-24), intentionally targeting receptacles for donations for greater restriction than trash and recycling containers allowed throughout the City where donation boxes are not. *Id.* Worse, the City has demonstrated animus toward AOH's donation boxes in particular, APP001-09, APP045, despite their protected religious exercise and charitable solicitation.

To this day, none of AOH's donation boxes currently placed can comply with Mansfield's overly restrictive Donation Box Law. *See* APP113, 121, 125 (Ricciuti Tr. 59:19-23; 91:1-92:6, 108:17-109:25). The Law continues to prohibit AOH's religious structures and destroys its "ability to communicate [its] Christian message and to associate with donors through [its] donation bins" in Mansfield. APP090-91 (Robertson Tr. 36:24-37:23); APP183 (AOH Am. Answer to ROG 13).

### A.    The City of Mansfield's Current Donation Box Law

The Donation Box Law defines "donation box" as "[a]ny drop-off box, bin, container, receptacle, trailer or similar facility that accepts donated textiles, clothing, shoes, books, toys, household items and/or other salvageable personal property items to be used by the operator for distribution, resale or recycling." Mansfield, Tex., Code of Ordinances ch. 155, § 155.012. The Donation Box Law does not regulate any other unattended receptacles, such as containers for garbage, recycling, or deliveries. APP001-09.

The Donation Box Law contains requirements for permitting, appearance, and maintenance which, if enforced, would ensure that the donation boxes remain clean, that the properties with donation boxes authorize their placement, and that the operator of the donation box is identifiable

and accountable. APP001-09, 55-57 (OR-2342-24, OR-2346-24, OR-2396-24). Arms of Hope does not challenge these restrictions as currently amended.

Arms of Hope challenges the location and color restrictions that the Donation Box Law imposes on top of its other requirements. The location restrictions unreasonably limit the placement of donation boxes through overly burdensome zoning restrictions, setback restrictions, and location-on-lot restrictions. The color restrictions lack definitions, guidelines, and leave discretion to the enforcer to determine which colors it will permit and which it will prohibit. The City testified that it will not allow Arms of Hope's signature blue box because it is a primary color and not "Earth tone" or "neutral," APP121 (Ricciuti Tr. 91:1-6), and the City concedes that the Donation Box Law gives discretion to the City to decide what intensity of color it will permit or prohibit ad hoc. APP146 (Wheaton-Rodriguez Tr. 71:15-75:3).

The zoning restrictions ban donation boxes from 11 of 20 zones identified in the Donation Box Law. Donation boxes "are only permitted in the 2F, MF-1, MF-2, O-P, C-1, C-2, C-3, I-1, and I-2 Zoning Districts." APP007 (OR-2436-24, § 3 (amending § 40(a)). The Law thus bans donation boxes from 11 of 20 zones identified in OR-2436-24 § 2, including churches and schools, and in all other zones not listed in the Ordinance, which include 8 more zones identified in the City's online zoning map. *Compare* APP007 (OR-2436-24, § 2 (Permitted Use Table)) *with* APP027 Official Zoning Map, City of Mansfield, Texas.

The setback restrictions ban donation boxes from within 300 feet of Mansfield's three major roads (U.S. Hwy. 287, U.S. Business Hwy. 287, and State Hwy. 360), within 250 feet of "any public parks and recreational facilities," or within 75 feet of land zoned for single-family use (A or SF). APP056, APP007 (OR-2396-24 § 1; OR-2346-24 § 3). Mansfield amended its Donation Box Law again on December 9, 2024, five days after AOH filed its First Amended Complaint,

4

reducing the highway setback from 500 to 300 feet and removing a ban on advertising messages. While commendable, these amendments still leave significant constitutional violations intact.

The location-on-lot restrictions limit donation boxes to (1) "the rear yard or side yards only" such that "no donation box shall be located between any building and a street"; (2) only on "a paved surface, separate and independent of all required parking spaces, aisles, and loading dock and service areas"; and (3) "a minimum distance of 25 feet away from the intersection of two or more fire lanes and/or drive aisles," including parking lot drive aisles. APP007 (OR-2436-24 § 3); APP145 (Wheaton-Rodriguez Tr. 68:25-69:2).

The City has prepared a map in this case which shows where donation boxes are banned by the zoning restrictions (colored grey) and by the setback restrictions (colored blue and cream).



APP082 (CITY 646); APP148-49 (Wheaton-Rodriguez Tr. 78:8–24, 81:11–83:4). The City colored

green the areas purportedly available for donation boxes, but admitted the green areas do not account for location-on-lot restrictions, including the rear/side lot restriction and the bans on placing donation boxes in any required parking space, any unpaved area, any fire lane, or within 25 feet of the intersection of any drive aisles. APP082.

### B.    The City's Asserted Aesthetic Interests in its Donation Box Law

The City admits its interest in regulating donation boxes boils down to aesthetics and that the City has no interest in prohibiting clean, well-maintained boxes. *See* APP109 (Ricciuti Tr. 44:5-1, 44:25-45:6) ("Is a clean donation bin contrary to your interest in stopping blight?" . . . "No" because "[i]f it's clean, then it's not contributing to blight through dumping or trash and debris, graffiti"); APP135 (Wheaton-Rodriguez Tr. 28:1–25).

The City's Ordinances identify three general interests all supporting this aesthetic aim: (1) "health, safety and welfare of the general public," which the City explained meant preventing "blight due to graffiti" and addressing potential "health and sanitation issues due to poor maintenance and the accumulation of debris and excess items outside of the collection boxes," *see* APP055 (OR-2396-24 at 1); APP108 (Ricciuti Tr. 39:20–40:2); (2) "promotion of consistent land uses and development," which the City explained meant planning for "future land use" and promoting consistency within types of land uses and within each type of zoning district, *see* APP055 (OR-2396-24 at 1); APP152-53 (Wheaton-Rodriguez Tr. 97:10–98:6) (conceding the City's interest is in treating donation boxes the same in all zones); and (3) "the protection of property rights and . . . landowners and residents of Mansfield," which the City explained meant keeping properties clean and being able to identify the donation box owner and operator to ensure accountability, *see* APP055 (OR-2396-24 at 1); APP109 (Ricciuti Tr. 42:6–43:5).

The City explained that its interests are supported by the Donation Box Law because it "would lessen aesthetics to have dumping, blight, graffiti," APP109 (Ricciuti Tr. 44:21–45:2).

6

However, when asked if "a clean box in itself [is] blight," the City responded "No." *Id.* (Ricciuti Tr. 45:3-4). Further, when asked whether "a well-maintained donation box [is] unsightly, the City again responded "No." *Id.* (Ricciuti Tr. 45:5-6).

### C.    Arms of Hope's Charitable Donation Box Program

AOH provides shelter, clothing, necessities, education, clinical services, love, and spiritual guidance to at-risk children and families in their care to help them avoid homelessness, poverty, abuse, and neglect, and in a nurturing, Christian environment in the Dallas metropolitan area and throughout Texas. APP010-11 ¶¶ 2-5.

As a faith-based charity, AOH relies exclusively on public support, including and especially from donations to its donation boxes. APP188-190 (AOH Answers to ROGs 15-16); APP178 (AOH Am. Answer to ROG 2). AOH's donation boxes broadcast its name, logo, website, and phone number, which enable and encourage people to contact AOH to find out more about its Christian mission and its charitable programs, and to find out how to help AOH or get help from AOH. APP183-84 (AOH Am. Answer to ROG No. 13). Every donation box bearing AOH's name and logo spreads the message of Jesus Christ by motivating citizens to practice the Christian virtue of charity. *Id.* As AOH's CEO testified, "[E]ach one of these religious structures practices the Christian virtue of charity" as "an active way for people to practice the Christian virtue of charity." APP089 (Robertson Tr. 30:6–32:3). Indeed, by "practicing the Christian virtue of charity" at the donation boxes, there is "worship" of God there. *Id.* "[T]he boxes invite and support that act of worship." APP183-84.

Unlike passive billboards, yard signs, or flyers—which simply broadcast a message—donation boxes interact and associate with donors and members of the community, communicating in a distinct way AOH's religious message to promote Christian charity and giving the public an immediate opportunity to associate and worship with AOH through the practice of Christian

charity. *See* APP179-80 (AOH Am. Answer to ROG 10); APP089 (Tr. 30:9-31:13, 31:25-32:3).

Furthermore, donation boxes are an asset to cities, including Mansfield, because they provide to residents in need clothes and other household items that could otherwise be sent to the local landfill. APP187-88 (AOH Answer to ROG No. 14); APP014-15 ¶ 15.[1]

AOH desires to place donation boxes in high-traffic and high-visibility areas where people in the community gather, such as shopping, retail, dining, churches, and schools. APP018 ¶¶ 26-18; APP090, 98 (Robertson Tr. 35:19-22, 65:1-4) (the Holy Spirit has called AOH to place donation boxes spreading the word of Jesus Christ everywhere it can). AOH is not alone. The National Federation of the Blind of Texas and National Children's Cancer Society submitted declarations in support of their shared desire to place donation bins in Mansfield. APP059-66. Those charities affirmed they too have contracts to place donation boxes in Texas and would place them in Mansfield but "they cannot do so because of the City's restrictions." APP051 ¶ 13; APP053 ¶ 8.

### D.    The Historical Tradition of Donation Boxes

Organizations have used donation boxes for thousands of years for a variety of religious and charitable purposes. In the Judeo-Christian religion, the Bible describes donation boxes used at the Temple of Jerusalem before and during the life of Jesus Christ two thousand years ago. *See, e.g.*, 2 Chronicles 24:8 ("King Joash commanded that a box for contributions be made. They put it outside, at the gate of the Temple of the Lord."); Luke 21:1-4 (describing poor widow casting her mite into the donation box). A donation box has been depicted at a basilica in Italy since at

---

[1] "The Environmental Protection Agency (EPA) reports that landfills received 11.3 million tons of textiles as municipal solid waste in 2018, which was 7.7% of all municipal solid waste landfilled nationwide. *Id.*; *see* EPA, *Facts and Figures about Materials, Waste and Recycling, Textiles: Material-Specific Data*, https://www.epa.gov/facts-and-figures-about-materials-waste-and-recycling/textiles-material-specific-data (Dec. 3, 2022) ("The main source of textiles in municipal solid waste (MSW) is discarded clothing."). AOH respectfully requests this Court take judicial notice of these publicly available EPA statistics, which Mansfield cannot dispute.

least the sixth century A.D.:



APP215 (Rawicki Decl. ¶ 5). The Muslim faith has used donation boxes made of stone for hundreds of years, some of which are still visible today in Istanbul. APP232. In the United States, the placement of donation boxes by charities in commercial areas dates back to at least the 1800s, including the Salvation Army's Red Kettle campaign and a variety of donation boxes used by charities in towns throughout the country for the last 130 years. APP214-15 (Rawicki Decl. ¶¶ 2–4, 15; Ex. J).

### E.    The City's Unjustified Enforcement Against AOH

After the City first enacted regulations specifically targeting receptacles appealing for donations in May 2022, the City began threatening AOH with fines and impoundment of its five donation boxes in Mansfield because they were in newly prohibited areas. APP021 (July 2022 Notice of Violation). The City's threats resulted in two properties with donation boxes asking AOH to remove them—"[its] location partners were scared to death of the fines," APP098 (Robertson Tr. 68:15–21)—which leaves only three donation boxes in Mansfield for AOH. These three donation boxes have been placed without issue since 2019. APP015 ¶ 15. Besides the City's threats of enforcing the Donation Box Law, AOH has never received a single citation from Mansfield regarding any one of its donation boxes. *Id.* at ¶ 16.

**F.     The City's Internal Communications Reveal Targeted Animus at AOH.**

The City's internal findings and communications reveal the City has an animus against Arms of Hope.

In an email from Nicolette Ricciuti, Director of Regulatory Compliance, to Mansfield Council Member Casey Lewis of November 1, 2022, Ricciuti explained that the City had "received a Letter of Intent to file suit against the City from Arms of Hope." APP044. Ricciuti copied City Manager Joe Smolinski on the email. *Id.* Based on a mistaken belief that AOH's donation bin was one of several "donation bins in the Shops at Broad parking lot" and that the City owned that parking lot, Smolinski responded: "I think we need to hammer [AOH] on this one. They didn't get permission from the actual owners…the city. They threaten to file suit every time we talk to them. I say we show them the respect that they show us." APP045.

Ricciuti replied, after "verifying the property records," that the City does not own the parking lot and "that we only own the StarCenter." *Id.* Smolinksi responded by instructing Ricciuti to "[c]heck and see if the public easement that we have over ALL of the parking would allow us to remove them asap." *Id.* Smolinski continued: "We need a judge to authorize us to move these damn things. If he won't authorize it, I want to know immediately. The appointment of a municipal court judge will be on an agenda shortly thereafter." APP046. AOH has never placed a donation box in the Shops at Broad parking lot. *See* APP155-76 (AOH's placement agreements).

 Further revealing animus against AOH, the City's only approved permit for a donation box is another organization's box on the same site as one of AOH's longstanding boxes: 1550 E. Broad Street. APP196, 204; APP021. Rather than honor its agreed-upon stay of AOH's donation boxes pending this litigation, the City effectively has given this placement to another cause. This approved permit means AOH's existing box now violates the Donation Box Law's prohibition that "no two donation boxes shall be less than 300 feet apart." APP007 (OR-2346-24 § 3) (amending

§ 155.099(B)(40)). The City is thus favoring another organization's donation box, again evidencing animus against AOH for challenging the City's Law and defending its religious freedom.

### G.    The City's Unequal Treatment of Receptacles—Favoring Trash Over Religion

The City has eliminated donation boxes in most of the City. *Id.* at §§ 2-3. In contrast, the City allows trash and recycling receptacles in areas prohibited for donation boxes. APP137-38 (Wheaton-Rodriguez Tr. 36:18-25, 39:22-24) (City's zoning and planning official testifying that there are no zoning restrictions for trash and recycling receptacles); AP137 (Wheaton-Rodriquez Tr. 34:17-36:3) (City testifying there are no 300-ft setbacks from major roads, 250-ft setbacks from parks and recreational facilities, nor 75-ft setbacks from residential for dumpsters or trash and recycling bins). The City admits its interests in regulating donation boxes trash and recycling receptacles are the same. APP110 (Ricciuti Tr. 48:24-49:11) (City conceding its interests in regulating each are the same, and the risks of overflow by presented by each are the same) Unlike donation boxes, however, trash and recycling receptacles are allowed in all zones and without these onerous setbacks.

In addition, the City has relegated religious and charitable alms boxes to areas behind the building where no one can see them from the street in the few areas in which they are allowed. But this restriction does not extend to other outdoor receptacles. For example, a dumpster was placed between the building and a street at 1585 FM 157 in Mansfield in March 2025, in violation of the rear/side lot restriction that would apply if it were a donation box.

11



APP219 (Ex. A). This dumpster had items left outside of it, which is prohibited for donation boxes. APP008 (§ 155.099(B)(40)(a)(12)). The City has not provided evidence of enforcement of trash receptacles when they have items left outside them.

As of March 2025, there were at least five other properties with dumpsters in between the building and street. *See* APP219-25 (Exs. B, C, D, E, G). Three of these properties were also within areas prohibited for donation boxes according to the City's map of areas prohibited by zone or by setback restriction from the three major roads or from public parks and recreational facilities. *Compare* APP082 (City's map) *with* APP220-25 (Exs. B, D, G). One of these properties is the Mansfield Independent School District Administration Office, which places two dumpsters next to each other, openly between a building and street, and in a zone prohibited for donation boxes. APP225 (Ex. G). Another property with a dumpster between the building and street places its dumpster on grass next to the street, which is not allowed for donation boxes. APP222 (Ex. D). The City also has allowed receptacles for mail or other deliveries to be between buildings and a street. *See* APP226-27 (Exs. H, I). Yet the City bans AOH's religious donation boxes from these same areas.

12

## STANDARD OF REVIEW

"Summary judgment is proper when the pleadings and evidence show 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Franciscan All. Inc. v. Azar*, 414 F. Supp. 3d 928, 934 (N.D. Tex. 2019) (quoting Fed. R. Civ. P. 56(a)). "'[T]he substantive law will identify which facts are material.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). It is particularly appropriate in cases like this where the movant presents questions of law based on facts it does not dispute for purposes of the motion. Because "there can be but one reasonable conclusion" as a matter of law, *Anderson*, 477 U.S. at 250, the Court should grant summary judgment for Plaintiff, which would dispose of this case.

## ARGUMENT

AOH moves for summary judgment that the challenged Donation Box Law, as amended by Ordinance Nos. OR-2342-24, OR-2346-24, and OR-2396-24, violate the United States Constitution and federal law. AOH presents eight independent paths to dispose of this case in favor of this Christian ministry for the poor, and any one claim decided in AOH's favor disposes of the case.

The Donation Box Law prohibits Arms of Hope's Christ-centered donative speech, religious exercise, and association via donation box in most of Mansfield, through its unnecessary zoning restriction, setback restrictions, location on-lot restrictions, and its color restrictions. The Donation Box Law, on its face and as applied, violates three clauses of the Religious Land Use

13

and Institutionalized Persons Act (RLUIPA) and AOH's freedoms of religion, speech, and association under the First and Fourteenth Amendments. The challenged Donation Box Law is also overbroad and constitutes an impermissible prior restraint on donative speech.

It cannot pass strict scrutiny as required under RLUIPA and the First Amendment, and it fails even the lesser intermediate scrutiny standard as this Court previously found. *See* ECF 23.

**I.    The Donation Box Law Violates Constitutional and Statutory Protections for Religious Exercise.**

The Donation Box Law's challenged location restrictions—specifically the zoning restrictions, setback restrictions, and location-on-lot restrictions—violate the First Amendment's Free Exercise Clause and three provisions of RLUIPA: the prohibitions on land-use regulations that (1) substantially burden religious exercise, (2) unreasonably limit religious structures, and (3) treat a religious institution on less than equal terms as a nonreligious institution. 42 U.S.C. § 2000cc(a)(1), (b)(3)(B), (b)(1).

RLUIPA contains a rule of construction that it "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g); *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 289 (5th Cir. 2012).

**A.    The Location Restrictions Substantially Burden AOH's Religious Exercise Under RLUIPA.**

RLUIPA provides, "No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person . . . unless the government" satisfies strict scrutiny. 42 U.S.C. § 2000cc(a)(1).

*First*, the City is a municipal government subject to RLUIPA. *Opulent Life Church*, 697 F.3d at 291.

*Second*, the Donation Box Law is a per se "land use regulation" because it regulates how

property owners, lessees, invitees, and guests can use land in Mansfield. 42 U.S.C. § 2000cc-5(5).

*Third*, AOH's use of donation boxes is a "religious exercise" protected by RLUIPA. The statute defines "religious exercise" as "any exercise of religion." *Id.* at (7). It is AOH's sincerely held religious belief that all people are "called by Christ to care for the needy and clothe the poor through charitable works," and to spread the Christian message. APP011-12 ¶¶ 6-7. Jesus Christ's calling to practice charity is a religious obligation in the Judeo-Christian faith. "Whoever has two tunics is to share with him who has none, and whoever has food is to do likewise." APP012 ¶ 6 (quoting Luke 3:11). The donation boxes themselves help AOH "turn[] the hearts of the people to care for the poor" and provide "an active way for people to practice the Christian virtue of charity." *Id.*; APP089 (Robertson Tr. 30:6-31:13).

Indeed, AOH's donation boxes "are unique … religious structure[s]" that spread the Gospel of Jesus Christ, serving as "vessels" for the religious exercise of providing alms to the poor. APP089 (Robertson Tr. 30:6-31:13). God instructs that "If you spend yourselves on behalf of the hungry, and satisfy the needs of the oppressed, then your light will rise in the darkness, and your night will become like the noonday." APP012 at ¶ 7 (quoting Isaiah 58:10). It is through the Christian virtues of charity, faith, and hope that "He upholds the cause of the oppressed and gives food to the hungry." APP012 ¶ 7 (quoting Psalm 146:7). This is AOH's faith, mission, and Biblical mandate. *Id.*; APP089 (Robertson Tr. 30:6-31:13).

The donation boxes spread the message of Jesus Christ by sharing AOH's name, logo, and website with members of the community, soliciting and collecting donations to provide for the children and families in AOH's care, and inviting the community to share in the Word of Christ and to support this Christian ministry through their own religious acts of charity. AOH's logo is displayed largely on each donation box showing a mother and her two children holding hands,

embodying Christian faith, family, and hope. "Whoever gives to the poor will not want, but he who hides his eyes will get many a curse." Proverbs 28:27. "But if anyone has the world's goods and sees his brother in need, yet closes his heart against him, how does God's love abide in him? Little children, let us not love in word or talk but in deed and in truth." 1 John 3:17-18. As Robertson testified that, through prayer, AOH has been "called by the Holy Spirit to place [donation boxes] all over the state of Texas wherever we can," to share the "[G]ospel of Jesus everywhere and to allow people to practice the Christian virtue of charity." APP090, 98 (Robertson Tr. 35:20-22, 65:1-15.) It is part of their religious ministry.

Everything AOH does through its donation boxes "is to share the Gospel of Jesus Christ, everything we do." Robertson Tr. 30:9-10. As AOH's CEO testified, each donation box spreading AOH's name, logo, and website solicits Christian acts of charity and accepts those acts of charity on behalf of the "poor widows and orphans in [AOH's] care." *Id.* (Robertson Tr. 30:6-31:13); APP012 ¶ 7. Each donation box inspires the community to respond to Christ's calling. *Id.* Thus, AOH exercises its faith through these boxes, and it also inspires an increase in Christian faith and charity in others and in society at large. To that end, AOH strives to provide a model of Christian charity and opportunities for others in the community to practice their faith through donation receptacles.

The donation boxes are thus a religious exercise because they serve religious purposes "inspired and motivated by [AOH's] Christian beliefs and mission," including "encourag[ing] the people of Mansfield to grow closer to Christ by inspiring and awakening a sense of love and charity for the needy," "evangelizing Christian charity," "spreading [AOH's] faith, charity, and hope," encouraging the practice of the Christian virtue of charity, and numerous other religious purposes. APP013-14 (Robertson Decl. ¶¶ 10–13). Courts have held that similar religious exercise is

16

protected by RLUIPA. *See, e.g., Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 645 (1981) (seeking donations was exercise of religion); *Pass-A-Grille Beach Cmty. Church, Inc. v. City of St. Pete Beach*, 515 F. Supp. 3d 1226, 1229 (M.D. Fla. 2021) (offering free parking near a beach was religious exercise because it offered Christ-like hospitality to all and attracted people to the church); *YMCA of Greater Rochester v. Town of Milo*, 563 F. Supp. 3d 71, 83 (W.D.N.Y. 2021) (offering a place for non-religious community groups to have events was religious exercise because it was part of YMCA's "mission of 'placing Christian principles into practice'"); *Layman Lessons Church v. Metro. Gov't*, 2019 U.S. Dist. LEXIS 66301, *12-15 (M.D. Tenn. Apr. 18, 2019) (storing and distributing donated goods to poor was religious exercise).

*Fourth*, the Donation Box Law's location restrictions, enforced by criminal and civil penalties up to $2,000 for each day and each box, are substantial burdens on AOH's religious exercise through donation boxes. "[I]n the land use context," a burden is substantial if "a government regulation puts substantial pressure on [plaintiff] to modify its behavior." *Bethel World Outreach Ministries v. Montgomery Cty. Council*, 706 F.3d 548, 556 (4th Cir. 2013) (collecting cases distinguishing "substantial burden" in land-use context and prison context).[2] As this Court has described in a similar context, a burden is substantial when "the harm Plaintiffs complain of . . . is from their inability to conform their own actions . . . to their religious beliefs without facing massive penalties from the government." *DeOtte v. Azar*, 393 F. Supp. 3d 490, 506 (N.D. Tex. 2019) (citation and emphasis omitted). It is a substantial burden to limit a religious organization from doing as much as it is called to do "in accordance with [its] faith." *St. Timothy's Episcopal Church v. City of Brookings*, , 726 F. Supp. 3d 1231, 1244-45 (D. Or. 2024) (finding substantial

---

[2] *See also Castle Hills First Baptist Church v. City of Castle Hills*, No. 01-CV-1149, 2004 U.S. Dist. LEXIS 4669, at *33–34 (W.D. Tex. Mar. 17, 2004) ("[A] burden is substantial when the believers demonstrate that the government's conduct prevents them from engaging in conduct . . . which the faith mandates." (citation omitted)).

burden in limiting a church to feeding the poor from its building only twice a week rather than fulfilling its calling of three to six times per week); *see also Castle Hills First Baptist Church*, No. 01-CV-1149, 2004 U.S. Dist. LEXIS 4669, at *43 (holding "denial of the use of the existing fourth floor substantially burdens both the number of children who can be educated and the quality of the educational programs offered").

Similarly, here, the Donation Box Law's zoning and location restrictions "prevent[] [AOH] from practicing, encouraging, and facilitating acts of Christian charity, as our Christian faith requires us to do, under threat of debilitating penalties." APP019 (Robertson Decl. ¶ 33). The location restrictions "are inhibiting the mission God assigned to [AOH]" "to share [AOH's] mission as Christians in every way possible, including through donation bins." APP018 (Robertson Decl. ¶ 27). The City's prohibitions on religious exercise and proselytization through donation boxes in most of Mansfield, including and especially at churches and faith-based schools, are a substantial burden on religious exercise.

*Fifth*, the City cannot satisfy the strict scrutiny required to allow this substantial burden on AOH's religious exercise. *See* 42 U.S.C. § 2000cc(a)(1). The City has not identified a single "compelling" interest furthered by the Donation Box Law's location restrictions. "Rather than rely on "broadly formulated interests," courts must "scrutinize[ ] the asserted harm of granting specific exemptions to particular religious claimants." *Fulton v. City of Phila., Pa.*, 593 U.S. 522, 541 (2021) (citation omitted). Thus, the question "is not whether the City has a compelling interest in enforcing its . . . policies generally, but whether it has such an interest in denying an exception to" AOH. Here, the City has offered no evidence of an interest in denying an exception to AOH. *See, e.g.,* APP154 (Wheaton-Rodriguez Tr. 102:24-103:1) (City admitting it has not considered an exception to place donation boxes on prohibited properties such as churches or faith-based schools

in single-family districts). The City's asserted interests are just the type of "broadly formulated interest" that the Supreme Court rejected in *Fulton*. The City has not articulated any interest why it cannot make an exception for AOH, and in fact, it conceded that a clean, well-kept donation box does not harm its interests. APP109-10 (Ricciuti Tr. 45:3-6, 49:17-25).

Moreover, the City concedes that its broad interests, such as the "health, safety, and welfare of the general public," are aesthetic in nature—to "prevent blight due to graffiti" and to keep trash and debris from being left in or around the box. APP108-09 (Ricciuti Tr. 39:20-40:2, 40:5-12, 44:5-10, 44:5-10). The same is true for the City's other broad, formulated interests stated in the Ordinance, such as the promotion of consistent land uses, identification of operators, and protecting the rights of property owners and residents. *Id.* Indeed, treating donation boxes differently across zones does not support consistent land use across the City, especially given the City has failed to provide evidence of a single safety issue in any one zone. The City concedes that its interest in enacting the Donation Box Law boils down to aesthetics. *See* APP109 (Ricciuti Tr. 43:1-5, 44:5-45:2, 44:25-45:6); APP135 (Wheaton-Rodriguez Tr. 28:1–25). But while a government's interest in aesthetics may be a "substantial" goal, *Metromedia, Inc. v. City of San Diego*, it is not "compelling." 453 U.S. 490, 507-08 (1981). "[T]he Supreme Court has repeatedly found a [government] interest in public aesthetics to be only 'substantial'"—not compelling. *Id.*; *see also Baker v. City of Fort Worth*, 506 F. Supp. 3d 413, 423 (N.D. Tex. 2020).

While the City does generally assert a public safety interest tied to its interest in aesthetics, that interest fares no better. That the City is admittedly not prosecuting all violative boxes deems its interest not compelling. APP123 (Ricciuti Tr. 99:15-20) (conceding City does not enforce against all violative bins, only some—"It depends on which bins you're talking about."). Even if the type of safety interest the City asserts were considered compelling, the City confirmed that

well-maintained donation boxes pose no "public safety issues." APP110 (Ricciuti Tr. 49:17-22). The City's asserted safety interest is, therefore, purely hypothetical. Mere speculation of harm or negative effects does not constitute a compelling state interest. *See United Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217, 222-23 (1967). No burden on protected donation boxes can be justified by the city's hypothetical interest in preventing blight and promoting public safety. *Planet Aid v. City of St. Johns,* 782 F.3d 318, 323 (6th Cir. 2015).

Further, restricting the location of donation boxes based on a hypothetical safety interest is not "the least restrictive means of furthering that . . . governmental interest." *See* 42 U.S.C. § 2000cc(a)(1)(B). Ample less restrictive alternatives to achieving the City's specific goals are available to the City in this Donation Box Law through its robust maintenance and permitting requirements. Indeed, these other provisions of the Law already fully address the City's specific interest in safety and aesthetics by prohibiting graffiti, trash, debris, and maintenance problems in and around the boxes, and they provide accountability through the permitting, the identification of persons responsible for the boxes, and steep civil and criminal penalties for any violation. The City never gave these less restrictive maintenance and permitting restrictions a chance as it enacted its prohibitions on donation boxes based on zoning and location restrictions at the same time it passed these other provisions. APP115, 127 (Ricciuti Tr. 69:22-70:3, 117:13-16) ("we haven't been able to measure maintenance restrictions").

Moreover, other provisions of the Mansfield Code already address the City's specific, identified harms, i.e., graffiti, dumping, and overflow of trash and debris. *See* Mansfield Code of Ordinances, §§ 50.02 (prohibits disposal of trash or garbage in or around any "alley, sidewalk, street, or other public or private premises"), 92.04 (declaring as a nuisance the act of allowing to exist any filth or refuse on any property, allowing an overflowing receptacle on any property,

failing to sweep up trash or debris on any property, allowing to exist any condition attracting insects or rodents, all punishable by abatement and civil fines), 130.51-53 (prohibiting placement of graffiti and punishing property owners for failure to remove graffiti). Indeed, the City concedes the City's nuisance laws are utilized for all similar offenses involving trash cans on private property. *See* APP142 (Wheaton-Rodriguez 54:21-55:2) (admitting trash cans outside gas stations are unregulated and punishable as a nuisance). There are also state offenses and punishments for the City's stated harms. For example, Texas Penal Code § 28.08 classifies graffiti as a crime and punishes offenses as a misdemeanor or felony, depending on the amount of the pecuniary loss suffered. Tex. Penal Code § 28.08 (2023). Section 365.012 of the Texas Health and Safety Code prohibits illegal dumping of litter or solid waste on any property and punishes the offense as a misdemeanor or a felony with fines and jail time. Tex. Health & Safety Code § 365.012 (2023).

Furthermore, the City could increase the minimum number of weekly pick-ups, require insurance or indemnification of permittees, or implement less restrictive technology requirements, such as cameras. *See Planet Aid*, 782 F.3d at 331 (increasing weekly pick-ups is a less restrictive alternative); *Blitch v. City of Slidell*, 260 F. Supp. 3d 656, 671 (E.D. La. 2017) (courts should consider less restrictive technological alternatives in strict scrutiny analysis). In addition, "RLUIPA requires . . . scrutiniz[ing] the asserted harm of granting specific exemptions to particular religious claimants and to look to the marginal interest in enforcing the challenged government action in that particular context." *Lozano v. Collier*, 98 F.4th 614, 622 (5th Cir. 2024) (requiring prison to prove it could not make exception to bathing schedule for Muslim inmates).

Finally, RLUIPA's prohibition on substantially burdening religious exercise applies to the Donation Box Law because the Law's burdens affect interstate commerce. *See* 42 U.S.C. § 2000cc(a)(2). For example, the National Children's Cancer Society is a Missouri-based nonprofit

organization that solicits donations through donation boxes in Texas  and seeks to solicit in Mansfield for its nationwide mission to help children suffering from cancer. APP048-50 ¶¶ 1-8. The location restrictions on donation boxes affect interstate commerce by reducing the solicitation of donations by all charities and faith-based organizations, including this Missouri charity. *See, e.g.*, *New Beginnings Ministries v. George*, No. 2:15-cv-2781, 2018 U.S. Dist. LEXIS 245391, at *26–27 (S.D. Ohio Sep. 28, 2018) (collecting cases finding effect on interstate commerce from seeking donations); *see also* APP050-51 ¶¶ 12-14. The reduction in donation boxes also affects interstate commerce because more recycling of clothes and household items through donation boxes results in less cost for trash pickup and landfill space, fewer unnecessary purchases of new clothes and household items by recipients of those items, and more inventory for stores selling used clothing and household items. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 549 (2012) (aggregation of intrastate activities substantially affect interstate commerce).

**B.    The Location Restrictions Unreasonably Limit AOH's Religious Structures Under RLUIPA.**

RLUIPA provides, "No government shall impose or implement a land use regulation that . . . unreasonably limits religious . . . structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3)(B).

AOH's donation boxes qualify as "structures." RLUIPA does not define "structures" so the ordinary dictionary definition applies: "Any construction, production, or piece of work artificially built up or composed of parts purposefully joined together." *Structure*, Black's Law Dictionary (12th ed. 2024); *see also Hotze v. Hollins*, 2020 U.S. Dist. LEXIS 204775, *8–9 (S.D. Tex. Nov. 2, 2020) (applying Black's definition to find tent is a structure); *Weber v. Bd. of Dirs. of the Laurel Oaks Ass'n*, 2017 Pa. Commw. Unpub. LEXIS 857, *26 (Pa. Commw. Ct. Nov. 13, 2017) (same, for mailbox). AOH's donation boxes are structures because they are artificially built and produced pieces of construction work, composed of wood and metal parts purposefully joined together. *See*

22

ECF 20 at 18 (Mansfield acknowledges donation boxes are "communicative structures.")

AOH's donation boxes are religious structures for multiple reasons: "the structure in and of itself is the Christian message . . . . It's Matthew 28, which is go and make disciples of all nations"; "each one of these religious structures practices the Christian virtue of charity" as "an active way for people to practice the Christian virtue of charity"; and, by "practicing the Christian virtue of charity" at the donation boxes, there is "worship" of God there. APP089 (Robertson Tr. 30:6–32:3). Charitable giving is an act of worship. And the donation boxes invite and allow people to actively engage in the religious practice of worship. APP089 (Robertson Tr. 31:25-32:3); APP179-83 (AOH Am. Answer to ROGs 10, 13).

The challenged location restrictions are unreasonable land-use regulations. They ban donation boxes from most of Mansfield, including churches, schools, placement near Mansfield's three major roads or public parks and recreational facilities (which are undefined), and they leave no visible placement for donation boxes on any lot, and likely no placement at all on small lots, medium lots, or large lots surrounded by streets. *See* § I.B (explaining location restrictions). The severity of these restrictions is unreasonable because they are not needed to satisfy any of the City's asserted interests. They are not necessary.

The unreasonable severity is also apparent from the City's map of areas it admits donation boxes are banned by the zoning restrictions (colored grey) and setback restrictions (colored blue and cream). *See supra* Statement of Facts § A (APP082 CITY 646). The City colored green the areas purportedly available for donation boxes, but admitted the green areas do not account for lot-specific restrictions, including the rear/side lot restriction and the bans on placing donation boxes in any required parking space, any unpaved area, any fire lane, or within 25 feet of the intersection of any drive aisles. APP148-49 (Wheaton-Rodriguez Tr. 78:8–24, 81:11–83:4).

23

The map also shows as green areas that are obviously unavailable to a donation box, such as the buildings already on the land and areas that are undeveloped or not accessible by any road. *See* APP244 (Ex. M (satellite image of Mansfield)). Accounting for all these limitations, the location restrictions ban donation boxes from far more than 75% of the City's jurisdiction, which a court has held is sufficient to find a limitation unreasonable. *See Al Falah Ctr. v. Twp. of Bridgewater*, Civil Action No. 11-2397 (MAS) (LHG), 2013 U.S. Dist. LEXIS 190076, at *42–45 (D.N.J. Sep. 30, 2013) (denying government's motion for summary judgment because ordinance "prohibit[ed] houses of worship from over 75% of the previously available roadway frontage").

### C.    The Location Restrictions Violate the Equal Terms Provision of RLUIPA.

The Equal Terms Clause of RLUIPA prohibits a government's land use regulation from treating religious organizations "on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). AOH is a Christian religious institution. *See supra* Statement of Facts; Argument § I.A; *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 291 (5th Cir. 2012).

Here, the Donation Box Law treats AOH's religious structures "on less than equal terms with a nonreligious" structure: a trash receptacle or recycling receptacle. To determine whether treatment is equal, the Fifth Circuit measures the treatment "by the ordinance itself and the criteria by which it treats institutions differently." *Elijah Group, Inc. v. City of Leon Valley, Tex.*, 643 F.3d 419, 424 (5th Cir. 2011). The Donation Box Law singles out religious structures seeking charitable donations from comparator receptacles which seek the same or similar items but for the different purpose of trash disposal or recycling. Thus, the dispositive issue is whether the Donation Box Law treats AOH's religious structures "on less than equal terms with a nonreligious" structure. 42 U.S.C. § 2000cc(b)(1). Indeed, it does.

Banning donation boxes from certain zones, near major roads, and at or near churches,

schools, parks, or recreational facilities deprives Mansfield donors (and would-be donors) from exercising their faith through this traditional, convenient means of supporting a chosen cause. And for the donors who wish to donate anonymously, which is a religious act combining both charity and humility, near-complete city-wide bans on donation boxes such as this discourage those donations altogether. During his Sermon on the Mount, Jesus talked about the religious practice of giving, specifically anonymous giving: "Give your contributions privately. Your Father sees what you do in private. He will reward you." Matthew 6:4-6.

The comparator in this case is the unfettered placement of trash and recycling receptacles in all of the City's zones, including at churches and faith-based schools, and without the onerous setback and on-lot location restrictions. Indeed, the City's unequal treatment of outdoor receptacles encourages donors to simply throw their items away in the garbage bins located on nearly every lot and in every zone and without unreasonable zoning, setback, or location-on-lot limitations. APP137-38 (Wheaton-Rodriguez Tr. 34:17-36:3, 36:18-25, 39:22-24). Yet the City concedes its interests in regulating all of these outdoor receptacles is the same—preventing overflow of trash and debris. APPP110 (Ricciuti Tr. 48:24-49:11) ("they're not different"). Despite that trash and recycling receptacles carry the same hypothetical risk of overflow, the Donation Box Law imposes numerous, burdensome requirements on AOH's donation boxes but allows garbage and recycling bins without these restrictions across the City. Donation boxes, and only donation boxes, must comply with these overly burdensome zoning, setback, and location requirements in Mansfield.

In *Elijah Group, Inc. v. City of Leon Valley*, the City, through its legislative amendments, "effectively excluded churches entirely from B-2 zones and relegated them to B-3 zones". 643 F.3d 419, 421 (5th Cir. 2011). By contrast, the City allowed nonreligous institutions to obtain permits in the B-2 zones. *Id.* A church sought to buy a property in the B-2 zone, and petitioned the

City to rezone the property from B-2 to B-3 to allow the church. The City denied the church's request, but the church bought the property anyway and began holding religious services. The City filed for a temporary restraining order as such activity was violative of the ordinance, and it agreed to stay any citation until the lawsuit was resolved.

Analyzing the ordinance in *Elijah*, the Fifth Circuit noted that "the text of the ordinance does not mention religion." *Id.* at 424. The real problem, the Fifth Circuit found, was in the permitted use table, which allowed religious structures in some zones but not in others. *Id.* On its face, the court could not reconcile the ordinance's different treatment of these religious and non-religious institutions by zone. *Id. Elijah* compels the same result here. Like *Elijah*, while the Donation Box Law does not mention religion, its zoning and location bans on religious structures and religious worship through donation boxes cannot be justified compared to its preferential treatment of non-religious trash and recycling receptacles with the same risks of overflow. *See id.*

By imposing additional requirements on donation boxes, the Donation Box Law treats religious expression and structures on less than equal terms with trash bins. Accordingly, the Law on its face violates the Equal Terms Clause of RLUIPA, 42 U.S.C. § 2000cc(b)(l). The City's Code unquestionably favors trash receptacles over donation receptacles despite that each container brings the same risks and implicates the same interests asserted by the City. Laws such as this that force religious containers outside the public eye while allowing ubiquitous garbage and non-religious containers City-wide, motivates citizens to discard the goods into the trash, rendering them useless and clogging landfills. Indeed, during depositions, the City conceded it does not even regulate trash cans outside gas stations or grocery stores, APP142 (Wheaton-Rodriguez Tr. 54:21-55:10), and if any such receptacles overflowed with trash and debris, the City could enforce it as a nuisance, which relieves those trash receptacles of all regulatory burdens and simply requires

property managers to keep these receptacles clean—a much lower burden for nonreligious trash cans. "At bottom, the ordinance treats [religious structures] on terms that are less than equal to the terms on which it treats similarly situated nonreligious institutions." *Elijah*, 643 F.3d at 424; *see also Opulent Life Church*, 697 F.3d at 293 (finding RLUIPA violation where "provisions imposed onerous burdens on [religious assembly] not imposed on any other type of assembly").

The Donation Box Law also violates RLUIPA as applied to Plaintiffs in this case. "When alleging discriminatory application … "a religious plaintiff must show that 'a similarly situated nonreligious comparator received differential treatment under the challenged regulation.'" *Elijah*, 643 F.3d at 423. Such is the case here. The City conceded that donation boxes and trash and recycling receptacles are similarly situated yet treated differently under the Code. *See* APP110 (Ricciuti Tr. 48:24-49:11). They share the same City interests and the same risks of graffiti and overflow of trash and debris that the City seeks to contain. *Id.* But when asked why these similarly situated receptacles—AOH's religious donation boxes and non-religious trash or recycling receptacles—are treated differently, the City could not provide an answer. *Id.* at 49:12-12; APP137-38 (Wheaton-Rodriguez Tr. 37:24-38:2) (I do not have a response to that. I don't – I don't know.").

Mansfield has repeatedly threatened enforcement against AOH's three donation boxes, including impoundment, civil penalties, and criminal charges if AOH's religious structures and expression are not removed. APP021-26. The City has never stated that it will not enforce the Law against AOH's boxes. Indeed, the placement of AOH's three donation boxes does not comply with Mansfield's current, overly burdensome location requirements, and Mansfield has already given one of AOH's placements to another charity despite its agreement to stay the placements pending this proceeding. *See* ECF 15 at 2. Piling on, Mansfield has threatened to "hammer" AOH for its religious structures in Mansfield and to stack the municipal court if the City cannot "move these

damn things." APP045 (CITY 0334). Mansfield's discriminatory treatment of AOH's religious structures and assembly is personal.

Accordingly, the Donation Box violates the Equal Terms Clause of RLUIPA on its face and as applied to Plaintiffs.

### D. The Law's Unequal Treatment of Donation Boxes Violates AOH's Right to Free Exercise of Religion.

The First Amendment guarantees the right of AOH and its members, employees, and volunteers to freely exercise their religion. "Respect for religious expressions is indispensable to life in a free and diverse Republic"—whether those expressions manifest in a sanctuary, on a field, or through a donation box, through the written or spoken word or an act of charity. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 (2022).

Usually in a Free Exercise case, if the law is neutral and generally applicable, the government prevails. See *Employment Div. v. Smith*, 494 U.S. 872, 886 (1990). However, if the plaintiff can demonstrate that there is animus against religion in the enactment of the ordinance, *see Church of Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520, 533 (1993), animus against religion in the enforcement process, *see Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*, 584 U.S. 617, 631 (2018), or that the law is not on its face neutral and generally applicable or not applied in a neutral and generally applicable manner, strict scrutiny applies. *Tandon*, 593 U.S. at 64.

*First*, there is animus here. Mansfield's bans and burdens on religious expression and practice by and through donation boxes demonstrates animus against religion in the enactment of the ordinances. Likewise, the City's decision to take adverse state action against AOH because of such expression constitutes animus against religion in the enforcement process. The City's own documents and correspondence demonstrate a shocking animus toward AOH for defending its right in this case to express its religious beliefs and to practice the Christian virtue of charity in the

28

City. *See* APP045 (CITY 0334). Indeed, the City threatens to "hammer" AOH and to stack the municipal court in its favor to "remove these damn things". *Id.* The City leaves no question that AOH is a disfavored speaker, whom the City seeks to punish for standing up and defending its rights. The City's animus is personal.

The First Amendment requires "that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths." *Masterpiece Cakeshop*, 584 U.S. at 631. But here, rather than protecting AOH, the City is targeting AOH for enforcement. This is further demonstrated by the City's disparate enforcement of other donation boxes that similarly do not comply with the City's overly burdensome regulation. The City admittedly is not prosecuting all violative boxes. APP123 (Ricciuti Tr. 99:15-20) (conceding City does not enforce against all violative bins, only some —"It depends on which bins you're talking about.").

*Second*, even if the court finds no animus, the law is not neutral and generally applicable on its face. While the Donation Box Law does purport to ban religious and non-religious donation boxes, the City Code's allowance of trash cans where donation boxes are prohibited deems this not neutral or generally applicable. *See Tandon*, 593 U.S. at 64. "[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise." *Id.* at 62. To determine "whether two activities are comparable for purposes of the Free Exercise Clause," they "must be judged against the asserted government interest that justifies the regulation at issue." *Id.* The Supreme Court has explained that "[c]omparability is concerned with the risks various activities pose, not the reasons why people gather." *Id.*

This comparability test is easily met. The City's asserted interests in regulating donation

boxes and trash receptacles are the same. APP110 (Ricciuti Tr. 48:24-49:11). Both laws state a broad general welfare interest that boils down to aesthetics. *See id.* Critically, the City concedes the risks posed by donation boxes and trash receptacles are the same – graffiti and overflow of trash and debris. *Id.* Yet, the City treats trash receptacles more favorably than religious exercise through donation boxes. APP128 (Ricciuti Tr. 120:8-121:11).

Notwithstanding these same interests and risks and the differential treatment, trash continues to appear outside permissible trash receptacles and prohibited donation boxes alike. *See Id.* at 118:9-25; APP206-07 (CITY 0643-44) (complaint of trash outside unpermitted donation box); APP219 (photo of trash outside dumpster). Thus, the broad, formulated interests and unequal regulations are equally ineffective in achieving their stated purpose. The City admits it has not been able to test its maintenance restrictions on permitted donation boxes because no bin has been able to pass these severe restrictions to get permitted—until recently. Since it first passed its Donation Box Law in 2022, the City has granted one, and only one, donation box permit—and it was for a donation box on the site of one of AOH's bins, rendering AOH's bin noncompliant due to the one-bin-per-lot limitation. APP007 (§ 3(c)(1)).

*Third*, even if the court finds it is neutral and generally applicable on its face, it is not neutral and generally applicable in its application. The City's approval of the other donation box at the same location as AOH's box, despite an agreed-upon stay for AOH's donation box, demonstrates a lack of neutrality in the City's application of the law. *Tandon*, 593 U.S. at 64. In addition, threats to "hammer" AOH further support a lack of neutrality in the Law's application.

Because the City's application of the Donation Box Law is not neutral toward AOH or its sincerely held religious beliefs, demonstrating clear animus toward the Christian charity, and the Law is not generally applicable to all outdoor receptacles, strict scrutiny applies. *Kennedy*, 597

U.S. at 525 (quoting *Smith*, 494 U.S. at 879-81).

For the reasons stated above, the Donation Box Law fails strict scrutiny.

## II.    The Donation Box Law Violates AOH's Right to Speak.

Nearly five decades ago, the Supreme Court recognized that "clearly . . . charitable appeals . . . involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment" *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980). Eight decades ago, in *Thomas* v. *Collins*, the Court held that the requirement to register and obtain a license in advance of communicating a charitable or religious appeal for support and collecting donations must be done "in such a manner as not to intrude upon the rights of free speech and free assembly." 323 U.S. 516, 539-41 (1945); *NAACP, W. Region v. Richmond*, 743 F.2d 1346, 1355 (9th Cir. 1984) (that "one must inform the government of his desire to speak and must fill out appropriate forms and comply with applicable regulations discourages citizens from speaking").

Following these precedents, both the Fifth and Sixth Circuits have ruled that donation boxes are charitable appeals and thus, "[a] charitable donation bin can—and does—'speak.'" *Planet Aid*, 782 F.3d at 325; *see also Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202 (5th Cir. 2011). As the Fifth Circuit held in *Abbott*, a donation box communicates a charitable message and advocates for a cause, just like a silent speaker holding a sign on the side of the road. 647 F.3d at 213. The Sixth Circuit agreed in *Planet Aid*, explaining the fact that charitable solicitation takes the form of a donation box does not reduce the level of its protection. 782 F.3d at 326. This case is no different, as explained in Section II.A below.

While the Fifth Circuit recently issued a ruling upholding the City of Arlington's donation box law in *National Federation of the Blind of Texas, Inc. v. City of Arlington*, 109 F.4th 728 (5th

31

Cir. 2024), that holding is distinguishable from this case for at least three reasons: (1) this case involves the exercise of religion and animus toward a religious speaker; (2) Mansfield concedes that clean donation boxes are not visual blight and thus *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984) is inapplicable; and evidence not presented to the Fifth Circuit demonstrates donation boxes are a unique, historic, and important form of communication under *City of Ladue v. Gilleo*, 512 U.S. 43 (1994). *See infra* § II.B.

### A.     Strict Scrutiny Applies to Restrictions on Donative Speech.

This Court and the Fifth Circuit, in *Arlington*, recently found that laws restricting donative speech are content-neutral and, therefore, strict scrutiny did not apply. *See* 109 F.4th 728, 735 (5th Cir. 2024); Doc.23 at 4-7. But that is incorrect for three reasons: (1) the Donation Box Law restricts donative speech, and only donative speech, which is inherently charitable; (2) it treats receptacles with a donative message less favorably than receptacles soliciting trash or recycling, and (3) Mansfield has demonstrated animus against AOH as a speaker.

Laws restricting religious or charitable appeals for donations have historically been subject to strict First Amendment scrutiny. *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 618 (2021) (First Amendment protects charitable solicitations); *Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 800-01 (1988); *Sec'y of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 969 (1984); *Schaumburg*, 444 U.S. at 636-38; *Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940); *Planet Aid*, 782 F.3d at 330 ("Schaumburg plainly applied strict scrutiny. . . . So did *Munson* and *Riley*). While the nomenclature for this standard has varied over the decades, the standard is the same, upholding speech limitations on solicitations of donations "only if they are narrowly tailored to serve a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 442 (2015) (citing *Riley*, 487 U.S. at 798); *compare United States v. Playboy Entm't Grp.*, 529 U.S. 803, 813 (2000) (to satisfy strict scrutiny, the government must show the regulation is "narrowly tailored to promote a compelling

Government interest").

*First*, strict scrutiny applies here because the Donation Box Law targets and prohibits a type of charitable solicitation and is thus content based. This is so even if the law does not discriminate on the basis of any particular religious or charitable viewpoint or speaker. *Reed v. Town of Gilbert*, 576 U.S. 155, 168-70 (2015). For example, in *Cantwell*, the Court explained that a regulation neutral as to religion but which unreasonably obstructed the collection of donations would be constitutionally objectionable. 310 U.S. at 305 (invalidating a licensing system for religious and charitable solicitation). The Supreme Court's most recent pronouncement on the modern content-neutrality doctrine affirms that laws "discriminat[ing] based on topic" or "subject matter"—such as laws targeting donative speech—are subject to strict scrutiny even if they do not discriminate based on viewpoint. *City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 596 U.S. 61, 72 (2022) (citing *Heffron*, 452 U.S. at 649). Laws that target only donative speech for restriction and prohibition are inherently content-based.

*Second*, the City's less favorable treatment of donation boxes compared to trash reflects a content preference. In *Planet Aid*, the Sixth Circuit relied on *Schaumburg*, *Munson*, *Riley*, and the Fifth Circuit's earlier decision in *Abbott* to strike down a nearly identical ban on donation boxes in St. Johns, Michigan. 782 F.3d at 324-25. The *Planet Aid* Court explained that donation boxes speak in many ways. For example, "a passer-by who sees a donation bin may be motivated . . . to research the charity" and "gain new information about the social problem the charity seeks to remedy." *Id.* at 325. The donation box may motivate citizens to donate, or inspire them "to learn more about each charity's mission in deciding which charity is consistent with his values …." *Id.*

The Sixth Circuit held the St. Johns ordinance was content-based because it regulated by topic or subject-matter. *Id.* at 328. Indeed, it did "not ban or regulate all unattended, outdoor

33

receptacles." *Id.* To the contrary, the ordinance banned "only those unattended, outdoor receptacles with an expressive message on a particular topic—charitable solicitation and giving." *Id.* It clearly targeted donative speech, and only donative speech. St. Johns thus treated trash and recycling bins more favorably than boxes soliciting donations for charitable, religious, environmental, or other causes. The Sixth Circuit applied strict scrutiny, invalidating the donation box law. The same is true here. Because Mansfield treats trash and recycling bins more favorably than boxes soliciting donations, strict scrutiny is due. *Id.*

*Third*, when the City exhibits animus toward a particular speaker, strict scrutiny is due. *Reed*, 576 U.S. at 170. Discriminatory application of the Law to "hammer" AOH "could not evade strict scrutiny simply because it could be characterized as speaker based." The danger of censorship grows when the government demonstrates animus toward a particular speaker, or when content-based distinctions are "by no means clear," giving more leeway for government officials to punish disfavored speakers and ideas. *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 423-24, n.19 (1993).

As explained above, the Donation Box Law fails strict scrutiny. The government's interest in aesthetics may be substantial, but it is not compelling. Indeed, it cannot be compelling if it is only enforced some of the time. *See* APP123 (Ricciuti Tr. 99:15-20) (City only enforces against some donation boxes). Neither is a hypothetical interest in safety compelling. The Law is likewise insufficiently tailored. The prohibition on clean, well-maintained donation boxes in 11 of 20 zones, including at churches and faith-based schools, without a single traffic or safety incident in any one zone, is not narrowly tailored to the government's asserted interest in safety, regulating maintenance, and promoting consistent land use. *McCullen v. Coakley*, 573 U.S. 464, 495 (2014). Moreover, Mansfield's prohibitions on clean donation boxes admittedly do not further the City's

34

asserted interests in aesthetics of safety. APP110 (Ricciuti Tr. 49:20-25). As Ms. Ricciuti testified for the City, there are no aesthetic or public safety issues with a clean, well-maintained bin. *Id.*

Finally, there are less-restrictive alternatives available to the City to control maintenance and prevent blight. For example, the Donation Box Law's numerous permitting, identification, maintenance, upkeep, clustering, size, construction, and placement restrictions already target the City's specific interests. And the City has never tested those restrictions without the overly burdensome zoning ban, setbacks, and on-lot restrictions. Those less restrictive alternatives already squarely address the City's stated harms. In addition, numerous city and state laws already prohibit these harms. Furthermore, the City conceded that trash cans outside gas stations are unregulated and subject to less restrictive nuisance laws. APP142 (Wheaton-Rodriguez Tr. 54:21-55:10). Under strict scrutiny, the City is obligated to try less restrictive technological and legislative alternatives, such as on-site cameras, more frequent pick-ups, and monitoring requirements. The City provides no evidence of ever trying these less restrictive alternatives. The Law is not narrowly tailored.

The government cannot sacrifice speech for efficiency. *Riley*, 487 U.S. at 795. The zoning and location restrictions are gratuitous, overly broad, and unconstitutionally stifle fully protected speech. *See Arlington*, 109 F.4th at 741-43 (Graves, J., dissenting) (concluding the zoning ban is not narrowly tailored and "violates the First Amendment.").

### B. The Donation Box Law Does Not Pass Intermediate Scrutiny.

Even if the City could evade strict scrutiny (and it should not), the current incarnation of the Donation Box Law continues to fail intermediate scrutiny, as this Court held before. Order at 10. Although AOH's legal action has been successful in causing the City to amend its Law to remove the challenged double permitting requirements, consent requirement, signage restrictions,

and some of the challenged setback restrictions,[3] other restrictions in the Law remain the same or worse. The zoning restrictions remain the same, which the Court already concluded "are overly burdensome and fail intermediate scrutiny." Order at 10; APP007-08 (OR-2346-24 § 3). The City reduced the setback restriction related to Mansfield's four major roads from 500 feet to 300 feet, but that is not enough to change the Court's finding that "the City has not met its burden to establish how such restrictions are narrowly tailored to achieving its stated interest." ECF 23 at 10; APP007 (OR-2396-24 § 3(c)(1)). The 2024 amendments added a rear/side lot restriction, which only allows donation boxes in the rear or side of a building and not in between any building and a street. APP007 (OR-2346-24 § 3(a)(4),(8)). And the Law continues to prohibit placement in any required parking space, any unpaved area, any fire lane, or within 25 feet of the intersection of any drive aisles. APP007-08 (OR-2346-24 § 3(c)). These location-on-lot restrictions also fail intermediate scrutiny because they burdens substantially more speech than necessary.

To be narrowly tailored under intermediate scrutiny, a regulation "may not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Arlington*, 109 F.4th at 737 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)).

The City might argue a more-lenient standard applies to donation boxes because of the Fifth Circuit's decision about the City of Arlington's donation box law. It is true a panel majority of the Fifth Circuit upheld the City of Arlington's zoning and setback restrictions on donation boxes by reasoning that, "because Arlington asserts even well-maintained boxes are unsightly, the setback requirement, like the zoning provision, 'curtails no more speech than is necessary to

---

[3] The City maintains its 250-foot setback from "any parks and recreational facilities," but AOH has successfully caused the City to remove the 250-foot setbacks from "any . . . hospital, daycare center, or public or private school or college," and to reduce the 250-foot setback from "residences" to 75 feet from land zoned for single-family use. *Compare* OR-2396-24 *with* OR-2288-23 § 3.

accomplish its purpose.'" *Id.* at 739 (citing *Taxpayers for Vincent*, 466 U.S. at 810). The Arlington decision is wrong but, in any event, this case is different. *Taxpayers for Vincent* does not apply.

The City of Mansfield does not consider a well-maintained donation box to be "unsightly." APP109 (Ricciuti Tr. 45:3–6). When asked "[i]s it that the City does not like the look of donation bins?", the City responded, "No. We don't like the accumulation of trash and debris or unmaintained areas." APP111 (Ricciuti Tr. 50:1–4). The City reiterated that a clean, well-maintained donation box is "not an aesthetic harm," does not present any "aesthetic issues," is not "itself blight," and is not "unsightly." APP109-12 (Ricciuti Tr. 45:3–6, 49:23–25, 54:15–17). This is consistent with Texas law, which generally prohibits land use regulation based solely on aesthetics. *See, e.g.*, *Lombardo v. Dallas*, 73 S.W.2d 475, 479 (Tex. 1934); *Spann v. City of Dall.*, 235 S.W. 513, 517 (Tex. 1921); Kenneth Regan, You Can't Build That Here: The Constitutionality of Aesthetic Zoning and Architectural Review, 58 Fordham L. Rev. 1013, 1014 (1990) (listing Texas as one of twelve states that still prohibit aesthetic zoning).

Another reason *Taxpayers for Vincent* does not apply is that the type of expression at issue here—donation boxes—has long been an important and distinct medium of expression. The Fifth Circuit in *Arlington* recognized this exception to *Taxpayers for Vincent*, but opined, without the benefit of evidence in the record, that "donation boxes 'have [not] long been an important and distinct medium of expression.'" 109 F.4th at 738 (quoting and altering in brackets *City of Ladue*, 512 U.S. at 55). In this case, AOH has significant evidence that donation boxes have been a distinctly important medium of expression for thousands of years, including for more than 130 years at commercial locations in the United States. *See supra* Statement of Facts § D. For this reason too, *Taxpayers for Vincent* does not apply, and the City must satisfy its typical burden under intermediate scrutiny: proving the challenged restrictions do not burden substantially more speech

37

than necessary further its interests.

The Donation Box Law's challenged location restrictions—the zoning restrictions, setback restrictions, and location-on-lot restrictions—which outright prohibit clean and well-maintained boxes in most of Mansfield—do not further the City's stated interests. The location restrictions are not necessary to address the City's aesthetic and hypothetical safety interest because the Law's permitting and maintenance requirements already do so. *See* APP003-04 (§ 116.03(A)(1)-(5), (B)). As the City testified, there are no "public safety issue[s] . . . presented by a clean, well maintained donation box" and no "aesthetic issues." APP110 (Ricciuti Tr. 49:17–25). The location restrictions are not necessary to address the "promotion of consistent land uses and development" because consistency is not reached where the Code treats trash bins more favorably than AOH's religious donation boxes, and the Law's consent requirement already ensures that a donation box is allowed only if the property owner, manager, or occupant wants it there. APP001 (§ 116.02(C)). The location restrictions are also not necessary to address keeping properties clean and ensuring accountability by identifying the donation box owner and operator because the Law's cleanliness, permitting, signage and other requirements already address these issues. APP001 (§ 116.02(D), (E)).

The presence of these less-restrictive alternatives already available to achieve the City's interests means that the Donation Box Law's location restrictions are superfluous and necessarily burden substantially more speech than is necessary. *See, e.g.*, *McCullen*, 573 U.S. at 493 (striking down buffer zone intended to stop harassment of visitors to abortion clinics because there were unchallenged portions of the law the state could enforce instead, other types of legislation the state could enact, and "[f]or a problem shown to arise only once a week in one city . . . creating 35-foot buffer zones at every clinic across the Commonwealth is hardly a narrowly tailored solution");

*Hays County Guardian v. Supple*, 969 F.2d 111, 119 (5th Cir. 1992) (striking down restriction on distributing newspapers because other regulations could address littering and the other ills the government sought to address).

The City has *never* attempted to enforce the other aspects of the Donation Box Law without also banning donation boxes by location. *See* APP116 (Ricciuti Tr. 70:8–71:1). There continues to be no evidence that banning donation boxes from particular locations is necessary to further the government's interests. There is no evidence to justify a ban by zone; or a ban within 300 feet of Mansfield's major roadways, or within 250 feet of public parks and recreational facilities, or within 75 feet of land zoned for single-family use; or a ban between any building and street, or within 25 feet of the intersection of a drive aisle. *See* APP056 (OR-2396-24 § 1; OR-2346-24 § 3). There is no evidence to justify a ban in any one zone much less 11 zones, including churches and schools. Mansfield has no evidence of any safety accident or injury related to donation boxes, much less in any zone or location now off limits under the other location restrictions. This utter lack of evidence is fatal because "*the government must show* that its restriction is narrowly tailored." Order at 10–11 (citation and internal quotation marks omitted); *Watkins v. City of Arlington*, Civil Action No. 4:14-cv-381-O, 2014 U.S. Dist. LEXIS 95082, at *30 (N.D. Tex. July 14, 2014).

By its own map, Mansfield concedes that the location restrictions ban donation boxes from *most* of Mansfield. APP082 (CITY 646). The map shows the Law sweeps so broadly it allows donation boxes only in a minute fraction of the City. Even in the few areas that Mansfield's map shows are available to donation boxes, the location-on-lot restrictions relegate any donation box to where it is practically invisible: "the rear yard or side yards only," but only "on a paved surface," and not "between any building and a street," not in any required parking spot, and not within 25 feet of the intersection of any two parking lot drive aisles or the intersection of any drive aisle and

a fire lane. APP007 (OR-2346-24 § 3). This leaves no visible placement for donation boxes on any lot, and likely no placement at all on small lots, medium lots, or large lots surrounded by streets.

The City might argue that there are enough spots around Mansfield in which a donation box could be placed, but carving out a few small areas in low-traffic, low-visibility areas "misses the point." *Watkins*, 2014 U.S. Dist. LEXIS 95082, at *37. The Donation Box Law "imposes serious burdens on Plaintiffs' speech and compromises their ability to interact," as this Court recognized in *Watkins* when it enjoined a law banning interactions with occupants of vehicles around street intersections with significant traffic. *Id.* Similarly here, the City has banned AOH from speaking, associating, and proselytizing its Christian faith through donation boxes in locations that can reach significant vehicular traffic, including at churches and schools in single-family residential areas.

Mansfield has taken a sledgehammer to protected charitable solicitation and effectively outlawed donation boxes in most of Mansfield. This is improper. An ordinance must "'focus[] on the source of the evils the city seeks to eliminate . . . and eliminate[] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils.'" *Id.* at *30–31 (quoting *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 947 (9th Cir. 2011); *Ward*, 491 U.S. at 799 n.7).

## III. The Donation Box Law Violates AOH's Right to Associate

"'[I]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others.'" *Bonta*, 594 U.S. at 606 (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)). Expressive associations exist 'for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.'" *Mote v. Walthall*, 902 F.3d 500, 506 (5th Cir. 2018) (quoting *Roberts*, 468 U.S. at 618). The First Amendment thus protects a "right to associate,"

and the City's Donation Box Law interferes with that right. *Id.*

In *Americans for Prosperity Foundation v. Bonta,* the Supreme Court invalidated a practice by the California Attorney General of compelling the disclosure of major donors to charities and religious organizations as a condition precedent to their registration to solicit charitable contributions in the state. 594 U.S. at 616-18 (First Amendment protects right to solicit charitable contributions). The Court recognized a right of association between nonprofit organizations and their donors under the First Amendment, and invalidated the compelled speech disclosure. *Id.*

Here, the challenged regulation expressly prohibiting association between nonprofits and their donors is no different. Laws burdening and banning association differ only by degree. *Id.* at 611. "Laws directly burdening the right to associate anonymously … should be subject to the same scrutiny as laws directly burdening other First Amendment rights." *Id.* at 620 (invalidating disclosure requirement as facially overbroad because it stifled association of all charities seeking to solicit donations in California, even if some donors do not mind the disclosure).

Mansfield's bans and burdens on religious and charitable donative speech prevent AOH and other charities from associating with previous and prospective donors who wish to receive the charity's message and to speak to the charity by supporting its cause through donation boxes, including the right to speak and associate anonymously. *Bonta*, 594 U.S. at 616-17; APP049-50 ¶ 7 (National Children's Cancer Society declaring "[o]ne of the greatest speech functions of our donation boxes is they facilitate anonymous donations as many donors prefer to give anonymously."). The Donation Box Law also interferes with AOH's right to associate for the purpose of speaking with property owners and lessees, including and especially churches and faith-based schools, who wish to support AOH's ministry and inspire charity by placing a donation box on their own property and broadcasting to the public their support of this ministry. APP179-80

41

(AOH Am. Answer to ROG 10). It suppresses fully protected speech and association.

In addition, the Donation Box Law infringes AOH's right to associate for religious exercise with citizens who are open to answering the call of Jesus Christ and AOH's religiously motivated message to practice charity and care for the needy by donating in AOH's donation boxes. *Id.* The Donation Box Law also interferes with AOH's right to associate for religious exercise with property owners and lessees who wish to support AOH's Christian ministry and inspire charity by placing a donation box on their own property. APP183-84 (AOH Am. Answer to ROG 13). For all these reasons, this Law suppresses fully protected association in furtherance of religious exercise.

Laws burdening donative speech and association are subject to the most exacting scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest. *See Bonta*, 594 U.S. at 606; *Citizens United v. FEC*, 558 U.S. 310, 312 (2010). Infringements on the freedom of association "may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. at 623; *Chi. Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 302 n.11 (1986) (quoting *Roberts*, 468 U.S. at 623, and collecting cases); *Louisiana ex rel. Gremillion v. NAACP*, 366 U.S. 293, 297 (1961) ("regulatory measures . . . no matter how sophisticated, cannot be employed in purpose or in effect to stifle, penalize, or curb the exercise of First Amendment rights").

Mansfield's bans and burdens operate as a prior restraint of protected speech and association. They prohibit AOH's association with donors and supporters about its Christ-centered mission through donation boxes before that speech and association would occur. They prevent charitable and religious contributions to this charity for the poor through those now-banned associations. And they mute the voices of AOH and its donors and supporters by banning this

42

historic means of association, including anonymous association and charitable giving in most of Mansfield. APP082 .

These limits and chilling effect on the right to associate should be enjoined. "'First Amendment freedoms need breathing space to survive,' [thus] the public interest is better served by avoiding even the 'risk of a chilling effect on association.'" *X Corp. v. Media Matters for Am.*, 120 F.4th 190, 196 (5th Cir. 2024) (quoting Bonta, *594* U.S. at 618–19).

## IV.    The Color Restriction Constitutes an Impermissible Prior Restraint.

Compounding the zoning and location burdens, the Ordinance's vague and undefined color requirements grant too much discretion to the licensor and enable arbitrary and capricious application of the licensing scheme in the few areas in which religious and charitable donation boxes are allowed.

The government may not condition protected speech "upon the uncontrolled will of an official -- as by requiring a permit or license which may be granted or withheld in the discretion of such official." *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958). "[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992) (internal quotation marks omitted).

The Donation Box Law requires "neutral or earth-tone color[ing]" and prohibits "[h]igh-intensity colors," but those terms are not defined in the Donation Box Law or elsewhere in the Code. Mansfield was not able to answer in depositions how the City measures intensity or determines permissible coloring. *See* APP146-47 (Wheaton-Rodriguez Tr. 71:17-19, 74:13-75:3). Moreover, Mansfield has provided no evidence of guidelines, standards, or measurements for determining permissible intensity and what colors constitute "neutral" or "earth-tone." In fact, Mansfield admits it has discretion to make a determination of what is "high intensity" or "earth

tone" ad hoc, *id.*; therefore, Mansfield's permitting is subjective. "No system of prior restraint may place unbridled discretion in the hands of a government official or agency." *American Target Adver., Inc. v. Giani*, 199 F.3d 1241, 1246 (10th Cir. 2000) (internal quotation marks omitted).

As an example, Mansfield denied a permit for a green donation box as high-intensity, but it could not share how that decision was made. APP194-95 (CITY 0666-67); APP118 (Ricciuti Tr. 81:3-91:6). The City could not identify or provide any guidelines, measurements, or criteria for determining permissible intensity. APP146-47 (Wheaton-Rodriguez Tr. 71:15-75:3). The intensity of the banned green color looks similar to the intensity of AOH's signature blue color, which Ms. Ricciuti already testified would not be approved because it is not "Earth tone" or "neutral." APP121 (Ricciuti Tr. 91:1-6); *see also* APP194-95 (picture of green bin). By placing discretion in the hands of an official to grant or deny a license, such a statute creates a threat of censorship that by its very existence chills free speech." *Munson*, 467 U.S. at 964 n.12 (invalidating portion of Maryland Charitable Solicitations Act).

Accordingly, the color restriction must be stricken from the Law because it grants unbridled discretion to the administrators to grant or deny a license at will.

## V. Overbreadth

The Supreme Court recently affirmed there are two types of overbreadth challenges: (1) "no set of circumstances exists under which the law would be valid" or "the law lacks a plainly legitimate sweep," and (2) "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Bonta*, 594 U.S. at 615 (citations omitted). The breadth of Mansfield's Donation Box Law satisfies either type of facial overbreadth challenge, silencing the speech of AOH, National Children's Cancer Society, National Federation of the Blind, and all other charities and religious organizations not before this Court.

*First*, in every application of the Ordinance, it prohibits protected donative speech in at

44

least 11 zones, including at churches and schools in single-family residential areas where donation box placement is particularly appropriate. APP011-12 §§ 2, 3. In addition, it pushes all charities' donation boxes back more than 300 feet from major roads, 250 feet from parks and recreational facilities, 75 feet from residential areas, and then behind the building or on its side but not between a building and a street. *Id.* at § 3(b). These restrictions bar Mansfield's most highly visible areas like grocery stores, convenience stores, and gas stations—places where people gather, *see* APP082, yet the City concedes there is no aesthetic or safety issue with a clean, well-maintained box. APP110 (Ricciuti Tr. 49:20-25). Thus, there is no set of circumstances under which the zoning ban or the setback restrictions on fully protected, well-maintained charitable donation bins would ever be justified. The First Amendment has long preferred to punish unlawful speech than to prohibit protected speech before it is to occur. *See Near v. Minn.*, 283 U.S. 697, 708, (1931).

*Second*, the zoning restriction indisputably prohibits protected donation boxes in a substantial number of zones, which silences more than a substantial number of charities, i.e., all, seeking to solicit religious or charitable contributions via donation box in Mansfield. *See* Declarations of Mark Stolze and Norma Crosby, APP048-54; *Bonta,* 594 U.S. at 615. Likewise, in every application of the setback requirements, the City removes viable areas in Mansfield for donation boxes, which is substantially more locations than necessary, and for no good reason. Moreover, the rear/side lot restrictions hide the donation boxes from public view putting AOH's "candle" under a bucket. APP091 (Robertson. Tr. 37:8-9). The City admits that clean, well-maintained donation boxes present no issues and actually support its stated interests. *See* APP109 (Ricciuti Tr. 44:5-1, 44:25-45:6). AOH has established that in every single application, much less a substantial number of applications, the City sweeps well-maintained, fully protected donation boxes within its proscription and risks the suppression of ideas and censorship of speakers like

45

AOH who dare to defend their constitutional rights. *Munson*, 467 U.S. at 969.

The challenged restrictions are facially overbroad. *Bonta,* 594 U.S. at 615. The Court should find for AOH on the overbreadth claim, to protect the speech rights of AOH and all religious and charitable organizations not before the Court but whose protected speech is equally censored.

## VI.    Plaintiff Is Entitled to a Permanent Injunction.

AOH seeks a permanent injunction to enjoin Defendant from enforcing the unconstitutional and illegal Donation Box Law against the charity and all other charities similarly situated. "The elements of a permanent injunction are essentially the same as those for a preliminary injunction 'with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success.'" *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 858, 877 (N.D. Tex. 2008) (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

For a permanent injunction to issue, a Plaintiff must show (1) it has suffered an irreparable injury; (2) legal (monetary) remedies are inadequate; (3) the balance of hardships weighs in favor of an injunction; and (4) the public interest would not be disserved by a permanent injunction. *Jornaleros De Las Palmas*, 945 F. Supp. 2d 779, 801 (2013) (citing *Ebay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

### A.    Plaintiff Has Suffered Irreparable Injury.

A violation of First Amendment rights per se constitutes irreparable harm. Order at 13; *Opulent Life Church*, 697 F.3d at 295; *see also Millennium Rests. Group, Inc. v. City of Dallas*, 191 F. Supp. 2d 802, 810 (N.D. Tex. 2002).

The Fifth Circuit has made clear that the deprivation of First Amendment rights is a sufficient showing of harm in the permanent injunction context: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

*Opulent Life Church*, 697 F.3d at 295 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1100 (5th Cir. 2023); *DeOtte*, 393 F. Supp. 3d at 511 ("In *Opulent Life Church*, the Fifth Circuit noted the long-established principle that a violation of First Amendment rights per se constitutes irreparable harm").

### B.    Legal Remedies Are Inadequate to Compensate AOH for Its Loss of Speech And Religion Rights.

Monetary damages cannot compensate AOH for the loss of its constitutionally protected rights under the First and Fourteenth Amendments to the United States Constitution. The deprivation of constitutional rights is immeasurable. *Jornaleros De Las Palmas*, 945 F. Supp. 2d at 801 (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952)). With no adequate remedy at law to redress the charity's grievances, the AOH's protected speech is and will continue be chilled until the facially unconstitutional burdens are enjoined.

In addition, because the Ordinance is unconstitutional on its face, i.e., as applied to all charities, "effective legal relief can be secured only by a multiplicity of actions such that [each] plaintiff would be required to pursue [a lawsuit] each time he was injured." *Id.* (citing *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 657 F. Supp.2d 795, 824 (S.D. Tex. 2009)). Accordingly, individual legal actions are inadequate. *Munson*, 467 U.S. at 968-69.

### C.    The Balance of Hardships Weighs in Favor of Plaintiff.

An irreparable injury to a plaintiff will typically outweigh any harm to a government entity, particularly Mansfield's interest in aesthetics. *See* ECF 23 at 14; *Carico Invs., Inc. v. Tex. Alcoholic Bev. Comm'n*, 439 F. Supp. 2d 733, 750 (S.D. Tex. 2006); *see also Millennium Rests. Grp.*, 191 F. Supp. 2d at 810 ("[Plaintiff] has further shown that the threatened harm to it -- . . . infringement upon its First Amendment rights -- outweighs the harm to the City."); *DeOtte*, 393 F. Supp. 3d at 512 ("the Court finds the balance of hardships favors an injunction because the Government, even

in the face of an injunction, will have access to other, less-restrictive means to furthering its interests"). There is little doubt that the harm involving the loss of First Amendment freedoms to AOH, which constitutes per se irreparable injury, outweighs any potential harm to Mansfield in not being able to enforce the unconstitutional Ordinance. As discussed above, Mansfield has ample less restrictive means to further its interests.

**D.    The Public Interest Lies Squarely Within the Issuance of a Permanent Injunction.**

"Injunctions protecting First Amendment freedoms are always in the public interest." Order at 14 (quoting *Opulent Life Church*, 697 F.3d at 298); *Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024) (same).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant summary judgment in favor of Plaintiff.

Dated: April 25, 2025                          Respectfully submitted,

                                                              /s/ *Karen Donnelly*

Hiram S. Sasser III                          Karen Donnelly (*pro hac vice*)
Texas Bar No. 24039157                **COPILEVITZ, LAM & RANEY, P.C.**
Tiffany Dunkin                                310 W. 20th Street, Suite 300
Texas Bar No. 24143623                Kansas City, Missouri 64108
David Hacker                                  (816) 472-9000 (office)
Texas Bar No. 24103323                (816) 472-5000 (telecopier)
**FIRST LIBERTY INSTITUTE**          kdonnelly@clrkc.com
2001 West Plano Parkway, Suite 1600
Plano, Texas 75075                          -and-
(972) 941-4444 (office)
(972) 941-4457 (telecopier)            Bennett Rawicki
hsasser@firstliberty.org                  Texas Bar No. 24083708
tdunkin@firstliberty.org                  **HILGERS GRABEN PLLC**
dhacker@firstliberty.org                  7859 Walnut Hill Lane, Suite 335
                                                        Dallas, Texas 75230
                                                        (214) 842-6828 (office)
                                                        (402) 413-1880 (telecopier)
                                                        brawicki@hilgersgraben.com

*Attorneys for Plaintiff Arms of Hope*

48