IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **ARMS OF HOPE** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No.  4:23-CV-00131-O** |
| | § | |
| **CITY OF MANSFIELD, TEXAS** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM OPINION & ORDER</u>

Before the Court are Plaintiff Arms of Hope's Motion for Summary Judgment, Brief in Support, and Appendix in Support (ECF Nos. 71, 72, 73), filed on April 25, 2025; Defendant City of Mansfield's Response (ECF No. 79), filed May 30, 2025; and Plaintiff's Reply (ECF No. 84), filed June 20, 2026; Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment and Brief in Support, and Appendix in Support (ECF Nos. 69, 70), filed on April 25, 2025; Plaintiff's Response (ECF No. 76), filed on May 30, 2025; and Defendant's Reply (ECF No. 83), filed on June 20, 2025; Defendant's Objections to Plaintiff's Summary Judgment Evidence and Motion to Strike (ECF No. 78), filed on May 30, 2025; Plaintiff's Response to Defendant's Motion to Strike (ECF No. 85), filed on June 20, 2025; and Defendant's Reply (ECF No. 92), filed on July 21, 2025. For the reasons stated herein, Defendant's Motion (ECF No. 69) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 71) is hereby **GRANTED**. Because the Court does not rely on any of the challenged evidence in reaching its decision, Defendant's Motion to Strike (ECF No. 78) is **DENIED** as moot.

## I.    BACKGROUND[1]

In 2022, the City of Mansfield ("Defendant" or the "City") enacted regulations about Unattended Donation Boxes ("UDBs"). The City added Chapter 116 to the Mansfield Code of Donation Box Law to create a permitting process for donation boxes and amended Chapter 155 of the Mansfield Code to regulate the location, placement, size, signage, appearance, and maintenance of donation boxes (together, the "Donation Box Law" or the "Law"). In 2023, after noticing an uptick in UDBs that "contributed to visual clutter," "blight due to graffiti and poor maintenance, and the accumulation of debris and excess items outside of the collection boxes," the City enacted two additional Donation Box Laws regulating such boxes—OR-2287-23 and OR-2288-23. Together, the Donation Box Law created a complicated permitting scheme for every UDB, regulating their location, placement, size, signage, appearance, and maintenance.

Plaintiff Arms of Hope ("Plaintiff" or "AOH") is a Christian tax-exempt nonprofit organization that cares for children, youth, and single mother families in their greatest time of need. "AOH has been speaking and evangelizing its Christian message to the people of Mansfield and associating with supporters through its UDBs since 2019."[2] Each of Plaintiff's UDBs shows AOH's name and phone number.

The City threatened enforcement against Plaintiff for its failure to bring three of its UDBs into compliance with the permitting scheme. AOH responded by bringing a facial challenge against the Donation Box Law, seeking declaratory and injunctive relief under 42 U.S.C. § 1983 and moved for both a temporary restraining order and preliminary injunction. This Court granted the preliminary injunction holding that the Donation Box Law failed intermediate scrutiny as applied to AOH's right to speak. Defendant filed an interlocutory appeal, and Plaintiff cross-

---

[1] Unless otherwise stated, the undisputed facts are taken from the parties' summary judgment briefing.
[2] Pl.'s Mot. Summ. J. Br. 2, ECF No. 72.

appealed this Court's reasoning. In early 2024, while the appeal was pending, the City enacted OR-2342-24 and OR-2346-24. Those ordinances updated the zoning requirements, reduced which streets the setback restrictions covered, eliminated the building-setback requirement, eased the permitting restrictions, broadened the consent requirement, and imposed new advertising restrictions.

The Fifth Circuit, held that the enactment of OR-2342-24 and OR-2346-24 "addressed the supermajority of the [this Court's] narrow-tailoring issues" and that "both ordinances expressly repealed and replaced 'all ordinances of the City in conflict with' them." *Arms of Hope v. City of Mansfield, Tex.*, 114 F.4th 374, 379 (5th Cir. 2024) (quoting OR-2342-24 § 3; OR-2346-24 § 4). Based on this finding, the Fifth Circuit dismissed Defendant's appeal and Plaintiff's cross-appeal as moot but held that the mootness of the appeal "'does not prevent the district court from ruling on any of Plaintiffs' claims that remain justiciable.'" *Arms of Hope*, 114 F.4th at 381 (quoting *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 675 (5th Cir. 2023)).

As a result of the 2024 ordinance amendments, Plaintiff does not challenge the Donation Box Law's requirements for permitting, appearance, and maintenance.[3] But Plaintiff maintains that the City's location and color restrictions on UDBs are unconstitutional by unreasonably restricting where UDBs can be placed, banning them through its zoning restrictions from churches and schools throughout the City, and effectively hiding them from public view in the few areas in which they are allowed.[4]

The Law's zoning restrictions prohibit donation boxes from being placed in 11 of 20 zones identified in the Donation Box Law. UDBs "are only permitted in the 2F, MF-1, MF-2, O-P, C-1,

---

[3] Pl.'s Mot. Summ. J. Br. 4, ECF No. 72 (citing OR-2342-24, OR-2346-24, OR-2396-24).
[4] *Id.*

C-2, C-3, I-1, and I-2 Zoning Districts."[5] The setback restrictions ban UDBs from within 300 feet of Mansfield's three major roads (U.S. Hwy. 287, U.S. Business Hwy. 287, and State Hwy. 360), within 250 feet of "any public parks and recreational facilities," or within 75 feet of land zoned for single-family use (A or SF).[6] The location-on-lot restrictions limit donation boxes to (1) "the rear yard or side yards only" such that "no donation box shall be located between any building and a street"; (2) only on "a paved surface, separate and independent of all required parking spaces, aisles, and loading dock and service areas"; and (3) "a minimum distance of 25 feet away from the intersection of two or more fire lanes and/or drive aisles," including parking lot drive aisles.[7]

Defendant moved to dismiss under 12(b)(1) or in the alternative, for summary judgment, challenging Plaintiff's standing to bring any of its claims.[8] On the same day, Plaintiff moved for summary judgment asking the Court to declare the challenged portions of the Donation Box Law unconstitutional and to permanently enjoin Defendant from enforcing the Donation Box Law.[9] The motions are now ripe for the Court's review.

## II.    LEGAL STANARD

### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction

Federal courts are courts of limited jurisdiction and must have "statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Under the Constitution's Article III cases and controversies requirement, a plaintiff must establish standing to sue. Standing requires: (1) an injury in fact, (2) a sufficient 'causal connection between the injury and the conduct complained of' and (3) a likelihood that the

---

[5] OR-2436-24, § 3 (amending § 40(a)).
[6] OR-2396-24 § 1; OR-2346-24 § 3.
[7] OR-2436-24 § 3; Pl.'s App. Supp. Mot. Summ. J. (hereinafter "Pl.'s App.") (Wheaton-Rodriguez Tr.) 68:25–69:2, APP145, ECF No 73.
[8] Def. Mot. Dismiss. ECF No 69.
[9] Pl. Mot. Summ. J. 2, ECF No. 71.

injury will be redressed by a favorable decision." *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); U.S. CONST. art. III, § 2. The injury cannot be merely "conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Causation requires that the injury "fairly can be traced to the challenged action of the defendant" rather than to "the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976). "'[W]hen standing is challenged on the basis of the pleadings,' [courts] must 'accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party.'" *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988)) (first alteration and omission in original).

A Rule 12(b)(1) motion is proper when the court lacks subject matter jurisdiction, including for lack of standing. FED. R. CIV. P. 12(b)(1). To survive at the pleadings stage, a plaintiff must "allege a plausible set of facts establishing jurisdiction." *Burnett Specialists v. Cowen*, 140 F.4th 686, 693 (5th Cir. 2025) (citation omitted).

**B. Rule 56(a) Motion for Summary Judgment**

The Court may grant summary judgment when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks and citation omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis for its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *Celotex*, 477 U.S. at 323. The Court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the Court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The opposing parties' failure to produce proof as to any essential element of a claim renders all other facts immaterial." *2223 Lombardy Warehouse, LLC v. Mount Vernon Fire Ins. Co.*, No. 3:17-CV-2795-D, 2019 WL 1583558, at *6 (N.D. Tex. Apr. 12, 2019) (Fitzwater, J.). Summary judgment is mandatory if the parties fail to meet this burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## III.    ANALYSIS

### A.  Defendant's Motion to Dismiss and Motion for Summary Judgment

Defendant moves to dismiss all of Plaintiff's claims under Rule 12(b)(1), or in the alternative, for summary judgment. Defendant offers three paragraphs of argument relating to Plaintiff's First Amendment standing and two paragraphs relating to Plaintiff's RLUIPA standing. Defendant challenges Plaintiff's Article III standing, arguing that the Donation Box Law only applies to "operators" of UDBs and that a third party (UTM), not Plaintiff, is the operator of the

UDBs in question.[10] Plaintiff responds that it meets all of the elements of standing and that the "challenged law continues to prohibit the Christian charity's protected religious exercise, speech, and association through donation boxes, chilling its First Amendment rights and violating the Religious Land Use and Institutionalized Persons Act (RLUIPA)."[11] The Court finds that Plaintiff has standing to challenge the Donation Box Law under the First Amendment but not RLUIPA.

This Court must first satisfy itself that it has jurisdiction before turning to the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1988). The Supreme Court has crystallized three "irreducible" constitutional requirements for a party to have standing to pursue a "case or controversy" within the meaning of Article III: injury-in-fact, traceability, and redressability. *Lujan*, 504 U.S. at 560–61. Plaintiff bears the burden to demonstrate standing for each claim it seeks to press. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). The implication of the City's argument against Plaintiff's First Amendment standing is that because the Donation Box Law applies only to operators, UDB operators are the only ones who could be harmed by the Donation Box Law. But this is not the law.

1. Plaintiff's First Amendment Claims

In the First Amendment context, merely "chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330–31 (5th Cir. 2020), *as revised* (Oct. 30, 2020). To establish such injury, a plaintiff must show (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) his intended future conduct is arguably proscribed by the policy in question and (3) the threat of future enforcement of the challenged policies is substantial." *Id*. at 330 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014)).

---

[10] Def.'s Mot. Dismiss 6–9, ECF No. 69.
[11] Pl.'s Resp. Def.'s Mot. Dismiss 1, ECF No. 76.

Here, Plaintiff intends to continue soliciting charitable donations through its UDBs. As noted above, the message on the UDBs is Plaintiff's. The beneficiary of the donations is Plaintiff. Such solicitation of charitable contributions is protected speech. *See Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 790 (1988). Furthermore, it is undisputed that the Donation Box Law regulates, and consequently limits, the placement of UDPs in Mansfield. These facts taken together, demonstrate that AOH's charitable solicitation is a "course of conduct arguably affected with a constitutional interest" and that its constitutional interest is proscribed by the Donation Box Law. *Speech First*, 979 F.3d at 330; *see also Nat'l Fed'n of the Blind of Texas, Inc. v. City of Arlington, Texas*, 109 F.4th 728, 733 (5th Cir. 2024) (holding that an ordinance regulating donation boxes that contain charitable solicitations "implicates protected expression and triggers First Amendment analysis").

The third element of injury-in-fact is whether the "threat of future enforcement of the challenged policies is substantial." *Speech First*, 979 F.3d at 330. There is ample evidence in the record that the Donation Box Law would be enforced against Plaintiff. Defendant has already enforced the previous versions of the Donation Box Law against AOH's boxes in 2022 and 2023.[12] According to the City, despite amendment, at least three of AOH's UDPs do not comply with the Donation Box Law.[13] Such an acknowledgment renders it a virtual certainty that the Donation Box Law will be enforced against Plaintiff. Therefore, Plaintiff has met its burden to demonstrate injury-in-fact because Plaintiff's charitable solicitations are proscribed by the Donation Box Law, and the threat of future enforcement is substantial.

Finally, Plaintiff also satisfies the remaining two elements of standing: traceability and redressability. The injury Plaintiff claims is clearly traceable to the City's Donation Box Law

---

[12] Pl.'s App. APP021–26, ECF No. 73.
[13] Pl.'s App. (Nicolette Ricciuti Tr.) 91:1–6, 108:17–23, APP121, 125, ECF No. 73.

because the Donation Box Law is the direct cause of the proscription on Plaintiff's speech. Such prescription would be redressed were the Court to grant Plaintiff's requested relief. Accordingly, Plaintiff has met its burden to establish standing for its First Amendment claims.

Even assuming *arguendo* that Plaintiff must be an operator to have standing, Plaintiff likely is an operator by the Donation Box Law's own terms. Neither the Donation Box Law nor the City Code define the term "operator." Section 155.012 defines "Donation Box" as "[a]ny drop-off box, bin, container, receptacle . . . that accepts donated textiles, clothing, shoes, books, toys, household items . . . to be used *by the operator* for distribution, resale or recycling."[14] The Donation Box Law likewise states that "[e]ach donation box shall bear the name and a contact telephone number of the operator of the donation box who benefits from the collected materials on a sign."[15] Defendant does not dispute that Plaintiff is the entity that uses the donated items placed in Plaintiff's UDBs for distribution, resale or recycling. Nor does Defendant challenge the evidence that Plaintiff is the one who benefits from the collected materials.[16] Therefore, the Donation Box Law assumes Plaintiff's status as the operator and Plaintiff would have standing to challenge the Donation Box Law.

2. Plaintiff's RLUIPA Claims

Defendant offers two paragraphs of argument to challenge Plaintiff's standing under RLUIPA. Defendant asserts that Plaintiff "has no standing to challenge the zoning ordinance under RLUIPA because AOH neither owns nor leases real property in the City."[17] Plaintiff responds that it "has had written agreements [("Placement Agreements")] with the owners of five different

---

[14] Mansfield, Tex., Code of Ordinances ch. 155, § 155.012 (emphasis added).
[15] Pl.'s App. APP056, ECF No. 73.
[16] Pl.'s App. (Robertson Tr.) 35:19–36:14 APP090; 48:13–17, APP093; Tr. 24:11–12, APP087, ECF No. 73.
[17] Def.'s Mot. Dismiss 8, ECF No. 69.

properties in Mansfield to use a particular part of their property for a donation box in return for a monthly payment of $100" which gives Plaintiff the requisite property interest.[18]  The Court agrees with Defendant.[19]

RLUIPA defines a "land use regulation" as a "zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." 42 U.S.C. § 2000cc-5(5). The Court agrees with Plaintiff that permission to utilize property certainly could suffice as a property interest, but only if permission is conferred in a way that is recognized by the law. *See Taylor v. City of Gary*, 233 F. App'x 561, 562 (7th Cir. 2007) (requiring RLUIPA land use claimant to have a "legally recognized property interest" in the land at issue). Because the property at issue is located in Texas, Texas law will determine whether Plaintiff's interest in the property is "legally recognized."

Plaintiff's Placement Agreements are most akin to licenses, which do not convey possession or an interest in the property itself. Under Texas law, "[g]enerally, an easement constitutes an interest in the land itself, while a license merely confers a privilege to do some act or acts upon the land without conveying any interest in or title to the land itself." *Thompson v. Clayton*, 346 S.W.3d 650, 654 (Tex. App.—El Paso 2009, no pet.). A "real property license" is "a privilege to go on premises for a certain purpose, but does not operate to confer on, or vest in, licensee any title, interest or estate in such property." *H.E.Y. Tr. v. Popcorn Express Co.*, 35

---

[18] Pl.'s Response Mot. Dismiss 24, ECF No. 76.

[19] Plaintiff correctly points out in its response that statutory standing is addressed "under a 12(b)(6) standard" rather than 12(b)(1). However, statutory standing can be raised at the motion for summary judgment stage and Defendant's moved for summary judgment in the alternative. Regardless of any procedural deficiencies, Defendant raised the same arguments in its response to Plaintiff's Motion for Summary Judgment and are therefore properly before the Court.

S.W.3d 55, 58 (Tex. App. —Houston [14th Dist.] 2000, pet. denied) (quoting license, BLACK'S LAW DICTIONARY 920 (6th ed. 1990)). "Licenses are generally revocable at the will of the licensor." *Joseph v. Sheriffs' Asso. of Tex.*, 430 S.W.2d 700, 704 (Tex. Civ. App.—Austin 1968, no writ).

Here, Plaintiff's Placement Agreements provide Plaintiff with the privilege of placing its UDBs on a premises and authorize Plaintiff to be the property owner's "Exclusive Textile collection agent."[20] The Placement Agreements are explicitly revocable at any time by the property owner.[21] As a license, the Placement Agreements are analogous to those Texas cases relating to the contractual rights of owners of coin-operated vending machines. *See B. & B. Vending Co. v. Ducharme*, 349 S.W.2d 630 (Tex. Civ. App.—Dallas 1961, writ ref'd n.r.e.) (holding that the agreement was not a lease because the intention of one party "to dispossess himself of the premises and of the other party to occupy them" was lacking); *see also Hancock v. Bradshaw*, 350 S.W.2d 955 (Tex. Civ. App.—Amarillo 1961, no writ).

Though the Placement Agreements give Plaintiff, in a very limited sense, a stake in the property, they do not convey a legally cognizable interest in the regulated property. *See E. End Eruv Ass'n, Inc. v. Vill. of Westhampton Beach,* 828 F.Supp.2d 526, 540–41 (E.D.N.Y. 2011) (concluding that plaintiffs, who were granted a revocable license to use the subject land, held an insufficient property interest under RLUIPA's definition of "land use regulation"); *see also Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Charter Twp.*, No. 12-CV-10803, 2015 WL 1286813, at *9 (E.D. Mich. Mar. 20, 2015).

---

[20] *See e.g.* Pl.'s App. APP164, ECF No. 73.
[21] Under the "OUR PLEDGE TO YOU" section of the Placement Agreements, Plaintiff commits "To remove the donation box at any time requested." *Id.*

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's RLUIPA claims. The Court **DENIES** Defendant's Motion as to Plaintiff's First Amendment claims.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment, arguing that the Donation Box Law facially and as applied, violates three clauses of RLUIPA and Plaintiff's freedoms of religion, speech, and association under the First and Fourteenth Amendments.[22] Having dismissed Plaintiff's RLUIPA claims for the reasons given *supra*, the Court addresses each of Plaintiff's remaining First Amendment claims in turn.

### 1. Plaintiff's Free Exercise Claims

Generally, in a Free Exercise case, if the law is neutral and generally applicable, the government prevails. *See Employment Div. v. Smith*, 494 U.S. 872, 886 (1990). However, if the plaintiff can demonstrate that there is animus against religion in the enactment of the ordinance, *see Church of Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520, 533 (1993), animus against religion in the enforcement process, *see Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*, 584 U.S. 617, 631 (2018), or that the law is not on its face neutral and generally applicable or not applied in a neutral and generally applicable manner, strict scrutiny applies. *Tandon v. Newsom*, 593 U.S. 61, 64 (2021).

Plaintiff first argues that Defendant has acted with animus toward Plaintiff and Plaintiff's religious expression as evidenced by Defendant threatening to "hammer" Plaintiff and to "stack the municipal court in its favor to 'remove these damn things.'"[23] Plaintiff contends that Defendant's "disparate enforcement of other donation boxes that similarly do not comply with the

---

22 Pl.'s Mot. Summ. J. Br. 13–14, ECF No. 72.
23 Pl.'s Mot. Summ. J. Br. 29, ECF No. 72.

City's overly burdensome regulation" further shows that Plaintiff is "target[ed]" for enforcement.[24] Defendant responds that Plaintiff's evidence of animus is "inapposite" because it does not show the legislative intent of the entire city council nor that such intent "is reflected in the plain text of the ordinance, purpose statements contained in the preamble, and the city's legislative record."[25] The City's actions, though concerning, do not appear to target Plaintiff *because* of Plaintiff's religious motivations.[26]

The Supreme Court has held that "[a]lthough a law targeting religious beliefs as such is never permissible . . . if the object of a law is to infringe upon or restrict practices *because of their religious motivation*, the law is not neutral." *Church of Lukumi Babalu Aye*, at 533 (1993) (emphasis added); *see also Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548 (4th Cir. 2013) (affirming grant of summary judgment for defendants on a nondiscrimination claim where plaintiff failed to put forth any evidence that the government's actions against plaintiff were because plaintiff was a religious organization). As the record stands, Plaintiff has not produced any evidence to suggest that its religious character was the reason for the City's animus. Accordingly, strict scrutiny does not apply.

Plaintiff next argues that the Donation Box Law is not neutral and generally applicable because the City Code allows for trash cans where donation boxes are prohibited and that such

---

[24] Pl.'s Mot. Summ. J. Br. 29, ECF No. 72.

[25] Def.'s Resp. Pl.'s Mot. Summ. J. 20, ECF No. 79.

[26] The Court notes that the City's desire to "hammer" Plaintiff and the fact that the only UDB permit so far approved would render one of Plaintiff's UDBs illicit, are highly concerning actions that may evidence the City's targeted animus toward Plaintiff. The Court also notes the City's argument that evidence of AOH's sincerely held religious beliefs should be disregarded as anthropomorphic. Such arguments are squarely foreclosed. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706–07 (2014). It is the beliefs of the people associated with a corporation or association that are protected. *Id.* Consequently, the Court reminds Defendant that "the sincerity of a plaintiff's engagement in a particular religious practice is rarely challenged" and that "examin[ing] religious convictions any more deeply would stray into the realm of religious inquiry, an area into which we are forbidden to tread." *Moussazadeh v. Tex. Dep't of Crim. Justice*, 703 F.3d 781, 790–92 (5th Cir. 2012).

allowance triggers strict scrutiny.[27] Assuming *arguendo* that Plaintiff's operation of the UDBs constitutes an exercise of religion, the Supreme Court has held that "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise." *Tandon*, 593 U.S. at 62. To determine "whether two activities are comparable for purposes of the Free Exercise Clause," they "must be judged against the asserted government interest that justifies the regulation at issue." *Id*. The Supreme Court has explained that "[c]omparability is concerned with the risks various activities pose, not the reasons why people gather." *Id*.

Plaintiff asserts that trash receptacles are sufficiently similar to UDBs to be a valid secular comparator. The Court disagrees. According to Plaintiff, "[t]he City's asserted interests in regulating donation boxes and trash receptacles are the same . . . . Both laws state a broad general welfare interest that boils down to aesthetics."[28] But even if the stated purpose in regulating UDBs and trash receptacles are the same, the risks associated with each are sufficiently distinct so as to warrant them incomparable.

As Plaintiff points out, Defendant's asserted interest in passing the zoning ordinance is, at least in part, "blight" and "health and sanitation."[29] However, the ordinance itself states that the inability to "accurately identify the owners of such donation boxes" is also part of the reason for the ordinance.[30] In general, the City is the one responsible for trash receptacles. Thus, the party responsible for any violation or maintenance of a trash receptacle is more easily identifiable than the party similarly responsible for a privately owned and placed UDB. Because the City can better

---

[27] Pl.'s Mot. Summ. J. Br. 29, ECF No. 72.
[28] Pl.'s Mot. Summ. J. Br. 29–30, ECF No. 72 (internal citation omitted).
[29] Pl.'s App. APP005 (OR-2346-24), ECF No. 73.
[30] Pl.'s App. APP006 (OR-2346-24), ECF No. 73.

regulate the risks of blight, health, and sanitation posed by public utilities like trash receptacles, the risks posed by the latter and UDBs are distinct. Moreover, Plaintiff's asserted activity is the solicitation of donations for charitable purposes.[31] Plaintiff maintains that this solicitation is constitutionally protected speech and religious exercise. But there is no evidence before the Court that trash receptacles engage in speech, let alone religious exercise. The mismatch of the activity of trash receptacles and UDBs renders the comparison untenable. The more accurate comparator is non-religious UDBs.

Non-religious UDBs also engage in solicitation and donative speech, like Plaintiff's UDBs. They are also privately owned and operated, like Plaintiff's UDBs. They pose the same risks as identified by the City. But unlike trash receptacles, non-religious UDBs are typically not part of the public utility infrastructure. When compared to non-religious UDBs, Plaintiff's UDBs are treated identically. The Donation Box Law does not differentiate between those UDBs run by a religious organization and those run by a secular one. Accordingly, the Donation Box Law is a neutral law of general applicability and is facially constitutional under the Free Exercise Clause. *See Smith*, 494 U.S. at 886.

2. Plaintiff's Free of Speech Claims

i.    *Strict Scrutiny Does Not Apply*

The First Amendment, applicable to municipalities vested with state authority through the Fourteenth Amendment, provides that governments "shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I; *see, e.g., Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Charitable solicitations are fully protected speech. *See Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632–33 (1980). For a First Amendment challenge, the appropriate level of

---

[31] Pl.'s Mot. Summ. J. Br. 31, ECF No. 72.

scrutiny depends on whether the Donation Box Law is content-based or content-neutral. *City of Arlington*, 109 F.4th at 734. If content-based, the Donation Box Law is "presumptively unconstitutional" and must survive strict scrutiny and if content-neutral, intermediate scrutiny applies. *Id.*

"A regulation of speech is facially content based under the First Amendment if it 'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022). The Fifth Circuit has recently ruled that where an ordinance "regulates all donation boxes, encompassing both charitable and non-charitable solicitations" and "'is agnostic as to content' . . . [the ordinance is] facially content-neutral to the extent it regulates expressive activity." *City of Arlington*, 109 F.4th at 735.

Plaintiff first argues that "strict scrutiny applies here because the Donation Box Law targets and prohibits a type of charitable solicitation and is thus content based."[32] Plaintiff next argues that "the City's less favorable treatment of donation boxes compared to trash reflects a content preference."[33] Plaintiff urges this Court to adopt the reasoning of the Sixth Circuit in *Planet Aid v. City of St. Johns*, 782 F.3d 318 (6th Cir. 2015), that found a similar city ordinance to be content-based.[34] Finally, Plaintiff argues that the City has demonstrated animus towards it as a speaker, which triggers strict scrutiny.[35]

In *City of Arlington*, the Fifth Circuit addressed two of Plaintiff's arguments regarding a materially similar donation box regulation and explicitly departed from *Planet Aid*. First, the court held that the ordinance in that case "specifically regulate[d] only the manner and place of donation

---

[32] Pl.'s Mot. Summ. J. Br. 33, ECF No. 72.
[33] Pl.'s Mot. Summ. J. Br. 33, ECF No. 72.
[34] Pl.'s Mot. Summ. J. Br. 33–34, ECF No. 72.
[35] Pl.'s Mot. Summ. J. Br. 34, ECF No. 72.

solicitation—*e.g.*, solicitation in the *manner* of a donation box, located in prohibited *places.*" *City of Arlington*, 109 F.4th at 734 (emphasis in original). Therefore, the ordinance discriminated "'on the basis of non-expressive, non-communicative conduct'—solicitation manner and place—but [did] 'not discriminate based on topic, subject matter, or viewpoint.'" *Id.* (quoting *Recycle for Change v. City of Oakland*, 856 F.3d 666, 672 (9th Cir. 2017)). Second, the court found that *donated* items do not have an exclusively charitable connotation and therefore the regulation "is agnostic as to content." *See City of Arlington*, 109 F.4th 735 (analyzing the definition of "donate" and "charity").

The Court finds no reason to distinguish this case from that of *City of Arlington* as to the applicable level of scrutiny. Because the Donation Box Law "regulates all donation boxes, encompassing both charitable and non-charitable solicitations[] [i]t 'is agnostic as to content', and, therefore, facially content-neutral to the extent it regulates expressive activity." *Id.* Critical to the Court's finding is that "although the [Donation Box Law] curtails solicitation by the manner of donation boxes, entities may continue to solicit donations by *all other means* in *all locations* within the city." *City of Arlington*, 109 F.4th at 734 (emphasis in original).

Plaintiff's final argument as to why strict scrutiny should apply is because there is evidence that the City has shown animus toward it as a speaker.[36] Under Plaintiff's own cited authority, a law "favoring some speakers over others demand[s] strict scrutiny when the legislature's speaker preference *reflects a content preference*." *Reed*, 576 U.S. at 170 (quoting *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 658 (1994)) (emphasis added). The Fifth Circuit has held "'the principal inquiry in determining content-neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech

---

[36] Pl.'s Mot. Summ. J. Br. 34, ECF No. 72.

because of disagreement with the message it conveys.'" *Palmer ex rel. Palmer v. Waxahachie Independent School District*, 579 F.3d 502, 510 (5th Cir. 2009) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). There is no evidence in the record before the Court that Defendant's negative treatment of Plaintiff reflects a content preference nor the City's disagreement with Plaintiff's message. As discussed above, though the City's actions are concerning, and may demonstrate animus toward Plaintiff, they do not trigger strict scrutiny.[37] Accordingly, the Court analyzes the Donation Box law under intermediate scrutiny.

### ii.    *Intermediate Scrutiny Applies*

To survive intermediate scrutiny, a content-neutral restriction on speech or expression must be "narrowly tailored to serve a significant governmental interest" and "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal quotation marks omitted).

The City asserts the significant government interests of protecting the public's health, safety, and welfare, "the promotion of consistent land uses and development, the protection of property rights and the protection of landowners and residents of the" City.[38] Plaintiff asserts, and the City does not dispute, that the City's interest in regulating UDBs boils down to aesthetics.[39] The Supreme Court has concluded such interests are significant. *See Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 805–07 (1984) ("[M]unicipalities have a weighty, essentially [a]esthetic interest in proscribing intrusive and unpleasant formats for expression"); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 510 (1981) (plurality opinion) (upholding city's aesthetic

---

[37] *See supra* at n. 26.
[38] Pl.'s App. APP055 (OR-2396-24 at 1), ECF No. 73.
[39] Pl. Mot. Summ. J. Br. 6, ECF No. 72.

interest in removing billboards in part because "[s]uch [a]esthetic judgments are necessarily subjective, defying objective evaluation"); *McCullen v. Coakley*, 573 U.S. 464, 486–87 (2014) (recognizing legitimacy of government's interests in "ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks, protecting property rights" (citation omitted)). As a result, the only remaining question is whether the zoning provision and setback requirement are (1) "narrowly tailored" and (2) "leave open ample alternative channels of communication." *Perry*, 460 U.S. at 45.

"[N]arrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799 (second alteration in original) (citation omitted). And the City is required to "demonstrate that alternative measures that burden substantially less speech . . . fail to achieve [its] interests." *McCullen v. Coakley*, 573 U.S. 464, 495 (2014).

In *City of Arlington*, the Fifth Circuit held a similar zoning ordinance to be narrowly tailored stating that "[b]ecause one of the substantive evils Arlington seeks to eliminate—'visual blight'—is created in part by the donation boxes themselves, the zoning provision 'curtails no more speech than is necessary to accomplish its purpose.'" *City of Arlington*, 109 F.4th at 738 (quoting *Taxpayers for Vincent*, 466 U.S. at 810). Plaintiff argues that *City of Arlington* is distinguishable because Defendant does not consider a well-maintained donation box to be "unsightly."[40] Defendant offers no discernable response. The Court agrees with Plaintiff.

Critical to the Fifth Circuits ruling in *City of Arlington* was an analysis of the zoning ordinance under *Taxpayers for Vincent* because the city maintained that even a well-kept donation box was a visual blight. *Id.* In *Taxpayers for Vincent*, the Supreme Court concluded that the "visual

---

[40] Pl.'s Mot. Summ. J. Br. 34, ECF No. 72.

assault . . . presented by [the] accumulation of signs" on public property was "a significant substantive evil within the [c]ity's power to prohibit." 466 U.S. at 807. The city's prohibition on such signs was a proper means to address that "evil." *Id.* at 808. In *City of Arlington*, the court found that the zoning provision was similarly justified because the city's concern about visual blight "is created in part by the donation boxes themselves." 109 F.4th at 738. Because the city's aesthetic interest was only achieved by a total ban on all UDBs, the ordinance was sufficiently narrow to achieve that interest.

Here, viewing the evidence in the light most favorable to the City, the summary judgment evidence shows that Defendant does not regard a clean, well-maintained UDB to be visual blight. As Plaintiff points out, when asked "[i]s it that the City does not like the look of donation bins?," the City's representative responded, "No. We don't like the accumulation of trash and debris or unmaintained areas."[41] The City reiterated that a clean, well-maintained donation box is "not an aesthetic harm," does not present any "aesthetic issues," is not "itself blight," and is not "unsightly."[42] Because the City does not regard the medium of expression itself—UDBs—as the cause of visual blight, an outright ban on UDBs is not narrowly tailored to achieve the City's interests and *Taxpayers for Vincent* does not apply for the same reasons.

The City's zoning provisions ban even clean and well maintained UDBs from most of the City. Such a total ban cannot be construed as narrowly tailored because the Law's permitting and maintenance requirements would address the City's stated interests in aesthetics, safety, and land development. As the dissent noted in *City of Arlington*, the Supreme Court "differentiated between narrowly tailored rules that 'respond[] precisely' to a city's problems and broad rules that end up 'gratuitously infring[ing] upon' protected speech. *City of Arlington*, 109 F.4th at 742 (Graves, J.,

---

[41] Pl.'s App. (Ricciuti Tr.) 50:1–4, APP111, ECF No. 73.
[42] Pl.'s App. (Ricciuti Tr.) 45:3–6, 49:23–25, 54:15–17, APP109–12, ECF No. 73.

concurring in part and dissenting in part).  The zoning provision is an example of the latter." *Id.* at 743.[43]

Similarly, the Law's setback restrictions and location-on-lot restrictions do not further Defendant's stated interests. By Defendant's own admission, the City's asserted interests of "health, safety and welfare of the general public," "promotion of consistent land uses and development," and "the protection of property rights and . . . landowners and residents of Mansfield" are not imperiled by clean, well maintained UDBs with identifiable operators.[44] The Law's permitting and maintenance requirements already address the City's specific interest in safety, property rights, and aesthetics by prohibiting graffiti, trash, debris, and maintenance problems in and around the boxes, and they provide accountability through the permitting, the identification of persons responsible for the boxes, and steep civil and criminal penalties for any violation.[45]

The City's response to Plaintiff's motion for summary judgment contains one paragraph addressing Plaintiff's "Constitutional claims."[46] As the record stands, Defendant fails to demonstrate how the Law's permitting and maintenance requirements, which burden substantially less speech than the challenged provisions, would fail to achieve the government's interests. *McCullen*, 573 U.S at 495. The record does demonstrate that UDBs create "*specific* problems; the [C]ity created specific provisions to address those specific problems; and that it *also* created [] zoning provision[s,] [setback restrictions, and location-on-lot restrictions] attacking the [UDBs]

---

[43] The Court does not reach whether UDBs are an "important and distinct medium of expression" because it finds that *Taxpayers for Vincent* does not apply on other grounds.
[44] *See* Pl.'s App. (Ricciuti Tr.) 45:3–6, 49:23–25, 54:15–17, APP109–12, ECF No. 73.
[45] *See id.* at APP003–04 (§ 116.03(A)(1)–(5), (B)).
[46] Def.'s Resp. Pl. Mot. Summ. J. 8, ECF No. 79.

much more indiscriminately." *City of Arlington*, 109 F.4th at 742 (Graves, J., concurring in part and dissenting in part).

Accordingly, the Court finds that the zoning provisions, setback restrictions, and location-on-lot restrictions' substantial speech limitations are not necessary to serve the City's goals, particularly, in light of provisions of the Law that more properly "focus[] on the source of the evils the [C]ity seeks to eliminate." *See Ward*, 491 U.S. at 799 & n.7. Therefore, the zoning provision,[47] setback restrictions,[48] and location-on-lot restrictions[49] fail intermediate scrutiny by burdening substantially more speech than is necessary to achieve the City's stated interests and unconstitutionally violate Plaintiff's First Amendment right to speak.[50]

### 3. Whether the Color Restriction Constitutes an Impermissible Prior Restraint

Plaintiff contends that the Law's "vague and undefined color requirements grant too much discretion to the licensor and enable arbitrary and capricious application of the licensing scheme."[51] The Donation Box Law requires "neutral or earth-tone color[ing]" and prohibits "[h]igh-intensity colors."[52] Those terms are not defined in the Donation Box Law or elsewhere in the Code.

"[T]he [Supreme] Court has long held that 'law[s] subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, [are] unconstitutional.'" *Freedom From Religion*

---

[47] OR-2436-24, § 3 (amending § 40(a)).
[48] OR-2396-24 § 1; OR-2346-24 § 3.
[49] OR-2436-24 § 3.
[50] Because the Court finds that the Law's zoning provisions, setback restrictions, and location-on-lot restrictions unconstitutional for the reasons stated *supra*, the Court does not reach Plaintiff's claim that the Law violates its right to associate. Similarly, the Court need not address Plaintiff's overbreath claim.
[51] Pl.'s Mot. Summ. J. Br. 43, ECF No. 72.
[52] OR-2346-24 § 3(c)11.

*Found. v. Abbott*, 955 F.3d 417, 427 (5th Cir. 2020) (third and fourth alterations in original) (quoting *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969)). This is often referred to as the "unbridled discretion doctrine." *Id.* "A government regulation that allows arbitrary application is inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992) (citation omitted). "[A] time, place, and manner regulation [must] contain adequate standards to guide the official's decision and render it subject to effective judicial review." *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 323 (2002).

Typically, even if the Court were to "assume vagueness in the words identified by [Plaintiff]" the Law's standards need only be "*reasonably* specific and objective, and [cannot] leave the decision to the whim of the administrator." *City of Arlington*, 109 F.4th at 741 (quoting *Thomas*, 534 U.S. at 324) (emphasis in original). However, the evidence before the Court shows that the City has discretion to decide what constitutes "high intensity" *ad hoc*.[53] Further evidence shows that the City was unable to articulate the basis for denying a permit for a green donation box as high-intensity, other than to cite the Law.[54] The City could not identify or provide any guidelines, measurements, or criteria for determining permissible intensity.[55] The City offers no explanation as to how "high-intensity colors" may be differentiated from similarly prohibited "neon colors." Given the City's admission that it makes the "determination" as to color without providing a definite standard, the Court finds that the prohibition on "high-intensity colors" to be an unconstitutional prior restraint. *Freedom From Religion Found.*, 955 F.3d at 427.

---

[53] *See* Pl.'s App. (Wheaton-Rodriguez Tr.) 71:17–19, 74:13–75:3, APP146–47, ECF No. 73.
[54] Pl.'s App. at APP194–95 (CITY 0666–67); Pl.'s App. (Ricciuti Tr.) 81:3–91:6, APP118, ECF No. 73.
[55] Pl.'s App. (Wheaton-Rodriguez Tr.) 71:15–75:3, APP146-47, ECF No. 73.

### C. Permanent Injunctive Relief

Plaintiff is entitled to permanent injunctive relief. A permanent injunction is proper when a plaintiff (1) prevails on the merits, (2) there is no adequate remedy at law for the plaintiff's otherwise irreparable injury, (3) the balance of the harms favors the plaintiff, and (4) an injunction would serve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiff satisfies each of these elements.

Plaintiff satisfies the first requirement because it succeeds on the merits by establishing a violation of its First Amendment rights, as explained *supra*. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Second, monetary damages cannot compensate Plaintiff for the loss of its constitutionally protected rights under the First and Fourteenth Amendments. The deprivation of constitutional rights is immeasurable. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). Third, given the Court's finding that Plaintiff's harm is irreparable, the City "would need to present powerful evidence of harm to its interests" to prevent Plaintiff from meeting this requirement. *See Opulent Life Church*, 697 F.3d at 297. Here, the Court finds that the City's interests are outweighed by the threat of injury to Plaintiff should an injunction not be granted. Finally, an injunction will not disserve the public interest because "injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (internal citations omitted).

Because Plaintiff carries its burden as to each of the permanent injunction factors, the Court next addresses the scope of the injunction. When ordering equitable relief, the Court is obligated to state "specifically" and "in reasonable detail . . . the act or acts restrained or required" under the injunction. FED. R. CIV. P. 65(d)(1)(b)–(c). The scope of injunctive relief is "dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). An injunction

"should be crafted to provide 'complete relief to the plaintiffs.'" *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting *Yamasaki*, 442 U.S. at 702). At the same time, the injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). And it must be tailored to "redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018).

Accordingly, the Court hereby **ENJOINS** the City of Mansfield from enforcing Mansfield Ordinance Nos. OR-2396-24 and OR-2346-24 §§ 2, 3(a), 3(c)(1)–(6), (9)–(11), and any other provisions that are inconsistent with this Order, against Plaintiff Arms of Hope.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (ECF No. 71) is hereby **GRANTED**.

 **IT IS FURTHER ORDERED** that Mansfield Ordinance Nos. OR-2396-24 and OR-2346-24 §§ 2, 3(a), 3(c)(1)–(6), (9)–(11), and any other provisions that are inconsistent with this Order, are hereby declared unconstitutional and that the City of Mansfield is enjoined from enforcing such provisions against Plaintiff Arms of Hope.

**SO ORDERED** on this **19th day** of **February, 2026.**

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**